## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 21-196-LPS |
| | ) | |
| v. | ) | |
| | ) | **REDACTED -** |
| ANNORA PHARMA PRIVATE LIMITED, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AZURITY PHARMACEUTICALS, INC.'S MOTION FOR PRELIMINARY INJUNCTION

*OF COUNSEL:*

Wendy L. Devine (wdevine@wsgr.com)
Kristina M. Hanson (thanson@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
T: (415) 947-2000

Natalie J. Morgan (nmorgan@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
San Diego, CA 92130
T: (858) 350-2300

Granville C. Kaufman (gkaufman@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
T: (323) 210-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
T: (302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity Pharmaceuticals, Inc.*

Original Filing Date: December 17, 2021
Redacted Filing Date: January 11, 2022

## **TABLE OF CONTENTS**

I.     BACKGROUND ................................................................................ 2

    A.    Azurity and Epaned® .......................................................... 2

    B.    Annora's ANDA Product ..................................................... 4

    C.    Proceedings Involving the PI Patents ................................... 4

II.    LEGAL STANDARDS ..................................................................... 4

III.   AZURITY IS LIKELY TO SUCCEED ON THE MERITS .................. 4

    A.    Annora's ANDA Product Infringes the PI Claims ................. 4

         1.   Annora's Own Description of the ANDA Product Shows that Azurity Is Very Likely to Prove Infringement of All PI Claims ................................... 5

         2.   Annora's Noninfringement Positions Utterly Lack Merit ............................... 6

    B.    Annora Cannot Raise a Substantial Question of Validity ...................... 8

         1.   Each of the PI Claims Is Non-Obvious ......................................... 9

             a.   None of the Prior Art References Supplied by Annora Disclosed an RTU Liquid Formulation of Enalapril. ............................... 9

             b.   The Prior Art "Teaches Away" From An RTU Liquid Formulation of Enalapril. ............................... 9

             c.   Certain of Annora's Key Prior Art Published Nearly Thirty Years Before the Priority Date of the Claimed Invention. ............................... 10

             d.   There Is No Motivation to Combine the Prior Art References, Nor Any Reasonable Expectation of Success. ............................... 10

             e.   There Are Objective Considerations of Non-Obviousness. ...................... 11

         2.   Each of the PI Claims Meet the Written Description Requirement ............... 11

             a.   Exemplary Buffers Are Listed in the Specification ................................. 12

             b.   The Specification Describes Stable Formulations at About pH 4.5 or Below for at Least 18 or 24 Months ................................. 12

             c.   The Specification Describes Embodiments at About pH 3.3 and Between About pH 3 and 4 ................................. 13

             d.   The Specification Discloses a Citrate-Phosphate Buffer ......................... 13

         3.   Each of the PI Claims Is Fully Enabled ......................................... 13

IV.   ABSENT INJUNCTION, AZURITY WILL BE IRREPARABLY HARMED ............. 14

V.    BALANCE OF HARDSHIPS FAVORS AZURITY ...................................... 19

VI.   PUBLIC INTEREST WEIGHS IN FAVOR OF PRELIMINARY INJUNCTION ......... 19

VII.  CONCLUSION ................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
  500 F. Supp. 2d 807 (N.D. Ill. 2007) ....................................................................17

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008)............................................................................20

*Albany Molecular Res., Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-4638,
  2010 WL 2516465 (D.N.J. June 14, 2010) ..........................................................19

*Alcon Research Ltd. v. Barr Labs., Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014)............................................................................12

*Apple Inc. v. Samsung Elecs. Co.*,
  735 F.3d 1352 (Fed. Cir. 2013)............................................................................18

*Apple, Inc. v. Samsung Elecs. Co.*,
  678 F.3d 1314 (Fed. Cir. 2012)........................................................................17, 18

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
  664 F.3d 922 (Fed. Cir. 2012)..............................................................................15

*Cordis Corp. v. Medtronic, Inc.*,
  835 F.2d 859 (Fed. Cir. 1987)..............................................................................19

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)........................................................................14, 15

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, No. 05-5727,
  2008 WL 1722098 (D.N.J. Mar. 28, 2008)..........................................................20

*Eli Lilly & Co. v. Teva Pharm. Intl. GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) ..............................................................................10

*Eli Lilly & Co. v. Teva Pharm. USA, Inc.*,
  609 F. Supp. 2d 786 (S.D. Ind. 2009) ..................................................................18

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  276 F. Supp. 3d 629 (E.D. Tex. 2017) .................................................................14

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  64 F. App'x 751 (Fed. Cir. 2003) .........................................................................19

*Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, No. 07-4539 (SRC),
    2010 WL 4687839 (D.N.J. Nov. 10, 2010) ...................................................................17, 18

*Impax Lab's, Inc. v. Aventis Pharm., Inc.*,
    235 F. Supp. 2d 390 (D. Del. 2002) ....................................................................................19

*Leo Pharm. Prods., Ltd. v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ...........................................................................................10

*Metalcraft of Mayville, Inc. v. Toro Co.*, No. 16-C-544,
    2016 WL 4076894 (E.D. Wis. Aug. 1, 2016) ......................................................................16

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
    848 F.3d 1358 (Fed. Cir. 2017) ...........................................................................................16

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, No. 2:16-CV-00491-RWS-
    RSP, 2016 WL 7587325 (E.D. Tex. Nov. 21, 2016) ...........................................................18

