# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AZURITY PHARMACEUTICALS, INC.,

     Plaintiff,

v.

ANNORA PHARMA PRIVATE LIMITED,
and CAMBER PHARMACEUTICALS, INC.

     Defendant.

C.A. No. 21-196 (MSG)

**DEFENDANTS' SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSE**
**TO AZURITY'S INTERROGATORY NO. 5**

Defendants Annora Pharma Private Limited ("Annora") and Camber Pharmaceuticals, Inc. ("Camber") (collectively "Defendants"), by and through their undersigned counsel, hereby provide a second supplemental response to Plaintiff Azurity Pharmaceuticals, Inc.'s ("Azurity") Interrogatory No. 5.

The responses herein are based on information presently available to Defendants. Defendants are still engaged in discovery and investigation of this matter, the results of which may alter, modify, and/or add to some of the responses set forth herein. Defendants expressly reserve the right to supplement, amend, or otherwise modify their responses as discovery proceeds, including based on information obtained through fact and expert discovery, or upon further investigation.

Defendants provide the responses and objections set forth below without waiver of and with preservation of: (a) all questions as to competency, relevancy, materiality, privilege, and admissibility of any response, document, or thing, and the subject matter thereof, as evidence for any purpose and in any further proceeding in this action and in any other action; (b) the right to

object to the use of any response, document, or thing, or the subject matter thereof, on any

ground in any further proceeding in this action and any other action; (c) the right to object on any

ground at any time to any other discovery requests involving or related to the subject matter of

the discovery to which these responses, documents, or things are provided; and (d) the right at

any time to review, correct, add to, supplement, or clarify any of the responses contained herein

at any time.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

Defendants incorporate by reference the objections to the definitions and instructions set

forth in its Annora's Objections and Responses to Plaintiff Azurity Pharmaceuticals Inc.'s First

Set of Requests for Production and Azurity's First Set of Interrogatories, as well as Defendants'

Responses to Azurity's Second Set of Requests for Production as if set forth fully herein.

## INTERROGATORY RESPONSES

### INTERROGATORY NO. 5:

Describe in detail, in claim chart form, the factual and legal bases and supporting
evidence for your contention that you do not infringe, either literally or under the doctrine of
equivalents, induce the infringement of, or contribute to the infringement of, any claim of the
Asserted Patents, including but not limited to for each limitation in each claim of the Asserted
Patents that you contend is missing, identify all documents (by Bates Number), things, and
witnesses (by name) that support your contention.

### DEFENDANTS' SECOND SUPPLEMENTAL RESPONSE:

Defendants incorporate Annora's previously lodged Objections to the Definitions and

Instructions, and further object to this Interrogatory to the extent it seeks information protected

by the attorney-client privilege, the attorney work product doctrine, and/or other applicable

privileges.  Defendants further object to this Interrogatory as overly broad, unduly burdensome

and not proportional to the needs of the case after having considered the factors set forth in Fed.

R. Civ. P. 26(b)(1).  Defendants further object to this Interrogatory on the grounds that it is

compound and contains numerous discrete subparts that are not properly propounded as a single interrogatory. Defendants object that this interrogatory is a premature to the extent it purports to place the burden of demonstrating non-infringement on Defendants, as well as to the extent it seeks expert discovery before the commencement of expert discovery pursuant to the Court's Scheduling Order and Fed. R. Civ. P. 26(a)(2), 26(b)(4)(A). Further, discovery in this case is still in its initial stages, and Defendants have yet to receive many important documents they requested long ago, including documents from related litigations.

Subject to and without waiving the foregoing objections, and based upon a reasonably diligent investigation that is ongoing, Defendants incorporate by reference Defendants' May 25, 2022, Joint Invalidity Contentions which explain that claims 1-5, 8-18, 21-25, 28-30 of U.S. Patent Nos. 10,772,868 ("the '868 patent") and claims 1-14 of U.S. Patent No. 10,799,476 ("the '476 patent") (collectively "the Asserted Claims") are invalid under each of 35 U.S.C. §§ 103 (obviousness) and 112 (lack of written description, lack of enablement, and/or indefiniteness). Defendants do not infringe the Asserted Claims because, for the reasons explained therein, the Asserted Claims are invalid.

In addition, Defendants do not bear the burden of demonstrating non-infringement and leave Plaintiff to its burden of proof. Defendants note that Azurity has only alleged literal infringement and does not set forth any bases for infringement under the doctrine of equivalents.

All of the Asserted Claims require a specific buffer concentration of between about 5 mM to about 20 mM. As explained in Defendants' Joint Invalidity Contentions, a POSA would not understand the scope of this claim limitation and, in particular, how to assess this singular buffer concentration when the buffer is comprised of a combination of conjugate acid/base pairs having different physical and chemical properties. For at least this reason, Azurity has failed to

3

demonstrate Defendants' infringement of these claims.  Similarly, with respect to claim 6 of the '476 patent, Azurity has not demonstrated that the Annora ANDA No. 214467 Product contains buffer at a concentration of "about 10 mM."  Further, with respect to claim 7 of the '476 patent, Azurity has not demonstrated that the Annora ANDA Product contains buffer at a concentration of "about 11 mM."

With respect to asserted claims 11-12 and 24-25 of the '868 patent, and claims 12-13 of the '476 patent, Azurity has not identified any evidence demonstrating that Annora's ANDA No. 214467 Product has the requisite stability at 18 and 24 months.

With respect to claims 10 and 23 of the '868 patent, Azurity has not demonstrated that the Annora ANDA No. 214467 Product satisfies the requirement of a pH of about 3.3.  *See, e.g.*, ANNENAL00000570 (listing the target pH as "Between 3.15 and 3.55"); ANNENAL00004820 (showing Annora ANDA product at pH values other than "about 3.3"), ANNENAL00004826 (same); ANNENAL00004832 (same).

Azurity has relied on anticompetitive and improper means to maintain its monopoly position in the market for ready-to-use oral solutions of enalapril.  For example, Azurity asserts '476 patent, which did not exist when Annora developed its formulation.  Azurity sought the claims that issued in the '476 patent only after it learned of the formulation Annora developed for its ANDA product.  Annora's formulation does not appear anywhere in the patent application from which the '476 patent claims priority, and Azurity learned the details of that formulation solely as a result of Annora's regulatory obligation to provide Azurity with a detailed description of the reasons why its product did not infringe Azurity's earlier-issued patents.  In addition, the Court has already entered judgment that Annora's ANDA formulation does not infringe the patents that Azurity originally asserted against Annora.

4

Azurity also asserts the '868 patent, which bears no relation to the formulation described in the patent application from which the '868 patent claims priority.  Instead, the application is directed to a very specific formulation of buffering agents and preservative combined at specific concentrations and at a specific pH.  The claims in the '868 patent are very different than the specific formulations disclosed in the underlying application.  Despite the disconnect between the claims Azurity now asserts and the specific formulations disclosed in the patent application, Azurity continues to assert these patents against Defendants, without any objective basis to believe they are not invalid, particularly in view of the Court's findings and guidance set forth in its denial of Azurity's motion for a preliminary injunction.  Azurity's actions constitute bad faith and an improper attempt to maintain its monopoly.

In addition, Azurity has conducted anticompetitive activities by filing a Citizen's Petition with the U.S. Food and Drug Administration in concert with its patent litigation activities that urged FDA to prohibit Defendants and other generic drug companies from marketing their products.  In its petition, Azurity advanced arguments related to the impact of any changes in the excipients of the Epaned® formulation that are irreconcilable with any positions that Azurity could take to suggest that the patent application to which the Asserted Patents claim priority supports and enables the claims of the Asserted Patents.  *See, e.g.*, Civil Action No. 18-cv-1962, Dkt. 268, ¶ 208; SLVGT-RTU-EPA_00005846-SLVGT-RTU-EPA_00005863.

Further, the private equity firm that owns Azurity, NovaQuest, purchased a supplier of a generic drug company to artificially and improperly preserve its monopoly position for ready-to-use formulations of enalapril.  Bionpharma, the first drug company to file an ANDA for a ready-to-use enalapril formulation, launched its ANDA product in the summer of 2021.  Bionpharma relied upon a third-party vendor, CoreRx, Inc., to supply of its product to prevent Bionpharma

from supplying its enalapril formulation, NovaQuest acquired CoreRx.  Specifically, upon information and belief, NovaQuest purchased CoreRx to wrongly inhibit Bionpharma from selling generic product.  And, upon information and belief, its effort did succeed to at least some extent.  After NovaQuest acquired CoreRx and installed interested Azurity personnel on the board of CoreRx, it caused CoreRx to cease its supply of product to Bionpharma.  While Bionpharma, through resource-consuming litigation efforts, was able to secure an injunction requiring CoreRx to continue at least some of its supply, upon information and belief, Azurity maintained an inflated market position as a result of this tortious activity.  Upon information and belief, this inflated position continued through the time that Defendants began marketing the Annora product, which should, *inter alia*, factor against any request for injunctive relief.

