IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AZURITY PHARMACEUTICALS, INC,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ANNORA PHARMA PRIVATE LIMITED and<br>CAMBER PHARMACEUTICALS, INC.,<br><br>　　　　　　　　　Defendants. | C.A. No. 21-196-MSG<br><br>▓▓▓▓▓▓▓▓▓▓<br><br>[PUBLIC VERSION] |

## DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER

1.　　Defendants Annora Pharma Private, Ltd., and Camber Pharmaceuticals, Inc. (collectively "Defendants") respectfully request that the Court amend the May 9, 2022 Scheduling Order (D.I. 131) to provide sufficient time to complete fact discovery and a commensurate extension of the deadlines thereafter. The parties agree that an amendment of the case schedule is required, as confirmed by their stipulation seeking an interim extension of the fact discovery deadline. D.I. 171. But they continue to disagree about the nature and length of the required extension. Defendants' Proposed Amended Scheduling Order is filed herewith.

2.　　The need for an extension stems from Azurity's failure to complete its document production by the deadline in the Scheduling Order. The Scheduling Order, as modified on October 11, 2022 (D.I. 144), required that Azurity produce damages documents no later than October 17, 2022. Azurity produced a mere twelve (12) documents. Defendants immediately raised the deficiency in Azurity's production. Despite months of costly negotiations, however, Azurity has produced only a smidgeon of additional damages documents and its production remains incomplete. Azurity's failure to comply with the Scheduling Order has also delayed

depositions. Although more than a dozen depositions have been noticed by the parties, not one has been taken. Defendants submit that good cause supports the entry of an amended scheduling order that serves to minimize the prejudice that Azurity's delayed production will have on Defendants' ability to complete fact discovery. Further, because Defendants were forced to spend months addressing Azurity's failure to comply with the Court's damages production deadline, Defendants request the Court order reimbursement of their attorney fees associated with the efforts to secure production of damages materials and obtain a suitable amendment of the schedule to address Azurity's delinquent production.

## THE SCHEDULING ORDER

3. The current Scheduling Order was established last spring. A new schedule was required because, on March 30, 2022, Azurity amended its Complaint by adding a new Defendant, Camber, and a damages prayer for relief. D.I. 119. Before the amendment, there were no damages sought and the case was set for a bench trial. These changes were caused by the Court's denial of Azurity's motion for a preliminary injunction to prevent Defendants from launching their enalapril oral solution ANDA product and Camber's subsequent entry into the market. To accommodate the addition of Camber and a damages prayer for relief, the Court amended the scheduling order on May 9, 2022. D.I. 131. The Order (as amended by D.I. 144) required the parties to produce damages documents by October 17, 2022.

## DAMAGES DISCOVERY

4. On May 13, 2022, Defendants served document requests directed to damages. Ex. 1. Defendants believed Azurity's responses to those requests were inadequate and raised its concerns on July 19, 2022. Ex. 2. After hearing nothing, Defendants reiterated their concerns on August 1. Ex. 3. Although Azurity responded a few days later, it failed to address the substance

of those concerns. Ex. 4.  During a discovery conference on August 24, the parties "agreed to a reciprocal production of" (1) market analyses and projections, (2), financial analyses and projections, (3) proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution, (4) communications with customers of Epaned/enalapril oral solution, (5) documents concerning the distribution channels of Epaned/enalapril oral solution, (6) documents sufficient to show actual/projected costs, and (7) physician feedback concerning Epaned/enalapril oral solution.  Ex. 5.

5. Defendants followed up with a letter on August 25 memorializing the agreement and identifying the disputes that remained unresolved. *Id*.  After another two weeks passed without a response from Azurity, on September 6, Defendants requested a response.  Ex. 6. Azurity's September 9 response did not raise any objections to Defendants' description of the parties' agreement concerning a reciprocal production.  Ex. 7.