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
    857 F.3d 858 (Fed. Cir. 2017) .............................................................................................18

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) .............................................................................................5

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) .............................................................................................20

*Pfizer, Inc. v. Teva Pharm. USA, Inc.*,
    429 F.3d 1364 (Fed. Cir. 2005) ...........................................................................................20

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001) .........................................................................................8, 9

*QBAS Co. v. C Walters Intercoastal Corp.*, No. 10-406,
    2010 WL 7785955 (C.D. Cal. Dec. 16, 2010) ....................................................................15

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .....................................................................................16, 19

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006) .....................................................................................17, 20

*Sunovion Pharm., Inc. v. Teva Pharm. USA, Inc.*,
    731 F.3d 1271 (Fed. Cir. 2013) .........................................................................................7, 8

*Tec Air, Inc. v. Denso Mfg. Mich., Inc.*,
    192 F.3d 1353 (Fed. Cir. 1999) ...........................................................................................10

*Trebro Mfg. v. FireFly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014)..............................................................................15

*Unigene Labs., Inc. v. Apotex, Inc.*,
    655 F.3d 1352 (Fed. Cir. 2011)................................................................................9

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008).......................................................................................................4

## TABLE OF ABBREVIATIONS

| '868 patent | U.S. Patent No. 10,772,868 |
|---|---|
| '476 patent | U.S. Patent No. 10,799,476 |
| ACE | Angiotensin converting enzyme |
| ANDA | Abbreviated New Drug Application |
| Annora | Defendant Annora Pharma Private Limited |
| Annora's ANDA | ANDA No. 214467 |
| [Annora's] ANDA Product | Subject matter of Annora's ANDA No. 214467 |
| Buckton | Declaration of Dr. Graham Buckton (filed herewith) |
| Epaned® | EPANED® (enalapril maleate) Oral Solution, 1 mg/mL |
| Ex. | Refers to exhibits attached hereto |
| Ex. B- | Refers to exhibits attached to the Declaration of Dr. Graham Buckton (filed herewith). |
| FDA | U.S. Food & Drug Administration |
| Patel | Declaration of Amit Patel (filed herewith) |
| PI Claims | Collectively, claim 12 of the '868 patent and claims 9, 10, and 13 of the '476 Patent |
| Invalidity Contentions | Defendant, Annora Pharma Private Limited's Initial Invalidity Contentions Regarding U.S. Patent Nos. 10,772,868 & 10,799,476 (dated August 11, 2021) |
| PI Patents | Collectively, the '868 and '476 patents |
| POSA | Person of ordinary skill in the art |
| RTU | Ready-to-use |
| Azurity | Plaintiff Azurity Pharmaceuticals, Inc. |
| Stec | Declaration of Jeffery A. Stec, Ph.D. (filed herewith) |

Azurity respectfully requests the Court to enjoin Annora from commercially launching its infringing ANDA Product.  This motion is necessary because Annora has refused to delay its launch plans until after the Court conducts trial—currently scheduled for July 2022—and issues its opinion, a delay of mere months.  As things stand, Annora's ANDA will be eligible to receive final approval on or about February 12, 2021.  Azurity has brought this motion such that briefing may be completed and the Parties heard before the end of the first-filer generic's 180-day exclusivity.

A preliminary injunction is warranted because all four factors weigh heavily in favor of injunctive relief.  *First*, Annora's infringement is indisputable, and Annora's affirmative defenses lack merit, much less any persuasive evidence.[1]  *Second*, Azurity stands to suffer irreparable harm in the absence of a preliminary injunction.  Such harms include ████████████████ ███████████████████████████ ████████████████████████████ ██████ █████████████████████████████████████ ████████████████████████████████████████████████ ████████████.  *Third*, the balance of the harms weighs heavily in favor of an injunction.  The only non-speculative harm facing Annora is a potential short delay of its launch plans.  That potential harm is compensable via a PI bond and – more importantly – pales in comparison to the permanent and undoable harms looming over Azurity.  *Lastly*, the public interest favors enforcement of duly obtained patents.  As Azurity is likely to prevail on the merits and the balance of hardships weighs in its favor, this motion should be granted.

The Court will undoubtedly recall that Azurity recently engaged in preliminary injunction motion practice in the related matter *Azurity Pharmaceuticals, Inc. v. Bionpharma Inc.*, C.A. No.

---

[1] For purposes of this motion, Azurity will focus on a subset of six asserted claims: Claims 11 and 12 of the '868 patent and Claims 9, 10, 12, and 13 of the '476 patent.

1

21-1286.  The ANDA product formulation in the *Bionpharma* case is **underline different** than the ANDA product formulation at issue in this case.  Consequently, the PI motion practice in the *Bionpharma* matter **involved different patent claims than those at issue in this motion**.  The substantive differences are material and significant such that the Court's preliminary findings regarding written description and enablement in the Bionpharma case cannot be extrapolated to the claims at issue in this motion.  In addition, despite Bionpharma's brief presence on the market due to its at-risk launch (which occurred in August 2021), Biopharma is no longer able to manufacture its ANDA product.  Thus, the *status quo* is that Azurity maintains market exclusivity.  By way of this motion, Azurity seeks a preliminary injunction to maintain the *status quo* at least until the Court can hold the trial scheduled to occur in the coming months.