Defendants reserve the right to supplement, amend, or otherwise modify these Contentions as discovery proceeds, including based on information obtained through fact and expert discovery, or upon further investigation.

Date: January 4, 2023

Of Counsel:

Todd S. Werner
William Woodford
Avantech Law, LLP
80 S 8th St., Suite 900
Minneapolis, MN 55402
Phone: (855) 750-9951
werner@avantechlaw.com
woodford@avantechlaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants*

# EXHIBIT B

**Kaufman, Granville**

---

| | |
|---|---|
| **From:** | Todd Werner <werner@avantechlaw.com> |
| **Sent:** | Wednesday, January 4, 2023 3:00 PM |
| **To:** | Hanson, Tina; Kaufman, Granville |
| **Cc:** | Nicholas Talarowski; Steve Brauerman; William Woodford; Ronald Golden; Dellinger, Megan E.; WSGR - Silvergate - Annora RTU Epaned |
| **Subject:** | RE: Azurity/Annora - Motion to Strike |

EXT - werner@avantechlaw.com

---

Tina:

As you know, Azurity's complaint includes claims for a permanent injunction.  Until Azurity's removes that request, discovery related to the *eBay* factors remains relevant.  In addition, as we have discussed a number of times, the information Defendants seek from third parties relates to Azurity's claims for damages and injunctive relief, as well as invalidity.  After numerous explanations, we do not understand why you attribute this discovery solely to issues raised in an interrogatory response that your colleague specifically requested.  In any event, Defendants cannot agree to the requests you have outlined in your email at this time.


**Todd Werner**


werner@avantechlaw.com
LinkedIn | Bio

---

**From:** Hanson, Tina <thanson@wsgr.com>
**Sent:** Tuesday, January 3, 2023 4:43 PM
**To:** Todd Werner <werner@avantechlaw.com>; Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity/Annora - Motion to Strike

Todd,

As we discussed this morning, in order for us to evaluate your offer below, we have requested that Annora confirm that:

(1) If Azurity proves infringement and Annora fails to prove its defenses, a 271(e)(4)(A) remedy is mandatory and Annora will not raise any objection to that remedy; and

(2) Upon entry of a Court order instructing that the effective date of FDA approval of Annora's ANDA is not earlier than the date of the expiration of the asserted patents (the 271(e)(4)(A) remedy), Annora and Camber will immediately cease marketing and selling the accused ANDA product and will not resume such activities until the expiration of the asserted patents.

Please let us know so we may respond to your below email.

Best,
Tina



**WILSON
SONSINI**

**Tina Hanson (she/her)| Wilson Sonsini Goodrich & Rosati**
One Market│Spear Tower│San Francisco, CA│94105-1126 | direct: 415.947.2048 | thanson@wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, December 30, 2022 12:20 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** Azurity/Annora - Motion to Strike

EXT - werner@avantechlaw.com

---

Counsel:

As you know, Defendants disagree with the basis of Plaintiffs' motion to strike, both substantively and procedurally.  In any event, we are still working to find ways to streamline the remaining discovery and obviate the need for further motion practice (both with respect to this motion and the discovery motion we've been discussing for many weeks).


To this end, Defendants would be willing to follow the framework set out in *In re Gabapentin Patent Litigation* cited by Plaintiff.  Specifically, Defendants would agree to forego any unclean hands, patent misuse, and antitrust defenses with the understanding that doing so will not prevent Defendants from seeking discovery on the underlying facts and conduct outlined in its Interrogatory response and offering such evidence in response to any motion for injunctive relief that Azurity may file in the future (or any other issues for which such evidence is relevant). This is consistent with the *In re Gabapentin* case because, while striking the unclean hands defense, the Court confirmed that the underlying facts remained relevant to the availability of injunctive relief.  648 F. Supp. 2d 641, 651, n.20 (D.N.J. 2009) (The Court notes, however, that even if Warner–Lambert's admitted marketing misconduct cannot serve as the basis for Defendants' assertions of unclean hands, evidence of such misconduct may be considered as a factor affecting Warner–Lambert's ability to obtain a permanent injunction as relief in this proceeding. . . .  Defendants' arguments to this effect—that Warner–Lambert should not be allowed to rely on illegally acquired market share as a basis for injunctive relief and that it would be inequitable and against public interest to use a permanent injunction to protect Warner–Lambert's ill-gotten gains—are both relevant and compelling. Such arguments, and the evidence required to support them, are not determinative at this point of the proceeding but may be considered by the Court at a later stage.").


Please confirm Plaintiffs agree to this proposal, and, if so, we can moot the motion to strike.  The parties can then proceed to discuss any remaining discovery disputes and present unresolved issues to the Court for resolution.

Best regards,

Todd Werner

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 21-196-MSG |
| ANNORA PHARMA PRIVATE LIMITED and CAMBER PHARMACEUTICALS, INC., | |
| Defendants. | |

## <u>NOTICE OF SUBPOENA TO CORERX, INC.</u>

PLEASE TAKE NOTICE, pursuant to Rule 45 of the Federal Rules of Civil Procedure and

applicable local rules of the District of Delaware, Defendants Annora Pharma Private Limited and

Camber Pharmaceuticals, Inc. will serve the attached subpoenas duces tecum (Exhibit A) upon

CoreRx, Inc.

Date: December 14, 2022

Of Counsel:

Todd S. Werner
William Woodford
Avantech Law, LLP
80 S 8th St., Suite 900
Minneapolis, MN 55402
Phone: (855) 750-9951
werner@avantechlaw.com
woodford@avantechlaw.com

BAYARD, P.A.

*/s/ Ronald P. Golden III*
Stephen B. Brauerman (#4952)
Ronald P. Golden III (#6254)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendants*

# EXHIBIT A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

District of Delaware

| | | |
|---|---|---|
| Azurity Pharmaceuticals, Inc. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   21-196 (MSG) |
| Annora Pharma Private Ltd. et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                        CoreRx, Inc.
                        14205 Myerlake Circle, Clearwater, FL 33760
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: 2801 N. Florida Ave | Date and Time: |
|---|---|
| Tampa, FL 33602 (Unless otherwise agreed with noticing attorney) | 01/04/2023 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/14/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Todd S. Werner |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Annora Pharma Private Ltd. and Camber Pharmaceuticals, Inc. _____ , who issues or requests this subpoena, are:

Todd Werner, Avantech Law, 80 south 8th Street, Suite 900, Minneapolis, MN 55402, werner@avantechlaw.com, 612-895-2722

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 21-196 (MSG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _CoreRx, Inc._

on *(date)* _12/14/2022_ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _0.00_ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Schedule A

## DEFINITIONS AND INSTRUCTIONS

For the purposes of these document requests and wherever used herein, the terms set forth below shall have the following meaning:

1.      "You," "Your," or "CoreRx," means CoreRx, Inc., including any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

2.      "NovaQuest," means NovaQuest Capital Management, LLC, including any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

3.      "Bionpharma," means Bionpharma, Inc., including any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

## REQUESTS FOR DOCUMENTS

1.      All correspondence between You and Azurity or NovaQuest concerning Bionpharma or the supply of ready-to-use enalapril.

2.      All correspondence within CoreRx regarding the reduction or stoppage of supply of ready-to-use enalapril to Bionpharma.

3.      All correspondence or information exchanged between CoreRx and NovaQuest concerning ready-to-use enalapril oral solution before October 26, 2021.