6. On the October 17 production deadline in the Scheduling Order, Defendants produced about 2,600 documents, which included emails from a number of new custodians. Azurity, on the other hand, produced only 12 documents, none of which were email.  Defendants raised the issue in the days that followed, which included an extensive list of document categories that were missing from the production (outside of a small number of isolated documents).  Ex. 8 (October 18), 9 (October 21), 10 (October 28).  Azurity sought to defend its miniscule production by arguing, among other things, that just because "Azurity's production was not as voluminous as Annora anticipated it would be," does not mean it was "deficient."  Ex. 11.

7. After Defendants provided yet another email identifying the many missing categories of damages documents (Ex. 12), the parties conferred on December 1 (the first date

3

offered by Azurity). Azurity represented that its production was complete. Ex. 13. The parties also discussed the need for an extension of fact discovery, both because of Azurity's failure to produce documents and because fact depositions had not yet been taken (or even scheduled). *See* Ex. 14.

## **AZURITY'S DAMAGES PRODUCTION REMAINS INCOMPLETE**

8. During the parties' discussions, Azurity wrongly maintained that it already produced its damages documents back in 2021, such that its production of 12 documents in October complied with the Scheduling Order. First, damages were not even part of the case at that time and Defendants had not yet served their damages document requests to inform Azurity of the scope of documents that required collection. Second, many such documents did not yet exist, including documents related to the launch of Defendants' product that occurred months later. Third, to Defendants' knowledge, Azurity never searched documents from any custodians likely to be in possession of such damages information when it collected liability documents (and the liability production did not contain any emails from such personnel).[1] Instead, the few documents Azurity identified as representing its 2021 damages production were—outside of three emails to the sales team—those that Azurity provided its expert declarant to review regarding the issue of irreparable harm in support of its preliminary injunction motion. Compare Ex. 15 with Ex. 16 (listing of materials considered by Dr. Stec). Fourth, Azurity forgets that the entire reason the parties negotiated a reciprocal production of damages documents in August 2022 was because Azurity refused to produce the documents subject to the parties' compromise agreement. *See, e.g.*, Ex. 2. If Azurity had already produced them, its responses would be

---

[1] Defendants asked Azurity to identify "the custodians and locations from whom/where [Azurity] collected" its alleged 2021 damages production. Azurity refused to do so. Ex. 15 ("With regards to your demand that Azurity identify the steps it took to collect the above documents, as we have previously discussed, Defendants are not entitled to discovery on the discovery process.").

nonsensical.

9. As it stands, we are nearly three months past the October 17 production deadline and Azurity has produced only a few dozen documents that allegedly relate to damages. To be sure, some of these documents include market share and sales data, high-level cost data,[2] and a couple power point presentations concerning Epaned® (the brand name product marketed by Azurity). But the production did not include any email from custodians reasonably likely to have information responsive to Defendants' document requests. Further, Azurity's production does not include the following categories of documents specifically requested by Defendants:

    a. internal market analyses, documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 48, 50, 51, 67, 70) (Ex. 1);

    b. internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized generic ("AG") product, and Annora products (RFP Nos. 49, 50, 51, 67, 70);

    c. documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes;

    d. representative samples of advertising and promotional materials, including samples adequate to show any changes to advertising strategy from 2020 to present;

    e. marketing plans, memos, budgets, and internal emails, including documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, AG product, and Annora products (RFP Nos. 48, 50, 51, 67, 70);

---

[2] Without any depositions, Defendants are unable to assess the completeness of cost data.

      f.      documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Plaintiff for Epaned, documents addressing Plaintiff's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto);

      g.      documents related to its agreements with Amneal allowing it to sell an authorized generic (outside of the agreements themselves), including internal and external correspondence related to those agreements, the launch of the AG product, including timing thereof (*see* RFP Nos. 20, 68, 69, 71, 72, 74); and

      h.      numerous documents concerning its lost profits claim, including but not limited to those that relate to Azurity's contentions that (i) it was required to launch an authorized generic product because of Annora's infringement, (ii) it was forced to take measures to limit its salesforce growth based in part on Epaned losing its status as Azurity's anchor product, (iii) [Generic competition made] it harder for Azurity to secure funding and financing through loans or by finding investors, and (iv) it had to make budget cuts because it failed to hit revenue targets.