## I.  BACKGROUND

### A.  AZURITY AND EPANED®

Azurity brings high-quality, alternative-formulation medicines to underserved populations, namely pediatric and elderly patients.  Patel, ¶ 5.  Following nearly a decade of research, Azurity developed Epaned®, the first FDA-approved RTU oral enalapril solution, to alleviate the "pill-burden" associated with the oral administration of solid enalapril tablets.  *Id.*, ¶ 9.  Epaned®, which was commercially available in 2017, is an ACE inhibitor approved for treatment of multiple diseases, including hypertension and heart failure.  C.A. 18-1962-LPS, D.I. 199 at 919:8-9, 13-17; 966:16-17.  ACE inhibitors help reduce blood pressure.  High blood pressure, or hypertension, stresses the heart and can lead to heart failure or heart attacks.  Hypertension can also cause strokes, vision loss, kidney injury and disease, and kidney failure.  *Id.* at 926:1-10; 930:6-8.

The active ingredient in Epaned®, enalapril, was initially approved by FDA in 1985 as an oral solid tablet.  *Id.* at 947:2-3.  However, tablets are ill-suited for elderly and pediatric patients,

who may have trouble swallowing oral solid medication. '868 patent at 5:24-40.[2] In the past, enalapril was administered to such patients via compounding, i.e., crushing solid tablets into powder by mortar and pestle, then combining the powder with a diluent to create a liquid solution. *Id.* at 5:41-53. These compounded solutions present significant risks and drawbacks—e.g., inaccurate and inconsistent dosing, cross-contamination, and excipients present in solid tablets (but are not necessary for a liquid dosage form)—all of which are especially acute in pediatric populations. *Id.* Nevertheless, compounding (including all of its inherent risks/problems) remained the only option for patients with difficulty swallowing for nearly 30 years.

Azurity's first FDA-approved enalapril product was a powder formulation of enalapril, which was named Epaned® Kit. Patel, ¶ 11. Epaned® Kit was a slight improvement over compounding, but remained flawed. Among other flaws, it required the pharmacist to mix powder with diluent, leaving room for dosage errors, contamination, and inconsistencies; and it was stable at room temperature for only 60 days once reconstituted into a solution. C.A. 18-1962-LPS, D.I. 193 at 78:22-79:6; 82:5-6.

Epaned® is the result of Azurity's significant R&D efforts. Patel, ¶ 7. Because Epaned® is manufactured and supplied as an RTU oral solution, there is no need for reconstitution, compounding, or other manipulation prior to administration—which removes the risks of variability in dosage, incomplete solubilization, and pharmacist error previously associated with solid or powder forms of enalapril. D.I. 193 at 78:22-79:6; Patel, ¶ 7. Most importantly, Epaned® is stable for three years from the date of manufacture when stored in refrigerated temperature. D.I. 193 at 87:4-6. This RTU oral solution with enhanced stability and shelf-life facilitates patient compliance and ease of use. *Id.* at 94:12-16, 111:14-15.

---

[2] For ease of reference, Azurity refers throughout solely to the '868 patent's specification as the patents share the same specification.

### B.    ANNORA'S ANDA PRODUCT

Annora submitted ANDA No. 214467 to FDA seeking approval to engage in the commercial manufacture, use, offer for sale, and/or importation of its generic version of Azurity's Epaned®.  D.I. 1, ¶ 24.  On April 29, 2021, FDA granted tentative approval to the ANDA Product. Ex. 2.  Annora currently cannot market its ANDA Product as a 180-day market exclusivity is currently in place for the first-filer generic.  Azurity believes this 180-day market exclusivity will end on or about February 12, 2022.  Patel Ex. 4, ¶ 9.

### C.    PROCEEDINGS INVOLVING THE PI PATENTS

On February 11, 2021, Azurity filed a complaint against Annora alleging infringement of the '868, '482, and '476 patents.  D.I. 1.  The case is scheduled to begin trial on July 20, 2022. D.I. 15, ¶ 21.  Six representative claims from the '868 and '476 patents are asserted in this motion.

## II.    LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  All four factors strongly favor granting preliminary injunctive relief to Azurity.

## III.    AZURITY IS LIKELY TO SUCCEED ON THE MERITS

### A.    ANNORA'S ANDA PRODUCT INFRINGES THE PI CLAIMS

Each of the six PI claims[3] is directed to a formulation for an RTU enalapril solution that is stable for at least a year or longer.  Azurity is likely to succeed on the merits of its infringement allegations because Annora's ANDA product literally meets each and every limitation of the

---

[3] Azurity selected six PI Claims for purposes of this motion.  Azurity reserves the right to assert additional and/or different claims going forward in C.A. No. 21-196.

claimed formulations as construed by the Court.[4]  Buckton, ¶¶ 57-118.  Indeed, Annora does not meaningfully dispute infringement.

The movant's likelihood of proving infringement during a preliminary injunction motion is determined in the same way as during later stages of litigation.  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003).  "First, the court determines the scope and meaning of the patent claims asserted . . .  [Secondly,] the properly construed claims are compared to the allegedly infringing device."  *Id.* (citation omitted).