**EXHIBIT D**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AZURITY PHARMACEUTICALS, INC., | | |
| Plaintiff, | | |
| v. | | C.A. No. 21-196-MSG |
| ANNORA PHARMA PRIVATE LIMITED and CAMBER PHARMACEUTICALS, INC., | | **[FILED UNDER SEAL]** |
| Defendants. | | |

## NOTICE OF SUBPOENA TO NOVAQUEST CAPITAL MANAGEMENT, LLC

PLEASE TAKE NOTICE, pursuant to Rule 45 of the Federal Rules of Civil Procedure and applicable local rules of the District of Delaware, Defendants Annora Pharma Private Limited and Camber Pharmaceuticals, Inc. will serve the attached subpoenas duces tecum (Exhibit A) upon NovaQuest Capital Management, LLC.

| | |
|---|---|
| Date: December 14, 2022 | BAYARD, P.A. |
| Of Counsel: | */s/ Ronald P. Golden III* |
| | Stephen B. Brauerman (#4952) |
| Todd S. Werner | Ronald P. Golden III (#6254) |
| William Woodford | 600 N. King Street, Suite 400 |
| Avantech Law, LLP | Wilmington, Delaware 19801 |
| 80 S 8th St., Suite 900 | (302) 655-5000 |
| Minneapolis, MN 55402 | sbrauerman@bayardlaw.com |
| Phone: (855) 750-9951 | rgolden@bayardlaw.com |
| werner@avantechlaw.com | |
| woodford@avantechlaw.com | *Attorneys for Defendants* |

# EXHIBIT A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
District of Delaware

| | |
|---|---|
| Azurity Pharmaceuticals, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  21-196 (MSG) |
| Annora Pharma Private Ltd. et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  NovaQuest Capital Management, LLC
c/o The Corporation Trust Company, 1209 Orange St., Wilmington, DE 19801

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Bayard, P.A.<br>600 N. King Street, Suite 400<br>Wilmington, DE 19801 | Date and Time:<br><br>01/04/2023 9:00 am |
|---|---|

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  12/14/2022

*CLERK OF COURT*

OR

_____          /s/ Todd S. Werner
*Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Annora Pharma Private Ltd. and Camber Pharmaceuticals, Inc._____ , who issues or requests this subpoena, are:

Todd Werner, Avantech Law, 80 south 8th Street, Suite 900, Minneapolis, MN 55402, werner@avantechlaw.com, 612-895-2722

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 21-196 (MSG)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* NovaQuest Capital Management, LLC

on *(date)* 12/14/2022 .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                  *Server's signature*

                                    _____
                                                  *Printed name and title*

                                    _____
                                                  *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Schedule A

## DEFINITIONS AND INSTRUCTIONS

For the purposes of these document requests and wherever used herein, the terms set forth below shall have the following meaning:

1.      "You," "Your," or "NovaQuest," means NovaQuest Capital Management, LLC, including any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

2.      "CoreRx" means CoreRx, Inc., including any of its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, predecessors, subsidiaries, affiliates, divisions, or departments.

3.      The term "Epaned Patents" refers to U.S. Patent Nos. 9669008, 9808442, 10039745, 10154987, 10772868, 10786482, 11040023, 11141405, and 11173141, and any Related Patents.

4.      "Related Patents" means any patents or patent applications that claim priority to a common underlying patent applications to the referenced patent, including but not limited to any continuation, continuation-in-part, reissue, re-examination, or provisional patents within the same patent family as the referenced patent.

5.      "Annora's ANDA" means ANDA No. 214467.

6.      "Annora's ANDA Product" means the proposed drug product that is the subject of ANDA No. 214467.

7.      "Authorized Generic Enalapril" means any and all ready-to-use oral solutions of enalapril that are authorized for sale by Azurity (under an agreement or otherwise), including but not limited to the ready-to-use enalapril oral solution marketed by or on behalf of Amneal Pharmaceuticals, Inc.

8.     "Generic Enalapril" means any ready-to-use oral solution of enalapril that is not marketed under the name Epaned®, including but not limited to the ready-to-use enalapril solution products that are the subject of ANDAs filed by Bionpharma, Amneal, Annora, Alkem, and Aurobindo.

9.     "Epaned®" refers to the ready-to-use oral solution of enalapril marketed by or on behalf of Azurity (including any predecessors) under NDA No. 208686 or any related supplemental NDA.

## REQUESTS FOR DOCUMENTS

1.     All documents relating to the Epaned® Patents, including but not limited to any documents provided by, or exchanged with, Silvergate Pharmaceuticals, Inc., related to the infringement or validity of the Epaned® Patents.

2.     All documents concerning any valuations of the Epaned® Patents or projected revenue and/or profit related to the Epaned® Patents.

3.     Any valuations of the Epaned® product line, including any analysis of marginal revenue, costs, and profits in relation to the acquisition of Silvergate Pharmaceuticals, Inc.

4.     All documents related to CoreRx's supply of ready-to-use enalapril to Bionpharma.

5.     All documents related to attempts to reduce, impede, or stop CoreRx's supply of ready-to-use enalapril oral solution products to Bionpharma.

6.     All documents related to any projected difference in revenue, costs, or profits resulting from any changes to CoreRx's supply of ready-to-use enalapril oral solution products to Bionpharma.

7.     Correspondence between NovaQuest and CoreRx related to enalapril or Bionpharma.

8.     All documents concerning NovaQuest's decision to acquire CoreRx.

9.     All documents related to Annora's ANDA or Annora's ANDA Product.

10.    All documents related to the impact of any Generic Enalapril (including Authorized Generic Enalapril) on sales, revenues, or profits of Epaned®.

## **CERTIFICATE OF SERVICE**

I, Ronald P. Golden, hereby certify that, on December 14, 2022, a copy of the foregoing

document was served via email to all counsel of record.

*/s/ Ronald P. Golden III*
Ronald P. Golden III (#6254)

**Notices**

<u>1:21-cv-00196-MSG Azurity</u>
<u>Pharmaceuticals, Inc. v. Annora</u>
<u>Pharma Private Limited and</u>
<u>Camber Pharmaceuticals, Inc.</u>

PATENT

## U.S. District Court

### District of Delaware

## Notice of Electronic Filing

The following transaction was entered by Golden, Ronald on 12/14/2022 at 5:11 PM EST and filed on 12/14/2022

| | |
|---|---|
| **Case Name:** | Azurity Pharmaceuticals, Inc. v. Annora Pharma Private Limited and Camber Pharmaceuticals, Inc. |
| **Case Number:** | <u>1:21-cv-00196-MSG</u> |
| **Filer:** | Annora Pharma Private Limited |
| **Document Number:** | <u>151</u> |

**Docket Text:**
**[SEALED] NOTICE of Subpoena to Novaquest Capital Management, LLC by Annora Pharma Private Limited (Attachments: # (1) Exhibit A, # (2) Certificate of Service)(Golden, Ronald)**

**1:21-cv-00196-MSG Notice has been electronically mailed to:**

Anne Shea Gaza    agaza@ycst.com, corpcal@ycst.com, corporate@ycst.com

Granville C. Kaufman    gkaufman@wsgr.com

Jack B. Blumenfeld    Jbbefiling@mnat.com, jblumenfeld@mnat.com

John C. Phillips , Jr    jcp@pmhdelaw.com, tlb@pgslaw.com

Kristina A. Hanson    thanson@wsgr.com, msana@wsgr.com

Megan C. Haney    mch@pgmhlaw.com, ekw@pgmhlaw.com

Megan Elizabeth Dellinger    mdellinger@mnat.com, medefiling@mnat.com

Natalie J. Morgan    nmorgan@wsgr.com

Ronald P. Golden , III    rgolden@bayardlaw.com, dchase@bayardlaw.com, ntalarowski@bayardlaw.com

Stephen B. Brauerman    sbrauerman@bayardlaw.com, dchase@bayardlaw.com, ntalarowski@bayardlaw.com, tdevine@bayardlaw.com

Todd S. Werner    werner@avantechlaw.com, rfirner@carlsoncaspers.com

Wendy L. Devine    wdevine@wsgr.com, aduff@wsgr.com

William R. Woodford     woodford@avantechlaw.com

**1:21-cv-00196-MSG Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/14/2022] [FileNumber=5069289-0] [6d8e4105838cc65c387db36a86c56d1b69f9ef6c5288f0fbb813ae5d4391fb2993 fa89f596920afdfa40a364a00392 4eb7375ed7e97e691b6fcaab376e794c90]]
**Document description:**Exhibit A
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/14/2022] [FileNumber=5069289-1] [203bd65491f381fabc581c7c1727964c49701c5ef70fc7d7d5e94f923183e867d6 601f4534226a099d28bc24079e4dcd06d14754ee2e542cb1e3c3d8cd8d2536]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=12/14/2022] [FileNumber=5069289-2] [2e57c18debcfd22841f7cac010270c321b62c0496fd6bbfb3d61e7205d0ebb4438 a72f10285449859a594bed376027540005644f44afba39f8f541f2b13c1c8d]]

# EXHIBIT E

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

HELIOS SOFTWARE, LLC AND PEARL
SOFTWARE, INC.,

               Plaintiffs,

    v.