## THE DISCOVERY DISPUTE PROCESS

      10.      On December 7, Defendants formally initiated the Court's discovery dispute process to resolve the problems with Azurity's damages production. *See* Ex. 17. Azurity refused to agree on the nature of the disputes and whether the parties had reached an impasse, preventing Defendants from raising the issues with the Court. Instead, Azurity slowly backtracked on its position by agreeing, in a piecemeal fashion, to produce most of the documents Defendants requested (including many Azurity had already agreed to produce during the August meet and

confer). *See* Ex. 18, 19, 20.

11. Disputes remained, however, and Defendants provided Azurity with a revised joint discovery dispute letter for submission to the Court on December 15. Ex. 21. This letter included a request for an extension of fact discovery that would afford Defendants the same amount of time to conduct discovery after receiving damages production as that contemplated by the Scheduling Order (which was about 13 weeks). *Id.*³ Azurity again refused to agree to submission of the letter, even though it rejected Defendants' requested extension. Ex. 22.⁴

12. On December 19, the parties again conferred on the issues of document production and an extension of the schedule. In an effort to move discovery forward and maintain the current trial date, Defendants proposed a schedule that substantially squeezed the time permitted for all remaining case activities. Ex. 24. These aggressive time frames were premised on two important conditions: Azurity would agree to (1) a date certain by which it would produce its damages documents (which would be used to determine the appropriate date for the close of fact discovery), and (2) limit the number of fact depositions. *Id.*; *see also* Ex. 26, 27. While Azurity said it would endeavor to produce documents by January 6, it refused to commit to that date or accept a limitation on depositions. *See* Ex. 28. Azurity later informed Defendants that its production would be delayed until January 13 (the day fact discovery is scheduled to close). Ex. 29 (confirming Azurity "will produce all documents by or before next

---

³ One of the remaining disputes involved Defendants' request that Azurity commit to a date certain by which it would produce its long-awaited damages documents. *Id.* Further, Defendants explained the parties could continue trying to resolve their disputes after filing a joint letter, but Defendants could not afford to continue delaying initiation of the dispute process.
⁴ Meanwhile, on December 20, Azurity unilaterally moved to strike an interrogatory response and moved for a protective order, both of which were fundamentally discovery disputes filed in violation of Paragraph 8(h) of the Scheduling Order. The discovery implicated by those motions also overlapped with the topics Defendants had included in the proposed joint letter on December 7. *See* Ex. 23.

7

Friday, January 13").

13. With the fact discovery deadline days away and the parties at a clear impasse, Defendants informed Azurity they would file a motion to amend the schedule. Azurity responded with further efforts to delay—suggesting the motion was premature because the parties had not yet met and conferred. Ex. 30 ("you have not properly met and conferred regarding such a schedule"). Azurity followed up late the night before the parties conferred with a proposal that included an even later production deadline of January 27. Ex. 31.

14. Because of Azurity's continued failure to produce damages documents, it was clear that it would not be possible to maintain the existing trial date. Defendants provided a proposed case schedule, which incorporated Azurity's new damages production deadline and adjusted the remaining schedule accordingly. Ex. 32. Specifically, solely to accommodate Azurity, Defendants' proposal cut the time period for discovery after Azurity's new production deadline by about 5 weeks compared to the time allowed under the current Scheduling Order, and similarly cut the time for the completion of dispositive motions by 5 weeks. Azurity did not agree to Defendants' proposal.

## DEFENDANTS' PROPOSED SCHEDULE

15. An extension of fact discovery is necessary to avoid prejudicing Defendants due to Azurity's failure to comply with the October 17 production deadline. It is also necessary to provide time for depositions of more than a dozen witnesses and 30(b)(6) depositions of three parties, none of which have been scheduled or taken. For example, Defendants noticed the depositions of Azurity, the four individuals identified in its initial disclosures, and one additional damages witness. Azurity has noticed the depositions of Annora, Camber, the three individuals identified in Defendants' initial disclosures, and five additional witnesses. In addition,

8

Defendants have served two third-party subpoenas that are still being pursued and understands an additional subpoena may be required as a result of an undisclosed change in the majority owner of Azurity (which appears to be an active partner with Azurity). Further, a number of remaining concerns with Azurity's responses to Defendants' Rule 33 and Rule 34 discovery requests remain unresolved. Accordingly, despite Defendants' diligent efforts to secure Azurity's production of damages documents they have not yet been produced and good cause supports the requested amendment. Fed. R. Civ. P. 16(b)(4).