### 1.  Annora's Own Description of the ANDA Product Shows That Azurity Is Very Likely to Prove Infringement of All PI Claims

Comparison of Annora's ANDA to the PI Claims shows that all six are literally infringed by Annora's ANDA formulation.  For example, the following chart compares claim 11 of the '868 patent to Annora's ANDA formulation (as described in the ANDA itself) and shows that each and every limitation is literally present.

| Claim 11 of the '868 Patent | Annora's ANDA (Buckton Decl.) |
|---|---|
| A stable oral liquid formulation | ██████████████████████ |
| about[5] 0.6 to about 1.2 mg/ml enalapril or a pharmaceutically acceptable salt or solvate thereof | ██████████████████████ |
| a buffer to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM[6] | ██████████████████████ |

---

[4] The parties provided a stipulation to the Court acknowledging their previous agreement to be bound by the claim construction order in *Azurity Pharmaceuticals, Inc. v. Alkem Laboratories Ltd.*, C.A. No. 19-2100 (LPS) as previously agreed.  D.I. 72; Dec. 9, 2021 Order.

[5] The Court construed the term "about" to mean "approximately."  D.I. 52, Ex. A.

[6] The Court construed the term "a buffer to maintain the pH" to mean "one or more buffers to maintain the pH."  D.I. 72.

| | |
|---|---|
| about 1 mg/ml of a preservative that is sodium benzoate | ███████████████ |
| Water | ███████████████ |
| optionally comprises a sweetener, a flavoring agent, or both | ███████████████ |
| wherein the formulation is stable at about 5±3°C for at least 18 months | ███████████████ |
| and has about 95% w/w or greater of the initial enalapril amount and about 5% w/w or less total impurity or related substances at the end of the given storage period | ███████████████ |

The above facts establish that Annora's ANDA product literally meets each and every limitation of Claim 11 of the '868 Patent.  Claim 12 of the '868 patent includes the exact same limitations as Claim 11 but requires 24-month storage period.  Thus, the above facts also establish that Annora's ANDA product also literally meets each and every limitation of Claim 12.  Buckton, ¶¶ 79-82.

The remaining four PI Claims from the '476 Patent also claim oral liquid formulations containing enalapril that have the same or similar limitations as Claims 11 and 12 of the '868 Patent.  As explained in detail in the Buckton Declaration paragraphs 83-118, Annora's ANDA product literally infringes each and every limitation of those claims as well; thus, Azurity is also likely to succeed in proving infringement of those claims as well.

2.      **Annora's Noninfringement Positions Utterly Lack Merit**

Annora's noninfringement positions lack merit.  With respect to claims 12 of the '868 patent and 13 of the '476 patent, Annora contends ████████████████████████████
████████████████████████ Ex. A at 7-8.  However, as discussed in the claim chart

above, Annora's own ANDA ███████████████████████████████████

███████████████:



When ██████████████████████████████████████████████████████

████████████████████████████████ it is clear that the claim is subsumed within the

specification.  *Id.*  Annora's ANDA therefore infringes as a matter of law.  *Sunovion Pharm., Inc.*

*v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1279 (Fed. Cir. 2013) ("What a generic applicant asks

for and receives approval to market, if within the scope of a valid claim, is an infringement.").[7]

As a separate non-infringement defense, Annora contends there is no evidence showing

that its ANDA product will meet ████████████████████████████████████.

Ex. A at 7-8.  Once again, Annora's own ANDA contradicts that purported defense.  The

specification for ███████████████████████████████████████████████

---

[7] Beyond the specification, Annora's ANDA contains additional evidence of infringement.
████████████████████████████████████████████████████████████.
In addition, ███████████████████████████████████████████████████
█████████████████████████████████████████████████. Azurity
has asked for a copy of █████████████████████████████████████████
█████████████████████████████ Azurity reserves the right to include this information, if
provided, in its reply brief.

7

██████████████   Buckton, Ex. 5 at ANNENAL0000317.  Additionally, the specification for

██████████████████████████████████████████████████████ *Id.*

at ANNENAL000347.



When ██████████████████████████████████████████

is compared to the claim language ████████████████████████████████████

██████████████████████████.  As a result, Annora's

ANDA Product infringes ████████████████████ *Sunovion*, 731 F.3d at 1279.

Thus, Annora's noninfringement positions are devoid of merit and Azurity is likely to succeed in proving infringement.

### B.   ANNORA CANNOT RAISE A SUBSTANTIAL QUESTION OF VALIDITY

Each of the PI Claims is presumed valid.  Annora contends the PI Claims are invalid, however, absent "persuasive evidence" of invalidity, the "very existence" of Azurity's patents satisfies Azurity's burden to show a likelihood of success with respect to validity.  *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

For purposes of invalidity in their contentions, Annora throws the kitchen sink at the PI Claims, contending the PI claims are invalid due to obviousness, lack of written description, and lack of enablement.  However, Annora's contentions are deeply flawed and devoid of "persuasive

evidence."[8]  *Id.*

### 1.  Each of the PI Claims Is Non-Obvious

Annora's arguments regarding obviousness do not meet its burden of "persuasive evidence."  *Id.*  "Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination[,]" a standard that Annora cannot even claim from its references. *Unigene Labs., Inc. v. Apotex, Inc.,* 655 F.3d 1352, 1360 (Fed. Cir. 2011).