SPECTORSOFT CORPORATION,

               Defendant.

C.A. No. C.A. No. 12-cv-081 LPS)

**JURY TRIAL DEMANDED**

---

### SPECTORSOFT CORPORATION'S (1) MOTION TO STRIKE PLAINTIFF'S LATE-DISCLOSED DISCOVERY AND NEW CLAIMS AND LEGAL THEORIES RELATED THERETO, AND (2) MOTION FOR A PROTECTIVE ORDER BARRING PLAINTIFF'S REQUEST FOR ADDITIONAL ESI DISCOVERY

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 26 and 37, Defendant SpectorSoft Corporation ("SpectorSoft") respectfully moves this Court to strike Plaintiffs' late disclosed discovery and any new claims and legal theories related thereto, arising from Plaintiff's production on March 18, 2015, of the document identified as PearlSW0159866-67, having as its listed subject "Pearl Echo 5.0 Download Lead." SpectorSoft further respectfully moves this Court for a Protective Order barring Plaintiffs' request for additional ESI discovery in the nature of documents from Mr. Ron Chesley's personal email account related to Plaintiffs' late-disclosed discovery. The grounds for this motion are set forth in the letter filed herewith. A proposed form of order is attached.

April 2, 2015

RATNERPRESTIA

Of Counsel:

*/s/ James P. Martin*
James P. Martin, Bar No. #170044
jmartin@sflaw.com
Shartsis Friese LLP
One Maritime Plaza
Eighteenth Floor
San Francisco, CA  94111-3598
Telephone:      (415) 421-6500
Facsimile:      (415) 421-2922

*Attorneys for Defendant SPECTORSOFT
CORPORATION*

*/s/ Rex A. Donnelly*
Rex A. Donnelly (#3492)
1007 Orange Street, Suite 205
Wilmington, DE 19801
(302) 778-2500 (phone)
(302) 778-2600 (fax)
radonnelly@ratnerprestia.com

**EXHIBIT F**

CLOSED,MEDIATION-CJB,PATENT

# U.S. District Court
## District of Delaware (Wilmington)
## CIVIL DOCKET FOR CASE #: 1:12-cv-00081-LPS

| | |
|---|---|
| Helios Software LLC et al v. SpectorSoft Corporation | Date Filed: 01/26/2012 |
| Assigned to: Judge Leonard P. Stark | Date Terminated: 09/25/2015 |
| Related Cases: 1:11-cv-01259-LPS | Jury Demand: Both |
| 1:15-cv-00020-LPS-CJB | Nature of Suit: 830 Patent |
| Cause: 35:271 Patent Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Helios Software LLC**                    represented by    **Adam Wyatt Poff**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
Email: apoff@ycst.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cabrach J. Connor**
Email: cconnor@taylordunham.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey R. Johnson**
Email: jjohnson@reedscardino.com
*TERMINATED: 03/06/2013*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Tatum Lee**
Email: jennifer@connorkudlaclee.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Monte Terrell Squire**
Duane Morris LLP
1201 North Market Street
Suite 501
Wilmington, DE 19801
302-657-4918
Fax: 302-397-2543
Email: MTSquire@duanemorris.com
*ATTORNEY TO BE NOTICED*

**Pilar Gabrielle Kraman**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 576-3586
Email: pkraman@ycst.com
*ATTORNEY TO BE NOTICED*

**Robert M. Vrana**
Young, Conaway, Stargatt & Taylor LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
Email: rvrana@ycst.com
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Pearl Software Inc.**      represented by   **Adam Wyatt Poff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monte Terrell Squire**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pilar Gabrielle Kraman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert M. Vrana**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Defendant**</u>

**SpectorSoft Corporation**      represented by   **Rex A. Donnelly , IV**
RatnerPrestia, P.C.
1007 Orange Street, Suite 205
P.O. Box 1596
Wilmington, DE 19801
(302) 778-2500
Email: radonnelly@ratnerprestia.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew John Koopman**
RatnerPrestia, P.C.
1007 Orange Street, Suite 205
P.O. Box 1596

Wilmington, DE 19801
610-407- 0700
Fax: 302-778-2600
Email: akoopman@ratnerprestia.com
*ATTORNEY TO BE NOTICED*

**Christopher H. Blaszkowski**
RatnerPrestia, P.C.
1007 Orange Street, Suite 205
P.O. Box 1596
Wilmington, DE 19801
(302) 778- 2500
Fax: (302) 778-2600
Email: cblaszkowski@ratnerprestia.com
*ATTORNEY TO BE NOTICED*

**Erick C. Howard**
Email: ehoward@sflaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James P. Martin**
Email: jmartin@polsinelli.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kajsa M. Minor**
Email: kminor@sflaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lisa Stockholm**
UNDELIVERABLE EMAIL 3/13/15
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**SpectorSoft Corporation**                    represented by    **Rex A. Donnelly , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew John Koopman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher H. Blaszkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

| | | |
|---|---|---|
| **Helios Software LLC** | represented by | **Adam Wyatt Poff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Monte Terrell Squire**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Robert M. Vrana**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Defendant**

| | | |
|---|---|---|
| **Pearl Software Inc.** | represented by | **Adam Wyatt Poff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Monte Terrell Squire**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Robert M. Vrana**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **SpectorSoft Corporation** | represented by | **Rex A. Donnelly , IV**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andrew John Koopman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Christopher H. Blaszkowski**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

V.

**Counter Defendant**

| | | |
|---|---|---|
| **Helios Software LLC** | represented by | **Adam Wyatt Poff**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Cabrach J. Connor**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Jeffrey R. Johnson**
(See above for address)
*TERMINATED: 03/06/2013*
*ATTORNEY TO BE NOTICED*

**Monte Terrell Squire**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert M. Vrana**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Defendant**</u>

**Pearl Software Inc.**                  represented by  **Adam Wyatt Poff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Monte Terrell Squire**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert M. Vrana**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**SpectorSoft Corporation**              represented by  **Rex A. Donnelly , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew John Koopman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher H. Blaszkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

<u>**Counter Defendant**</u>

**SpectorSoft Corporation**              represented by  **Rex A. Donnelly , IV**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew John Koopman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher H. Blaszkowski**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/26/2012 | 1 | COMPLAINT FOR PATENT INFRINGEMENT filed with Jury Demand against SpectorSoft Corporation - Magistrate Consent Notice to Pltf. ( Filing fee $ 350, receipt number 0311-1012948.) - filed by Pearl Software Inc., Helios Software LLC. (Attachments: # 1 Exhibit A and B, # 2 Civil Cover Sheet)(lih) (Entered: 01/27/2012) |
| 01/26/2012 | 2 | Notice, Consent and Referral forms re: U.S. Magistrate Judge jurisdiction (lih) (Entered: 01/27/2012) |
| 01/26/2012 | 3 | Report to the Commissioner of Patents and Trademarks for Patent/Trademark Number(s) US 6,978,304 B2; US 7,634,571 B2. (lih) (Entered: 01/27/2012) |
| 01/26/2012 | 4 | Disclosure Statement pursuant to Rule 7.1 filed by Helios Software LLC. (lih) (Entered: 01/27/2012) |
| 01/26/2012 | 5 | Disclosure Statement pursuant to Rule 7.1 filed by Pearl Software Inc.. (lih) (Entered: 01/27/2012) |
| 01/27/2012 | | Summons Issued with Magistrate Consent Notice attached as to SpectorSoft Corporation on 1/27/2012. Requesting party or attorney should pick up issued summons at the Help Desk, Room 4209, or call 302-573-6170 and ask the Clerk to mail the summons to them. (lih) (Entered: 01/27/2012) |
| 01/30/2012 | 6 | NOTICE of Change of Address by Monte Terrell Squire (Squire, Monte) (Entered: 01/30/2012) |
| 02/01/2012 | | Case Assigned to Judge Leonard P. Stark. Please include the initials of the Judge (LPS) after the case number on all documents filed. (rjb) (Entered: 02/01/2012) |
| 02/01/2012 | 7 | Return of Service Executed by Pearl Software Inc., Helios Software LLC. SpectorSoft Corporation served on 2/1/2012, answer due 2/22/2012. (Squire, Monte) (Entered: 02/01/2012) |
| 02/13/2012 | 8 | Joint STIPULATION TO EXTEND TIME to Answer Complaint to March 30, 2012 - filed by Helios Software LLC, SpectorSoft Corporation. (Squire, Monte) (Entered: 02/13/2012) |
| 02/14/2012 | | SO ORDERED, re 8 Joint STIPULATION TO EXTEND TIME to Answer Complaint to March 30, 2012 filed by SpectorSoft Corporation, Helios Software LLC. Signed by Judge Leonard P. Stark on 2/13/12. (ntl) (Entered: 02/14/2012) |
| 03/22/2012 | 9 | AMENDED COMPLAINT *for Patent Infringement* against SpectorSoft Corporation- filed by Pearl Software Inc., Helios Software LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Squire, Monte) (Main Document 9 replaced on 3/22/2012) (ntl). (Entered: 03/22/2012) |
| 04/12/2012 | 10 | STIPULATION TO EXTEND TIME to respond to the Amended Complaint to May 11, 2012 - filed by Helios Software LLC, Pearl Software Inc., SpectorSoft Corporation. (Squire, Monte) (Entered: 04/12/2012) |
| 04/16/2012 | | SO ORDERED, re 10 STIPULATION TO EXTEND TIME to respond to the Amended Complaint to May 11, 2012 filed by SpectorSoft Corporation, Helios Software LLC, |