16. Azurity incorrectly argues that it would be unfairly prejudiced by a later trial date because it seeks an Order that would force Defendants to exit the market. First, the status of this case is a result of Azurity's failure to collect and produce damages documents as required by the case schedule. It would unfairly prejudice Defendants if Azurity's delays prevented Defendants from obtaining discovery to which they are entitled. Second, Defendants are one of three companies that currently sell a generic enalapril product—which includes Amneal's AG product. Even if Azurity were to prevail on the merits at trial, it will still face generic competition by its own doing. Third, Azurity's proposed schedule fails to provide adequate time for the remaining case activities, and would unjustifiably penalize Defendants for their adversaries' violation of the Scheduling Order. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007) (balancing fault between parties to determine who should bear the expenses imposed by a parties' failure to comply with production deadline); *see also* Ex. 33 (comparison of the parties' proposals). Accordingly, Defendants request the Court to enter their proposed amended scheduling order.

## AN AWARD OF FEES IS APPROPRIATE UNDER RULE 16

17.     Defendants further request that the Court order Azurity to reimburse Defendants for the attorney fees incurred to address Azurity's failure to comply with the damages production deadline.  Rule 16(f) empowers court to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." It also establishes a mandatory remedy for a violation: "the court must order the [offending] party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." *See Southco, Inc. v. Fivetech Tech., Inc.*, No. 10-cv-1060, 2017 WL 2079882, at *10 (E.D. Pa. May 15, 2017) (awarding sanctions for untimely motion for summary judgment because "sanctions for noncompliance with Rule 16 pretrial orders are required and appropriate absent a showing that the violation was substantially justified or the award of expenses is unjust under the circumstances of the case.") (internal quotations omitted).

18.     Defendants worked to resolve this issue months ago, to no avail.  Azurity's failure to collect and produce damages documents was not substantially justified and forced Defendants to undertake extensive efforts to resolve the issue, including lengthy correspondence, multiple discovery conferences, and the filing of this motion.  Azurity, and not Defendants, should bear those costs.[5]  *Hioutakos v. SimplexGrinnell*, No. 2:10–4505, 2014 WL 1255197 (D.N.J. March 26, 2014) ("Where one party has violated a court order and delayed proceedings, awarding the excess costs caused by that conduct to the innocent party may restore the balance of equity

---

[5] Alternatively, the Court should issue an order to show cause requiring Azurity to show cause for its failure to comply with the damages production deadline, including identification of the person(s) responsible for the decisions resulting in its violation of the Scheduling Order, including but not limited to the position that email production is not required for damages.

10

between the parties."); *St. Clair Intellectual Prop. Consultants, Inc. v. Motorola Mobility, LLC*, 292 F.R.D. 162, 166 (D. Del. 2013) (awarding fees where party willfully disregarded the Scheduling Order based on its pending motion to stay, even though the stay was ultimately granted).

Date: January 13, 2023                          */s/ Ronald P. Golden III*
                                                Stephen B. Brauerman (No. 4952)
                                                Ronald P. Golden III (No. 6254)
                                                600 N. King Street, Suite 400
                                                Wilmington, DE 19801
                                                Phone: (302) 655-5000
                                                sbauerman@bayardlaw.com
                                                rgolden@bayardlaw.com

                                                Of Counsel:

                                                Todd S. Werner
                                                William Woodford
                                                Avantech Law, LLP
                                                80 South Eighth Street, Suite 900
                                                Minneapolis, MN 55402
                                                Phone: 855-750-9951
                                                werner@avantechlaw.com
                                                woodford@avantechlaw.com

                                                *Attorneys for Defendants*

11

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that the subject of the foregoing motion has been discussed with counsel for Plaintiff and the parties were unable to reach agreement on the motion.

Dated: January 13, 2023

*/s/ Ronald P. Golden III*
Ronald P. Golden III (#6254)