### a.  None of the Prior Art References Supplied by Annora Disclosed an RTU Liquid Formulation of Enalapril

Annora's Invalidity Contentions (Ex. B) assert that the PI Claims are invalid for obviousness in view of, *inter alia*, Epaned® Kit, the'747 patent, IP & Brenner, Allen, Boulton, Dawson, Nahata, and Sosnowska.  Buckton, ¶¶ 120-138; Buckton, Exs. 3, 12-18.  None of these references disclose an RTU liquid formulation of enalapril.  Buckton, ¶ 120.  Nor do Annora's references disclose any liquid formulation of enalapril that is stable for at least a year.  *Id.*

### b.  The Prior Art "Teaches Away" from an RTU Liquid Formulation of Enalapril

The references disclosed by Annora in its Invalidity Contentions "teach away" from RTU liquid formulations of enalapril—they highlight the known stability issues with these liquid formulations and suggest there is no known solution.  In particular, a POSA would also understand that the prior art, including the presence of the Epaned® Kit on the market, was an acceptance that an RTU liquid enalapril formulation was not obtainable.  *Id.*, ¶ 144.  The Epaned® Kit contains a shelf-stable enalapril powder composition which must be reconstituted into a liquid form having limited stability prior to use.  *Id.*, ¶¶ 136-137.  As this "teaches away" from the claimed invention,

---

[8] In this section, Azurity has identified the numerous reasons why arguments contained in Annora's Invalidity Contentions are deficient.  In doing so, Azurity does not waive its right to respond to other, additional, or different arguments raised by Annora in its response.

there is no suggestion to combine this reference with others to prove obviousness of an RTU liquid formulation. *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1360 (Fed. Cir. 1999) ("There is no suggestion to combine . . . if a reference teaches away from its combination with another source."). For these reasons alone, Annora cannot provide "persuasive evidence" of obviousness.

### c.   Certain of Annora's Key Prior Art Published Nearly Thirty Years Before the Priority Date of the Claimed Invention

Annora also contends that a prior art reference named "Ip & Brenner" renders the claimed invention obvious. However, Ip & Brenner was published nearly thirty years before the priority date of the claimed invention. Buckton, Ex. 15 at ANNENAL00005388. This long period between the relevant prior art and the claimed invention is indicative of nonobviousness. *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1359 (Fed. Cir. 2013) (finding the 22 years between the relevant prior art and the claimed invention "speaks volumes to . . . nonobviousness"). Further, Ip & Brenner did not teach a liquid enalapril formulation that is stable for at least a year. Buckton, Ex. 15 at ANNENAL00005420 and 5422.

### d.   There Is No Motivation to Combine the Prior Art References, Nor Any Reasonable Expectation of Success

There is no motivation for a POSA to pursue any combination of the disparate references Annora relies upon to arrive at the claimed invention. Among other reasons, a POSA would not believe a 12+ month stable, RTU liquid formulation of enalapril was feasible. Buckton, ¶¶ 143-144.

Setting aside the lack of motivation, Annora will also be unable to show a POSA would have had a reasonable expectation of success of any combination. *Eli Lilly & Co. v. Teva Pharm. Intl. GmbH*, 8 F.4th 1331, 1344 (Fed. Cir. 2021) (explaining an accused infringer must not only prove a motivation to combine the references, but also a reasonable expectation of success in arriving at the claimed invention). Besides the presence of the Epaned® Kit on the market—which

requires reconstitution—a POSA would also recognize a number of Annora's references (including Allen and Boulton) define stability as ***not less than 90%*** of the starting amount of enalapril, not the 95% as claimed in the invention.  Buckton, ¶¶ 122, 125, 144.  Even using this lower standard for stability, none of the references disclose a formulation that is stable for 12 months or suggest that such stability was plausible.  This would indicate to a POSA that the claimed stability of even 12 months was simply not achievable—much less the 18 or 24 months required by claims 11 and 12 of the '868 patent and 12 and 13 of the '476 patent—and therefore the claimed invention could not be obvious.  *Id.*, ¶ 144.

### e.      There Are Objective Considerations of Non-Obviousness.

Objective considerations further support the non-obviousness of the PI Claims.  There is evidence of unexpected results: the inventions were unexpectedly stable as compared to prior art formulations.  Exs. C-E.  Epaned® satisfied a long-felt need for an oral solution of enalapril that required no manipulation prior to administration.  Patel, ¶¶ 9-12.  Epaned® has also been a commercial success (which itself is evidence of satisfaction of a long-felt need), including with respect to Azurity's prior Epaned® Kit product.  *Id.*, ¶ 12; Stec, ¶¶ 36-56.  These facts, and the arguments above, establish the non-obviousness of the PI Claims.

### 2.      Each of the PI Claims Meet the Written Description Requirement

Each of the PI Claims is adequately described.  Annora's contentions to the contrary ignore the express content of the specification.[9]

---

[9] As a note to the Court, the claims at issue in the case *Azurity Pharms. Inc. v. Bionpharma Inc.*, C.A. No. 21-1286 (LPS), which litigated a preliminary injunction for a patent in the same family as the patents-in-suit, are materially different than the asserted claims in the current case.  Most notably, the scope of the claims are narrower–all claims in the patents-in-suit require a buffer and the asserted claims of the '476 patent require a specific buffer combination.  D.I. 1-1, Ex. A, Ex. C.  The written description and enablement arguments of this case are thus materially different than the previous case.

### a.    Exemplary Buffers Are Listed in the Specification

Annora's contention that the buffer limitation of Claims 11 and 12 of the '868 patent ("a buffer to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM") lacks written description ignores the fact that the specification contains a list of exemplary buffers, the appropriate range of buffer concentrations, information regarding the effect of pH as well as ideal pH ranges, as well as examples with disclosed buffers. *E.g.*, D.I. 1-1, Ex. A at 13:24-43, 14:33-52, 32:17-33:40; Buckton, ¶¶ 146-147.   All of this information explicitly disclosed in the specification shows a POSA that the inventors were in possession of the claimed invention when the patent was filed. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190-91 (Fed. Cir. 2014); Buckton, ¶¶ 146-151.