| | | confidential information (regarding the substance of the ADR/mediation process or otherwise), they may be filed under seal. A redacted version of the letters may be thereafter submitted by the parties in the time frame called for by the Court's procedure regarding "Filing Sealed Civil Documents in CM/ECF," dated October 2012, a copy of which is available at http://www.ded.uscourts.gov/manualsprocedures.; (3) Defendant may file a Reply Brief in letter form of no more than two (2) single-spaced pages in length, by no later than 3/24/15.; (4) To the extent the Court, after reviewing the full briefing, desires argument or wishes to hold a hearing in order to resolve the Motion, it will thereafter inform the parties. Ordered by Judge Christopher J. Burke on 3/17/2015. (dlk) (Entered: 03/17/2015) |
|---|---|---|
| 03/19/2015 | 528 | MOTION for Sanctions *(Renewed) for Plaintiffs' Breach of the Confidentiality Provision of This Court's Order Regarding Alternative Dispute Resolution* - filed by SpectorSoft Corporation. (Attachments: # 1 Text of Proposed Order)(Donnelly, Rex) (Entered: 03/19/2015) |
| 03/19/2015 | 529 | [SEALED] Letter OPENING BRIEF in Support re 528 MOTION for Sanctions *(Renewed) for Plaintiffs' Breach of the Confidentiality Provision of This Court's Order Regarding Alternative Dispute Resolution* filed by SpectorSoft Corporation.Answering Brief/Response due date per Local Rules is 4/6/2015. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Certificate of Service)(Donnelly, Rex) (Entered: 03/19/2015) |
| 03/19/2015 | 530 | [SEALED] Letter ANSWERING BRIEF in Opposition re 528 MOTION for Sanctions *(Renewed) for Plaintiffs' Breach of the Confidentiality Provision of This Court's Order Regarding Alternative Dispute Resolution* filed by Helios Software LLC, Pearl Software Inc..Reply Brief due date per Local Rules is 3/30/2015. (Squire, Monte) (Entered: 03/19/2015) |
| 03/24/2015 | 531 | [SEALED] Letter REPLY BRIEF re 528 MOTION for Sanctions *(Renewed) for Plaintiffs' Breach of the Confidentiality Provision of This Court's Order Regarding Alternative Dispute Resolution* filed by SpectorSoft Corporation. (Attachments: # 1 Certificate of Service)(Donnelly, Rex) (Entered: 03/24/2015) |
| 03/26/2015 | 532 | MOTION for Pro Hac Vice Appearance of Attorney Kajsa M. Minor - filed by SpectorSoft Corporation. (Donnelly, Rex) (Entered: 03/26/2015) |
| 03/26/2015 | | SO ORDERED, re 532 MOTION for Pro Hac Vice Appearance of Attorney Kajsa M. Minor filed by SpectorSoft Corporation. Signed by Judge Leonard P. Stark on 3/26/15. (ntl) (Entered: 03/26/2015) |
| 03/26/2015 | 533 | REDACTED VERSION of 529 Opening Brief in Support, by SpectorSoft Corporation. (Attachments: # 1 Exhibit A Redacted in its Entirety, # 2 Exhibit B Redacted in its Entirety, # 3 Exhibit C Public Version)(Donnelly, Rex) (Entered: 03/26/2015) |
| 03/26/2015 | 534 | REDACTED VERSION of 530 Answering Brief in Opposition, *to SpectorSoft's Renewed Motion for Sanctions* by Helios Software LLC, Pearl Software Inc.. (Squire, Monte) (Entered: 03/26/2015) |
| 03/30/2015 | | Pro Hac Vice Attorney Kajsa M. Minor for SpectorSoft Corporation added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. (mas, ) (Entered: 03/30/2015) |
| 03/31/2015 | 535 | REDACTED VERSION of 531 Reply Brief, by SpectorSoft Corporation. (Donnelly, Rex) (Entered: 03/31/2015) |
| 04/02/2015 | 536 | MOTION to Strike *Plaintiff's Late-Disclosed Discovery and New Claims and Legal Theories Related Thereto, and Motion for a Protective Order Barring Plaintiff's Request* |

| | | |
|---|---|---|
| | | *for Additional ESI Discovery* - filed by SpectorSoft Corporation. (Attachments: # 1 Text of Proposed Order)(Donnelly, Rex) (Entered: 04/02/2015) |
| 04/06/2015 | | CORRECTING ENTRY: item filed as D.I. 537 deleted per counsel's request on 4/6/2015. Counsel to re-file corrected document. (rpg) (Entered: 04/06/2015) |
| 04/06/2015 | 537 | [SEALED] OPENING BRIEF in Support re 536 MOTION to Strike *Plaintiff's Late-Disclosed Discovery and New Claims and Legal Theories Related Thereto, and Motion for a Protective Order Barring Plaintiff's Request for Additional ESI Discovery* filed by SpectorSoft Corporation.Answering Brief/Response due date per Local Rules is 4/23/2015. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Certificate of Service)(Donnelly, Rex) (Entered: 04/06/2015) |
| 04/09/2015 | 538 | [SEALED] Letter to The Honorable Leonard P. Stark from Monte T. Squire regarding Plaintiffs' Answering Letter in Opposition to 1) SpectorSoft's Motion to Strike Plaintiffs' Late Disclosed Discovery and 2) SpectorSoft's Motion for a Protective Order - re 537 Opening Brief in Support,, 536 MOTION to Strike *Plaintiff's Late-Disclosed Discovery and New Claims and Legal Theories Related Thereto, and Motion for a Protective Order Barring Plaintiff's Request for Additional ESI Discovery*. (Attachments: # 1 Exhibit A - D)(Squire, Monte) (Entered: 04/09/2015) |
| 04/10/2015 | 539 | REDACTED VERSION of 537 Opening Brief in Support,, by SpectorSoft Corporation. (Attachments: # 1 Exhibit A Redacted, # 2 Exhibit B Redacted, # 3 Exhibit C Redacted, # 4 Exhibit D Public Version)(Donnelly, Rex) (Entered: 04/10/2015) |
| 04/13/2015 | 540 | Letter REPLY to Response to Motion re 536 MOTION to Strike *Plaintiff's Late-Disclosed Discovery and New Claims and Legal Theories Related Thereto, and Motion for a Protective Order Barring Plaintiff's Request for Additional ESI Discovery* filed by SpectorSoft Corporation. (Donnelly, Rex) (Entered: 04/13/2015) |
| 04/13/2015 | 541 | Letter to The Honorable Leonard P. Stark from Rex A. Donnelly regarding Joint Request for Teleconference - re 536 MOTION to Strike *Plaintiff's Late-Disclosed Discovery and New Claims and Legal Theories Related Thereto, and Motion for a Protective Order Barring Plaintiff's Request for Additional ESI Discovery*. (Donnelly, Rex) (Entered: 04/13/2015) |
| 04/16/2015 | 542 | REDACTED VERSION of 538 Letter,, *Letter Brief in Opposition to SpectorSoft's 1) Motion to Strike and 2) Motion for Protective Order* by Helios Software LLC, Pearl Software Inc.. (Attachments: # 1 Exhibit A - D)(Squire, Monte) (Entered: 04/16/2015) |
| 04/22/2015 | 543 | Letter to The Honorable Leonard P. Stark from Rex A. Donnelly regarding Scheduling of Inequitable Conduct Bench Trial. (Donnelly, Rex) (Entered: 04/22/2015) |
| 04/24/2015 | 544 | Letter to The Honorable Leonard P. Stark from Rex A. Donnelly regarding Motion for Leave to File Daubert Motion - re 493 MOTION for Leave to File *a Daubert Motion to Exclude the Supplemental Opinions and Proposed Expert Testimony of Scott Weingust on Damages*. (Donnelly, Rex) (Entered: 04/24/2015) |
| 04/24/2015 | 545 | ORAL ORDER: Having reviewed Defendant's motion to strike and associated briefing and attached materials (see D.I. 536, 537, 538, 540), IT IS HEREBY ORDERED that Defendant's motion is GRANTED. The "Lead Email" (see D.I. 537 Ex. A) is STRICKEN and Defendant is GRANTED a protective order and is not required to search Mr. Chesley's personal email account. As persuasively argued in Defendant's letters, Plaintiffs produced the Lead Email more than 18 months after the close of expert discovery and have provided no explanation for their late production when approximately 400 similar emails were produced in a timely manner. Plaintiffs have not explained how the Lead Email is relevant to any issue remaining in the case. Even assuming the document has some probative value it is substantially outweighed by the risks of unfair prejudice to |