### b.    The Specification Describes Stable Formulations at About pH 4.5 or Below for at Least 18 or 24 Months

The stability limitation of Claims 11 and 12 of the '868 patent ("[t]he stable oral liquid formulation of claim 1, wherein the formulation is stable at about 5±3° C. for at least [18 or 24] months") likewise is fully disclosed in the specification.  The specification defines stability in terms of purity and discloses (including figures) the relationship of the main degradants of enalapril to pH, discloses that the liquid formulations are stable at refrigerated conditions for up to at least 36 months—a full year longer than the 18 or 24 months required by the claims—and gives examples with measured stability including claimed formulations.  D.I. 1-1, Ex. A at 13:23-24, 13:64-66, 14:27-34, 14:48-52, 18:39-45, 18:64-19:3, 34:61-37:20, 37:25-39:20; Buckton, ¶¶ 147-150.  A POSA would understand that the inventors had possession of a formulation with this limitation.  Buckton, ¶ 151.

12

c.     **The Specification Describes Embodiments at About pH 3.3 and Between About pH 3 and 4**

Annora's contention that a POSA would not believe that the inventors were in possession of formulations with pH's of about 3.3 or between about 3 and about 4 is wholly incongruous with the specification, which specifically discloses embodiments with the pH "between about 3 and about 4" (D.I. 1-1, Ex. A at 14:38) and with the pH "about 3.3" (D.I. 1-1, Ex. A at 14:44-46). Buckton, ¶ 153.

d.     **The Specification Discloses a Citrate-Phosphate Buffer**

Annora also contends that claims 9, 10, 12, and 13 of the '476 patent lack written description because the specification does not contain examples of stable formulations using a citrate-phosphate buffer.  However, the specification specifically recites the buffering agents citric acid and disodium hydrogenphosphate.  D.I. 1-1, Ex. A at 10:40-41, 13:32-36; 13:61-63; Buckton, ¶ 152.  A POSA would recognize a citrate-phosphate buffer, a commonly-used buffer known as a "McIlvaine" buffer.  D.I. 1-1, Ex. A at 13:32-36, 37:20-39:20; Buckton, ¶ 152.  A POSA would readily understand how to create a formulation using a McIlvaine buffer within the disclosed range of concentrations to reach the claimed stability limitations.  Buckton, ¶ 152.

3.     **Each of the PI Claims Is Fully Enabled**[10]

Annora contends that claims 11 and 12 of the '868 patent are not enabled because the specification does not provide a recipe book of which excipients (and amounts thereof) a POSA should combine.  For a skilled formulator armed with the disclosures in the specification, it would be routine to take the disclosed examples that contain 1 mg/mL of enalapril and develop a formulation with between 0.6 mg/mL and 1.2 mg/mL enalapril—a narrow range specifically

---

[10] Annora provides no separate contentions regarding lack of enablement for the '476 claims, therefore, Azurity does not address those here. However, those claims are fully enabled as well. Buckton, ¶¶ 160-161.

disclosed in the specification.  *Id.*, ¶ 158; D.I. 1-1, Ex. A at 6:56-58.  Likewise, a POSA would understand how to vary the concentration of a buffer based on the specific buffer type selected to achieve the desired pH or vary the concentrations of the other ingredients using his/her own knowledge and the guidance provided by the specification.  Buckton, ¶¶ 157, 159.

Moreover, claims 11 and 12 of the '868 patent contain a narrow range of ingredients—especially when viewed from the perspective of a person of skill in the art who could readily ascertain appropriate concentrations of excipients to create a stable formulation, using the guidance in the specification disclosing such concentrations.

In sum, there is no "substantial question" that Claims 11 and 12 of the '868 patent meet both the written description and enablement requirements of Section 112.  *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 659-663 (E.D. Tex. 2017) (claims enabled where the evidence showed the quantity of experimentation necessary was routine and the specification provided direction and guidance in light of the description, incorporated references, and working examples).

## IV.  ABSENT INJUNCTION, AZURITY WILL BE IRREPARABLY HARMED

Annora is imminently poised to launch its generic equivalent to Epaned® into the market because it has tentative approval, has requested final approval, and the Bionpharma's 180-day market exclusivity will end on or about February 12, 2022.  A launch by Annora would cause Azurity significant and irreparable harm unless Annora is preliminarily enjoined, as set forth below.

*Direct Competition to Azurity's* ██████████.  Azurity and Annora are direct competitors, as Annora's ANDA Product ███████████████████████████ ████████████████████.  Patel, ¶¶ 17-19; Stec, ¶ 61.  In such instances, as here, "[w]here two companies are in competition with one another, the patentee suffers the harm – often

irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013); *see also Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("[The parties] are direct competitors selling competing products in this market. Thus, the record strongly shows a probability for irreparable harm."). Annora's launch would amount to an irreparable harm for this reason alone, particularly insofar as Azurity is a small specialty drug manufacturer and Epaned® ███████████. Patel, ¶¶ 5, 8; Stec, ¶¶ 61-62; *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (irreparable harm where "[t]he record included evidence that the [] products are [plaintiff's] flagship products"); *QBAS Co. v. C Walters Intercoastal Corp.*, No. 10-406, 2010 WL 7785955, at *12 (C.D. Cal. Dec. 16, 2010) (given "relatively small size of [company], losses this great can be devastating").