| | | |
|---|---|---|
| | | Defendant and confusion of the jury (which could be misled into believing that allegations of copying or willful infringement are pertinent to the issues actually remaining in the case). The Court adopts Defendant's analysis of the Pennypack factors (see D.I. 537 at 3), and emphasizes that the June 15 trial date would be put in jeopardy were it to permit Plaintiffs to use the untimely produced Lead Email in the manner they propose as, in fairness, Defendant would need to be permitted to reopen discovery. ORDERED by Judge Leonard P. Stark on 4/24/15. (ntl) (Entered: 04/24/2015) |
| 04/28/2015 | 546 | ORAL ORDER: Having reviewed the briefing (D.I. 494, 497, 499) regarding SpectorSoft's Motion for Leave to File a Daubert Motion to Exclude the Supplemental Opinions and Proposed Expert Testimony of Scott Weingust on Damages (D.I. 493), IT IS HEREBY ORDERED that SpectorSoft's motion for leave (D.I. 493) is GRANTED. The Court finds that good cause exists to modify the scheduling order under Fed. R. Civ. P. 16(b)(4) because SpectorSoft was diligent in filing its motion just one month after receiving Mr. Weingust's Supplemental Expert Report and more than six months before trial, and because, under the circumstances, the Court agrees with SpectorSoft that it "did not intend to give Plaintiffs carte blanche to submit a Supplemental Report without also providing SpectorSoft some opportunity to challenge its admissibility." (D.I. 499 at 13) SpectorSoft's motion shall be limited to Mr. Weingust's Supplemental Expert Report, and briefing on the motion shall be completed on an expedited schedule, as suggested by SpectorSoft in its recent letter (D.I. 544): SpectorSoft's opening brief shall be due on 4/30/15, Plaintiffs' answering brief shall be due on 5/12/15, and SpectorSoft's reply brief shall be due on 5/18/15. The Court intends to resolve the Daubert motion at or before the pretrial conference. ORDERED by Judge Leonard P. Stark on 4/28/15. (ntl) (Entered: 04/28/2015) |
| 04/28/2015 | 547 | ORAL ORDER: Having reviewed SpectorSoft's letter (C.A. 12-81-LPS D.I. 543) regarding the scheduling of the inequitable conduct bench trial(s) and the possible consolidation of this and certain invalidity issues with the related Awareness case, IT IS HEREBY ORDERED that the parties in both C.A. 12-81-LPS and C.A. 11-1259-LPS SHALL submit any motions for consolidation (whether jointly-proposed or not) as well as a joint status report no later than 5/1/15, with such status report addressing: (1) the parties' views on the scheduling of the inequitable conduct bench trial(s), and (2) their position on any motions for consolidation. ORDERED by Judge Leonard P. Stark on 4/28/15. Associated Cases: 1:11-cv-01259-LPS, 1:12-cv-00081-LPS (ntl) (Entered: 04/28/2015) |
| 04/28/2015 | | Pro Hac Vice Attorney Erick C. Howard for SpectorSoft Corporation added for electronic noticing. Pursuant to Local Rule 83.5 (d)., Delaware counsel shall be the registered users of CM/ECF and shall be required to file all papers. Associated Cases: 1:15-cv-00020-LPS-CJB, 1:12-cv-00081-LPS(dmp, ) (Entered: 04/28/2015) |
| 04/30/2015 | 548 | MOTION to Strike / *Exclude Supplemental Report, Opinions, and Proposed Expert Testiony of Scott Weingust on Damages* - filed by SpectorSoft Corporation. (Attachments: # 1 Text of Proposed Order)(Donnelly, Rex) (Entered: 04/30/2015) |
| 04/30/2015 | 549 | [SEALED] MEMORANDUM in Support re 548 MOTION to Strike / *Exclude Supplemental Report, Opinions, and Proposed Expert Testiony of Scott Weingust on Damages* filed by SpectorSoft Corporation.Answering Brief/Response due date per Local Rules is 5/18/2015. (Attachments: # 1 Declaration of James P. Martin, # 2 Certificate of Service)(Donnelly, Rex) (Entered: 04/30/2015) |
| 05/01/2015 | 550 | Joint MOTION to Consolidate Cases *(Unopposed) Joint Stipulated Motion to Consolidate '237 Patent Inequitable Conduct Counterclaims for Bench Trial and for Extension of Time to File Motions to Consolidate Invalidity Claims* - filed by Helios |

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FG SRC LLC, §
§
*Plaintiff*, §
§
v. § Civil Action No. 20-00601-WCB
§
XILINX, INC. § **FILED UNDER SEAL**
§
*Defendant*. §
§
§

## MEMORANDUM OPINION AND ORDER

In this case, plaintiff FG SRC LLC ("SRC") has accused defendant Xilinx, Inc., ("Xilinx") of infringing U.S. Patent No. 9,153,311 ("the '311 patent"). Claim construction has been completed, and fact discovery is currently scheduled to close on May 2, 2022. The parties have filed two motions relating to the discovery proceedings in this case. SRC has moved to extend the deadline for fact discovery and all subsequent deadlines by five months. Dkt. No. 116. Xilinx has moved for a protective order to limit SRC's use of third-party subpoenas. Dkt. No. 133. This order addresses both motions. SRC's motion to extend the deadline for fact discovery (Dkt. No. 116) is GRANTED, and Xilinx's motion for a protective order to limit SRC's use of third-party subpoenas (Dkt. No. 133) is GRANTED IN PART.

### 1. Extension of Deadlines

SRC moves to extend the deadline for fact discovery by five months because SRC asserts that it "cannot reasonably conduct [its] third-party discovery before the current deadline of May 2, 2022." Dkt. No. 117 at 1. SRC argues that Xilinx's delay in producing information regarding its customers, many of which are located outside of the United States, has prevented it from seeking

1

discovery that is necessary to its case. Specifically, SRC seeks information regarding which, if any, of Xilinx's customers use Xilinx's products in an infringing manner.

Earlier in this case, SRC moved to compel Xilinx to produce certain information regarding its customers, including a spreadsheet listing customers who had purchased certain products from Xilinx that can be adapted to infringe the asserted patent. *See generally* Dkt. No. 107. After a discovery teleconference, Xilinx provided such a spreadsheet to SRC, but did not provide sufficient information for SRC to understand the contents of the spreadsheet. Dkt. No. 109 at 1. I then ordered Xilinx to provide SRC information sufficient to convey "full knowledge of the meaning of terms and abbreviations used in the spreadsheet." Dkt. No. 111 at 1. The parties then agreed to resolve the dispute, and I entered an order memorializing the parties' agreement on February 25, 2022. Dkt. No. 113.

SRC asserts that Xilinx's delay in providing customer information has prevented SRC from conducting discovery with respect to those customers, in particular Xilinx's non-U.S. customers. Xilinx argues that the dispute regarding customer information "was crystallized in July 2021," and therefore any delay between July 2021 and February 2022 is attributable to SRC. Dkt. No. 126 at 1 (emphasis omitted).

I find SRC's version of events to be more persuasive. Although it is true that SRC might have brought this issue to the court in July 2021, SRC instead sought to conduct a Rule 30(b)(6) deposition of Xilinx regarding its "practices and policies related to record keeping" so as to determine how to obtain information regarding possible infringing activities by Xilinx's customers. Dkt. No. 118, Exh. M, at 7–8. SRC served Xilinx with notice of that deposition on September 1, 2021. Xilinx, however, did not make that witness available until November 30, 2021, and the deposition was ultimately taken on December 14, 2021. Dkt. No. 118, Exhs. P, R.