     *Azurity's Product Will Be the Only Product on the Market*. Not only would Azurity and Annora be direct competitors, Azurity's Epaned® product is very likely to be the only product in the RTU liquid enalapril market by the time Annora would be able to launch. Patel, ¶¶ 14-16; Stec, ¶¶ 9-11. Although Bionpharma previously commercialized an RTU liquid enalapril product, its supplier, CoreRx, Inc. ("CoreRx"), is no longer manufacturing Bionpharma's product. Patel, ¶ 14; Stec, ¶ 9. As such, Azurity is currently the only company able to manufacture and sell RTU liquid enalapril. Patel, ¶¶ 14, 35; Stec, ¶ 9. Moreover, Bionpharma stated that it does not have another supplier and will not be able to qualify a supplier before its supply of product runs out—a process which could take months or years. Patel, ¶ 15; Stec, ¶ 10; Patel Ex. 4, ¶ 29; Stec Ex. 27 at 12. Bionpharma also indicated that it did not stockpile product and has already declined at least one customer purchase order for its product due to its inability to fulfill the order as a result of the unavailability of its product. Stec, ¶¶ 9-10; Stec Ex. 8, ¶ 34; Stec Ex. 27. Because Bionpharma

lacks supply to fulfill current orders for its product and because it will take months, if not years, for Bionpharma to qualify a second supplier, Azurity's Epaned® product is effectively the only RTU liquid enalapril product on the market.[11]  Patel, ¶¶ 14-16; Stec, ¶ 11.  Accordingly, Epaned® should soon regain 100% of the market share.  Patel, ¶ 16; Stec, ¶ 65.

The existence of a two-player market, where Azurity would own 100% of the market in the absence of Annora's product, is further evidence of irreparable harm.  *E.g.*, *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011) ("[T]he existence of a two-player market may well serve as a substantial ground for granting an injunction . . . .") (emphasis omitted); *Metalcraft of Mayville, Inc. v. Toro Co.*, No. 16-C-544, 2016 WL 4076894, at *4 (E.D. Wis. Aug. 1, 2016) (where patentee previously owned 100% of the market, direct competition and loss of exclusivity "suggest[s] strongly the potential for irreparable harm") (citation omitted), *aff'd Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358 (Fed. Cir. 2017).  This is particularly so given the likely effects of Annora's launch, discussed further below.

<u>*Harm from Annora's Lower Priced Generic*</u>.  Annora's generic will almost certainly be priced much lower than Epaned®, both because



. Patel, ¶ 18; Stec, ¶ 70.  Thus, when a physician writes a prescription for Epaned®,

. Patel, ¶ 18.

As a result, Azurity expects to

. *Id.*, ¶ 19; Stec, ¶¶ 63-73.  Additionally, Annora's lower-

---

[11] This is particularly so given timing parameters pertinent to the present motion—*i.e.*, that Annora is unable to launch until February 13, 2022 and that trial is scheduled to begin on July 20, 2022.  Patel Ex. 4, ¶ 9; D.I. 15, ¶ 21.

priced generic ████████████████████████████████████. Patel,

¶ 20; Stec, ¶¶ 70-73.  No matter how Azurity ███████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████.  Patel, ¶¶ 20, 23; Stec, ¶¶ 79-80.  And, should Annora's

generic be removed from the market, ████████████████████████████

████████████████████.  Patel, ¶¶ 21-22; Stec, ¶ 81.  Such irreversible

effects ███████████████████ is another classic type of irreparable harm.  *Sanofi-*

*Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006); *Abbott Labs. v. Sandoz, Inc.*,

500 F. Supp. 2d 807, 844-45 (N.D. Ill. 2007); *Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, No.

07-4539 (SRC), 2010 WL 4687839, at *11-12 (D.N.J. Nov. 10, 2010).

████████████████████.  Azurity has made significant effort to educate

healthcare providers and patients on the benefits (efficacy and safety) of its Epaned® product over

compounded drug formulations.  Patel, ¶ 25-26.  But if Annora launches, ████████████

████████████████████████████████████████████████████████████████

████████████.  *Id.*, ¶ 26.  ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████.  *Id.*, ¶ 27.  ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.  *Id.*; Stec, ¶ 75.  Such

harm to ███████████████████ is yet another well-recognized type of irreparable

harm.  *E.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1337 (Fed. Cir. 2012) (lost sales of

"tag-along products" support a finding of irreparable harm).

████████████████████████████████████████████.  ████████████████

█████████████████████████████████████████████████████████████████

████████.   Even a short period of Annora's generic entry may result in: ██████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████████████████.  Patel, ¶¶ 30-34; Stec, ¶¶ 74, 76-78; *see also Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, No. 2:16-CV-00491-RWS-RSP, 2016 WL 7587325, at *23 (E.D. Tex. Nov. 21, 2016) (irreparable harm due to lost research and development and personnel), *aff'd*, 857 F.3d 858, 872-73 (Fed. Cir. 2017); *Hoffmann*, 2010 WL 4687839 at *12 (reduction in workforce is irreparable harm); *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 609 F. Supp. 2d 786, 811-12 (S.D. Ind. 2009) (loss of research opportunities is irreparable harm).