2

In that deposition, SRC learned that the "information sought by SRC could be readily obtained from Xilinx's databases in a couple of hours." Dkt. No. 117 at 11 (emphasis omitted). I found that fact to be persuasive when I ordered Xilinx to produce the spreadsheet of customer information to SRC. If SRC had approached the court prior to obtaining that information, it may not have been able to make as strong a case for obtaining Xilinx's customer list. I therefore find that SRC was sufficiently diligent in proceeding as it did in seeking that information.

Furthermore, I find that in certain respects Xilinx's conduct in discovery has been dilatory. For instance, Xilinx's failure to make a witness available for the 30(b)(6) deposition that SRC sought until almost three months after Xilinx was served with notice of that deposition contributed significantly to the delay in resolving the customer information issue between July 2021 and February 2022. And Xilinx's refusal to provide SRC with sufficient information to interpret its customer spreadsheet, which I ordered Xilinx to produce, impeded SRC's efforts to obtain the accessible information it sought regarding Xilinx's customer list. While Xilinx points out that it produced some documents earlier in the discovery process that identified many of the Xilinx customers that had purchased the accused products, Xilinx failed to produce a complete customer list, in a comprehensible form, until February 2022. For that reason, Xilinx's argument that SRC should have been more aggressive in pursuing the information that Xilinx was withholding is not persuasive.

With that said, I was disappointed to learn, from SRC's reply memorandum, that SRC has not even begun seeking discovery from foreign sources. SRC's excuse for its inactivity in that regard is that it did not begin foreign discovery because it did not believe it could complete all of the necessary foreign discovery by the current May 2, 2022, date for the close of fact discovery. Dkt. No. 132 at 4. That is, of course, no justification for SRC not at least beginning the foreign

discovery process. Notwithstanding SRC's failure to initiate foreign discovery, however, the course of the discovery in this case to date—and in particular the prospect that at least some foreign discovery will be required—justifies an extension of the period for fact discovery.

Accordingly, I will grant the five-month extension that SRC requests. That extension will require that the trial date currently set for March 20, 2023, be canceled. A revised scheduling order will be entered shortly. Any further extensions of the fact discovery deadline will be entertained only upon a robust showing of diligence by the party seeking the extension.

## 2. Protective Order

Xilinx moves for a protective order because, in its view, SRC is using subpoenas to harass its customers without a legitimate basis for doing so. More specifically, Xilinx asserts that SRC is conducting a "fishing expedition" in which it is looking for entities that have purchased Xilinx's products and may be using them in an infringing manner, even though SRC lacks a "plausible basis for believing that any of th[o]se customers use the functionality of the Asserted Patent." Dkt. No. 134 at 1–2. As a remedy, Xilinx requests that I order SRC to withdraw most of the subpoenas it has served on Xilinx's customers in this case.

To date, SRC has served 88 subpoenas on Xilinx's domestic customers. *See* Dkt. Nos. 115, 119, 120, 129, 130, 137. And although SRC has indicated that it does not intend to serve more subpoenas on Xilinx's domestic customers, it does intend to serve subpoenas on several of Xilinx's foreign customers. Dkt. No. 142, Exh. E, at ¶ 8. For the entities that are targeted by most of those subpoenas, SRC has not suggested that it has any reason to believe that Xilinx has induced them to use methods that would infringe the asserted patent or that the target entities actually practice the infringing methods. It appears that the sole predicate for the issuance of those

4

subpoenas is the fact that those entities are customers of Xilinx, and that they have purchased products from Xilinx that could be used in an infringing manner.

Xilinx argues that SRC's 88 subpoenas are intended primarily to "harass Xilinx's customers and disrupt Xilinx's business." Dkt. No. 134 at 1. The subpoenas, according to Xilinx, are designed not with the expectation that they will produce evidence of infringement by Xilinx, but principally to exert pressure on Xilinx to settle this case. *Id.* at 2. Xilinx reports that it has already received complaints from customers regarding the subpoenas and questions about why those customers have been targeted "despite never having heard of the accused functionality," and that the subpoenas will impose considerable legal expenses on Xilinx's subpoenaed customers. Dkt. No. 144 at 6. SRC responds that the subpoenas are part of a legitimate effort to identify customers of Xilinx that Xilinx has induced to infringe the asserted patent and that SRC has received responses to several of its subpoenas directly from the subpoenaed parties without the involvement of outside counsel. In its reply brief, however, Xilinx reports that at least 15 law firms have already been involved in responding to the various subpoenas directed to Xilinx's customers. *Id.* Collectively, Xilinx asserts, the burden on the subpoenaed third parties, and indirectly on Xilinx, is likely to be considerable.

Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In this district, courts have identified four factors that govern the good-cause inquiry for this purpose: "relevance, need, confidentiality, and harm." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. CV 17-1065, 2018 WL 2337133, at *1 (D. Del. May 23, 2018) (quoting *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)).

## A. Relevance

The subpoenas, which are all quite similar, are broad in scope. And for many of the subpoenas, SRC has not provided a sufficient basis for believing that they are likely to produce evidence relevant to the current action. SRC has identified no evidence that Xilinx is inducing infringement by its customers generally, and for a large majority of the subpoenaed targets, SRC has identified no evidence that those customers practice the claimed invention.[1]

There are, however, a few customers for which broad subpoenas may be justified. For instance, Xilinx has identified a set of customers that it believes may use the accused functionality: Ericsson, Amazon, IBM, and Microsoft. Dkt. No. 134 at 4; Dkt. No. 107, Exh. 5, at 4. And SRC has identified two additional foreign customers for which it has articulated a basis to believe that they use the accused functionality: Nokia Oyj[2] and Napatech A/S. Dkt. No. 132 at 3–4. As to those customers, I find that SRC's discovery efforts are justified, as they are directed to information that may be relevant to this litigation. In addition, Xilinx acknowledges that SRC's subpoenas to Google and Qualcomm are supported by a sufficient showing to justify SRC's discovery efforts, and Xilinx therefore does not seek withdrawal of the subpoenas to those two companies. Dkt. No. 144 at 1. With respect to the remaining subpoenaed Xilinx customers,

---

[1] SRC suggests that because certain customers have spent large sums of money on Xilinx's products, those customers are likely to infringe. *See, e.g.*, Dkt. No. 132 at 3 (suggesting that because Nokia Oyj has "over $[REDACTED] in purchases of Accused Products," it is likely "that at least some portion of those Accused Products are used in an infringing manner."). But without more, the fact that a customer has purchased more than a certain dollar amount of Xilinx's products does not establish, or even suggest, that the customer is likely to practice the asserted claims.

[2] To be clear, the subpoena to Nokia Oyj is justified because "Xilinx has produced documents evidencing that Nokia Oyj and/or its subsidiaries use [the accused] functionality." Dkt. No. 132 at 3. The sum of money that Nokia Oyj has spent on Xilinx's products is not relevant to that determination. *See supra* note 1.

however, SRC has not pointed to any basis for believing that a broad subpoena to any of those customers is likely to produce evidence relevant to SRC's claims against Xilinx.

I recognize that without the use of third-party subpoenas, SRC may not be able to determine which (if any) of Xilinx's customers use Xilinx's products to infringe the asserted claims. In light of the liberal scope generally accorded to discovery, SRC is entitled to employ means to develop that information if it can be done without imposing undue burdens on third parties. The problem is that SRC's current subpoenas seek large amounts of information, much of which does not directly address the question whether the targeted customers infringe. For example, SRC's subpoenas generally request the following categories of documents:

"1. Documents sufficient to show, on a quarterly or monthly basis, the total volume of Accused Products purchased by You during the period from October 2015 to present.

2. Documents sufficient to show, on a quarterly or monthly basis, the total amounts paid by You to purchase Accused Products during the period from October 2015 to present.

3. Documents sufficient to show each of Your products and/or services that currently incorporates or implements an Accused Product or that previously did so at any time during the period from October 2015 to present.

4. Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present.

5. For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify where such product or service is or was made, used, offered for sale, and/or sold.

6. For each of Your products and/or services that utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present, Documents sufficient to identify any code, software, development tools, platforms, or other resources provided by or obtained from Xilinx and utilized, incorporated, or implemented by or in Your product or service, including without limitation Documents sufficient to identify any Xilinx IP cores used for such product or service and what Vivado Design Suite, if any, was used in the development of the product or service.