*Causal Nexus*.  An injunction is proper because a causal nexus exists between Annora's infringement and Azurity's irreparable harm.  "[T]he causal nexus requirement is simply a way of distinguishing between irreparable harm caused by patent infringement and irreparable harm caused by otherwise lawful competition—e.g., 'sales [that] would be lost even if the offending feature were absent from the accused product.'"  *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) (quoting *Apple, Inc*, 678 F.3d at 1324).  Here, the imminent harm to Azurity is directly tied to Annora's infringement.  Put simply, Annora cannot manufacture its product without infringing the PI Patents, and thus causal nexus exists.  *Mylan Institutional*, 857 F.3d at 872-73 (causal nexus shown where "[w]ithout infringing the . . . patents, [defendant] would not be able to make the . . . product described in its ANDA").

18

## V.  BALANCE OF HARDSHIPS FAVORS AZURITY

Azurity's harm will be much greater absent an injunction than the harm to Annora if an injunction is granted.  Requiring Azurity to compete against its own patented invention, with the resultant harm described above, would subject Azurity to substantial hardship.  *Supra* § IV; *see also Robert Bosch*, 659 F.3d at 1156; *Albany Molecular Res., Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-4638, 2010 WL 2516465, at *11 (D.N.J. June 14, 2010); Stec, ¶¶ 83-84.  Moreover, it is well settled that the purpose of a preliminary injunction is to preserve the status quo and protect the respective rights of the parties pending a merits determination.  *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 863 (Fed. Cir. 1987); *Abbott*, 544 F.3d at 1362; *Impax Lab's, Inc. v. Aventis Pharm., Inc.*, 235 F. Supp. 2d 390, 396 (D. Del. 2002).  Issuing an injunction now would impose little consequence to Annora because it has not yet launched its ANDA Product.  Stec, ¶¶ 85-86.  As such, this factor weighs strongly in Azurity's favor because Azurity would "lose the value of [its] patent[s]," whereas entry of a preliminary injunction would merely deprive Annora of its "ability to go on to the market and begin earning profits earlier."  *Glaxo Grp. Ltd. v. Apotex, Inc.*, 64 F. App'x 751, 756 (Fed. Cir. 2003).  Indeed, because trial is scheduled to begin on July 20, 2022 (and because Annora cannot launch until February 13, 2022), entry of a preliminary injunction would only delay Annora's market entry by a matter of months.  Patel Ex. 4, ¶ 9; D.I. 15, ¶ 21.

## VI.  PUBLIC INTEREST WEIGHS IN FAVOR OF PRELIMINARY INJUNCTION

The benefits a strong patent system encouraged Azurity to invest significant resources necessary to develop a stable oral liquid formulation of enalapril, addressing a long-felt need for a medication that eliminated the risks previously associated with solid or powder forms of enalapril which required manipulation prior to administration as an oral solution.  *Supra* § I.A (discussing the drawbacks of compounding (the only option for decades) and reconstitution (a more recent option), and how the RTU formulation removes the risks of such drawbacks).  There is a strong

19

public interest in encouraging investment like Azurity's through the issuance and enforcement of patent rights.  *E.g.*, *Sanofi*, 470 F.3d at 1383-84 (acknowledging the "public interest in encouraging investment in drug development and protecting the exclusionary rights conveyed in valid pharmaceutical patents"); *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, No. 05-5727, 2008 WL 1722098, at *12 (D.N.J. Mar. 28, 2008).  Accordingly, public interest weighs against "shifting market benefits to the infringer while litigation is pending for patents that are likely to withstand the attack" and thereby eroding "the incentive for discovery and development of new products." *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008).

No competing public interest factor outweighs encouraging this type of investment in medical development.  Stec, ¶¶ 87-94.  If Annora is enjoined from selling its product, patients will still have access to safe and effective RTU liquid formulations of enalapril from Azurity, ██████ ████████████████████████████████████████████████ ███████. Patel, ¶ 35; Stec ¶¶ 93-94.  Furthermore, although a competing infringing product may result in a lower price for the product, lower prices alone cannot justify unlawful patent infringement to achieve them.  *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) ("[S]elling a lower priced product does not justify infringing a patent."); *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) (same).  Accordingly, the public interest favors the Court's issuance of a preliminary injunction in this case.

## VII.   CONCLUSION

For the foregoing reasons, all four factors warrant entry of a preliminary injunction.  And Azurity is willing to post a bond of an appropriate amount to protect against any harm to Annora should it wrongfully be enjoined.  Accordingly, Azurity respectfully submits that this Court should grant Azurity's Motion for a Preliminary Injunction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ *Megan E. Dellinger*

Wendy L. Devine (wdevine@wsgr.com)
Kristina M. Hanson (thanson@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
T: (415) 947-2000

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
T: (302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

Natalie J. Morgan (nmorgan@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
San Diego, CA 92130
T: (858) 350-2300

*Attorneys for Plaintiff Azurity*
*Pharmaceuticals, Inc.*

Granville C. Kaufman (gkaufman@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
T: (323) 210-2900

Dated:  December 17, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2021, copies of the foregoing were caused to be served upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                               *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Defendant Annora Pharma*
*Private Limited*

Todd S. Werner, Esquire                                   *VIA ELECTRONIC MAIL*
Saukshmya Trichi, Esquire
CARLSON, CASPERS, VANDENBURGH,
   & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN  55402
 *Attorneys for Defendant Annora Pharma*
*Private Limited*


*/s/ Megan E. Dellinger*
_____
Megan E. Dellinger (#5739)