7. Documents sufficient to show all assistance and/or support provided by Xilinx to You related to the utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services. For clarity, such Documents include, but

7

are not limited to, (1) project descriptions, (2) support tickets, and (3) training and instruction.

       8. All Documents exchanged between You and Xilinx related to any utilization of the Self-Refresh Functionality of any Accused Product by or for any of Your products and/or services.

       9. All Documents exchanged between You and any third party, including but not limited to Xilinx, related to FG SRC, the Lawsuit, and/or the '311 patent."

*See, e.g.*, Dkt. No. 142, Exh. A at 4 (SRC's subpoena to Google). Of those requests, the first three relate only to the Accused Products, i.e., Xilinx's products that, according to SRC, could be adapted to be used in an infringing manner. Those requests do not address the question whether the targeted customer actually modifies the Accused Products in a manner that could infringe the asserted patent. Requests 5 through 9 could be relevant to the current action, but only if there were a reasonable basis to believe that the targeted customer engages or has engaged in conduct that could infringe the asserted claims.

In support of its contention that most of SRC's third-party subpoenas should be quashed in their entirety, Xilinx cites *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318 (Fed. Cir. 1990). In that case, the Federal Circuit held that a discovery request directed to a third party is not justified solely by virtue of the fact "[t]hat the discovery might uncover evidence showing that a plaintiff has a legitimate claim." *Id.* at 1327. The court in *Micro Motion* noted that the plaintiff sought discovery from a non-party based on a "suspicion of infringement" by the non-party. *Id.* The court added that "[a]n unfounded suspicion regarding [a third party's] infringement does not support discovery into that subject matter." *Id.* That case is distinguishable from this one, however, because in this case SRC is targeting customers who have purchased specific products from Xilinx that SRC alleges can be used to infringe the asserted claims. That evidence, although insufficient by itself to prove infringement by the third parties or induced infringement by Xilinx,

nevertheless rises above the level of the "unfounded suspicion" that the court in *Micro Motion* addressed. *See id.*

### b. Need

With respect to need, it is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims. Without evidence of direct infringement by a third party, SRC will be unable to establish inducement of infringement by Xilinx. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). And Xilinx has suggested at various points in this case that it is typically unaware of how specific customers use its products. As a result, the information SRC seeks is likely to be "uniquely available" from the parties that SRC is targeting with its subpoenas. *See AbbVie*, 2018 WL 2337133, at *2 (citation omitted).

### c. Confidentiality

It is not clear whether the information SRC seeks will be confidential to the third parties that are targeted by the subpoenas. I do not find that this factor weighs heavily in the analysis, however, because any confidential information of third parties can be protected, upon request of the third parties, using confidentiality designations consistent with the protective order already entered in this case. *See* Dkt. No. 49, and April 8, 2021, order of court.

### d. Harm

The potential harm to Xilinx's customers, and by extension to Xilinx itself, is significant. As noted, SRC's requests are quite broad. Each target of a subpoena will need to respond to it, and SRC acknowledges that many targets are likely to be cautious in responding, given that SRC is seeking evidence that those customers infringe the asserted patent. Dkt. No. 134, Exh. C. Because of the nature of the information sought, many of the subpoenaed parties may feel it

necessary to retain counsel before responding to the subpoenas, at significant cost.  Moreover, as Xilinx points out, the imposition of costs associated with responding to the subpoenas "directly harms [those] customers' willingness to continue doing business with Xilinx."  Dkt. No. 134 at 5.

It is true, as SRC suggests, that Xilinx has not provided "specific examples to substantiate any hypothetical harm to its customers."  Dkt. No. 142 at 4.  For example, Xilinx does not offer any evidence of communications between Xilinx and its customers regarding SRC's subpoenas. It does stand to reason, however, that the breadth of the subpoenas will require a significant commitment of resources from the targets of the subpoenas, and that customers may be less inclined to do business with Xilinx as a result.  I therefore conclude that there is some potential harm to both Xilinx and its customers from the subpoenas, but that the nature and degree of that harm has not been shown with specificity.

* * *

Upon weighing the four relevant factors, I conclude that discovery directed to Xilinx's customers should proceed in an iterative manner and in a different fashion with regard to different groups of third parties.  With respect to the customers that Xilinx has identified as possibly using the accused functionality and the two additional foreign customers identified by SRC that are discussed above,[3] I conclude that there is a sound basis for concluding that those customers may have relevant information, and that SRC's need for that information outweighs the potential harm that may result from requests to those customers for the information sought in SRC's subpoenas. SRC therefore need not withdraw or limit the subpoenas it has issued to those customers or any similar subpoenas it may issue to those customers in the future.

---

[3]   For clarity, the customers identified by Xilinx are Ericsson, Amazon, IBM, and Microsoft.  The foreign customers identified by SRC are Nokia Oyj, and Napatech A/S.

Similarly, in light of Xilinx's concession with regard to the subpoenas to Google and Qualcomm, I will not require the subpoenas to those companies to be withdrawn or limited.

With respect to the remaining third-party domestic customers, however, the likelihood that those subpoenas will produce relevant information is entirely dependent on whether the targeted customer practices the accused functionality. If the targeted customer does use the accused functionality, the information SRC requests will likely be relevant to the action. But if the targeted customer does not use the accused functionality, the information SRC requests will likely have no relevance to this case. I find that at this point SRC has provided little reason to believe that any of the remaining third-party domestic customers are direct infringers of the '311 patent, or that Xilinx has induced any of those customers to infringe the patent. For that reason, the risk of harm to Xilinx and the potential burden on that group of customers outweighs the speculative possibility that the broad subpoenas to any of those customers may generate relevant evidence. *See Joy Techs., Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991) (concluding that third-party customers are "entitled to protection" absent "a specific need for evidence available only from third party customers"). I will therefore allow SRC to request only the documents listed in request number 4, identified above,[4] from any of Xilinx's other domestic customers. In that more limited form, the subpoenas will allow SRC to determine whether the targeted customer practices the accused functionality while minimizing the burden on Xilinx's customers, and by extension, Xilinx.

---

[4] Request number 4 seeks "Documents sufficient to show each of Your products and/or services that currently utilizes the Self-Refresh Functionality of any Accused Product or that previously did so at any time during the period from October 2015 to present." Dkt. No. 142, Exh. A at 4.

If further discovery reveals either (1) that Xilinx has engaged in conduct that could fairly be viewed as inducing particular customers to practice the methods claimed in the asserted patent, or (2) that particular Xilinx customers are in fact practicing the accused functionality, I will permit SRC to serve a supplemental subpoena of greater breadth directed to those customers as to which a showing of possible inducement by Xilinx, or possible direct infringement by the customers has been made. For the present, however, a broad demand for information from 80 or more customers of Xilinx, based on no indication that those customers are direct infringers or that Xilinx has taken any steps that would constitute inducement for those customers to infringe, is not justified. Before serving any such supplemental subpoena, as described in this paragraph, on any of the remaining third-party customers of Xilinx, SRC must seek leave of court.

In summary, and to be clear, SRC will be allowed to issue only limited subpoenas to any third-party domestic customers of Xilinx absent a showing either that Xilinx induced infringement by the customer being targeted or that the customer being targeted uses the accused functionality. A sufficient showing exists for Amazon, IBM, and Microsoft, and the subpoenas already served on those three customers may remain in effect. Likewise, the subpoenas to Google and Qualcomm may remain in effect, and discovery directed to foreign customers Ericsson, Nokia Oyj, and Napatech A/S that is commensurate in scope with the subpoenas already served on the domestic customers will be permitted. All other subpoenas must be withdrawn except to the extent that they request documents identified in request number 4 of SRC's subpoena to Google or to the extent that those subpoenas have already been responded to. *See* Dkt. No. 142, Exh. A, at 4. SRC is directed to inform the remaining Xilinx customers on which such subpoenas have been served that in light of this court's order, they are required at this time to respond only to paragraph 4 (or the equivalent paragraph) of the subpoena. Xilinx will be permitted to confirm that instruction with

the targeted customers if it elects to do so.  No broader subpoenas directed to Xilinx's domestic customers may be issued by SRC without first seeking leave of court.

In an abundance of caution, this order has been filed under seal because some of the parties' initial briefs and exhibits regarding the present motions were filed under seal.  *See, e.g.*, Dkt. Nos. 118, 126, 132.  Within three days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED.

SIGNED this 8th day of April, 2022.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE

13