# EXHIBIT 12

| | |
|---|---|
| **From:** | Todd Werner |
| **To:** | Kaufman, Granville; Nicholas Talarowski; Steve Brauerman; William Woodford; Ronald Golden |
| **Cc:** | Dellinger, Megan E.; WSGR - Silvergate - Annora RTU Epaned |
| **Subject:** | RE: Azurity v Annora et al: Missing Damages Production |
| **Date:** | Tuesday, November 22, 2022 6:39:00 PM |

Granville:

Please let us know your availability for a meet and confer the first half of next week to discuss the many discovery issues we have raised, as well as the concerns Azuriity just recently raised.  In preparation for that call, we respond to your November 15 and 18 emails as follows.

Production of Email

The rules require the production of email and the parties never agreed to depart from them.  We do not understand how the relevance of to "damages" documents changes this obligation.  If you believe there is some basis for Azurity to exclude email from its production, please provide it as soon as possible.  If not, then please let us know a specific date by which Azurity agrees to complete its production, as well the names, roles, and dates for the custodians from whom you are collect emails and other custodial documents.

Damages Document Production

With respect to the categories of document the parties agreed to produce, Azurity's identification of a few documents that it contends fall within each of those categories likewise fails to show that Azurity has undertaken a reasonably diligent search for responsive documents required by the rules.  Notably, outside of one category, the parties did not limit the scope of these documents to those "sufficient to show" what has been requested.  We fail to see how Azurity's October production of about 12 documents could comply with its discovery obligations.  With respect to the production at the preliminary injunction stage, that limited production occurred months before Annora had launched and damages was not yet at issue.  Please let us know your available for a meet and confer to discuss all outstanding issues.

In addition to the above, this includes:

1.  Identification of all steps Azurity undertook in support of its reasonably diligent search and collection of damages-related documents, including when such steps were undertaken.

2.  With respect to "market analyses and projections," you have identified three documents that are formal excel spreadsheets, and it is unclear whether one of these documents even contains projections.  It seems improbable that this is the entire universe of market analysis and projections undertaken by Azurity.   There are not any documents concerning internal analyses of the market and the impact of various competitive factors on the market, including but not limited to Bionpharma, the authorized AG product, and Annora.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

3. With respect to "financial analyses and projections," two of the three documents you identified does not have any data specific to enalapril, and none of the three documents have any data from 2022.  It seems improbable that this the entire universe of financial analysis and projections undertaken by Azurity.  For example, there are not any documents concerning internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to Bionpharma, the authorized AG product, and Annora.  Documents of this type are usually created and exchanged on a routine basis.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

4. With respect to "Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution," please be prepared to explain the process by which Azurity effectuates and documents sales of Epaned® and the steps undertaken by Azurity to search for and produce such documents.

5. With respect to "communications with actual/prospective customers of Epaned/enalapril oral solution," the single document you referenced relates to a pharmacy compounding an enalapril product.  It is not relevant, and it seems unlikely that Azurity has actually searched for responsive communications.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

6. With respect to the distribution channel and projected/actual costs categories of documents, we will revisit those issues as discovery continues and we are in a better position to assess the sufficiency of Azurity's production.  In the meantime, given the dearth of information produced on these issues we once again encourage you to reconsider the sufficiency of your document collection efforts for these categories.

7. With respect to documents relating to sales of other products (Req. No. 51), for each product for which Azurity contends it has lost sales as a result of Defendants' alleged infringement, Defendants require production of documents concerning any changes to revenues, market share, pricing, discounts, promotions, and rebates, as well as any documents concerning any analysis of the causes resulting or contributing to such changes.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

8. With respect to documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53), we have been unable to find any responsive documents.  By way of example, we could not locate documents concerning the "share of voice" held by Azurity for Epaned; documents addressing Azurity's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

9. With respect to documents concerning pricing strategy (Req. No. 54), we have not located any

documents concerning any decisions to change pricing of Epaned® or the reasons for such changes.  Please be prepared to explain the steps undertaken by Azurity to search for and produce such documents.

10. Discussion of a date for the exchange of supplemental interrogatory responses (please note that this would include all of Defendants' interrogatories related to damages, not merely the previously noted aspects of Nos. 7 and 8).

<u>Production of Materials from Related Litigations</u>

With respect to the production of materials from related litigations, please confirm this production will include transcripts for the <u>depositions</u> of plaintiffs' fact and expert witnesses.   We confirm our agreement with the terms for production set forth for the Alkem and Aurobindo documents.   We note that our acceptance to Amneal's terms for production was documented back on October 7.  We further confirm that we can accept production of the Supply Agreement with Amneal under those same terms.  Your email did not address other aspects of our request for materials related to the Amneal litigation, including, (a) any other agreements related to Azurity's settlement besides the Supply Agreement, and (b) any correspondence related to those agreements, including the timing of the launch of the AG product (see RFP Nos. 20, 68, 69, 71, 72, 74).  Please be prepared to confirm Azurity's position on the production of this information.  Please also be prepared to advise as to the status of production from the materials from the Alkem, Amneal, Aurobindo, and Bionpharma matters.

Finally, here is an updated list of issues where we believe the parties have reached an impasse (which may be expanded depending upon the outcome of our discussion of the above issues):

- Analysis of the impact of the launch of an AG product on the market for Epaned/RTU enalapril (RFP No. 70)
- Agreements or arrangements reflecting a royalty rate for any patents or trade secrets reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (64, 65)
- Correspondence between Azurity and CoreRx (Bionpharma's supplier) concerning enalapril (RFP No. 66)
- Valuations of CoreRx (RFP No. 76)

Best regards,

**Todd Werner**

**AVANTECH** LAW
werner@avantechlaw.com
LinkedIn | Bio

---

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Tuesday, November 15, 2022 5:53 PM
**To:** Todd Werner <werner@avantechlaw.com>; Nicholas Talarowski

<NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William
Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned
<silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Missing Damages Production

Hi Todd,

Azurity disputes Annora's characterization of Azurity's production.

First, the parties did not agree to produce emails. Indeed, the purpose of this production was to
produce documents relating to ***damages***. Azurity did so. Nevertheless, Azurity recognizes that you
are incorrect, and Azurity has produced emails with customers. *See, e.g.*, SLVGT-RTU-
EPA_00103017.

Second, Azurity produced documents—***to the extent they existed***—consistent with these
categories:

- Market analyses and projections (*e.g.* SLVGT-RTU-EPA_00105661; SLVGT-RTU-EPA_00105662;
  SLVGT-RTU-EPA_00108996)
- Financial analyses and projections (*e.g.* SLVGT-RTU-EPA_00118143; SLVGT-RTU-
  EPA_00118175; SLVGT-ETU-EPA_00105663)
- Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral
  solution (*e.g.*, SLVGT-RTU-EPA_00118210)
- Communications with actual/prospective customers of Epaned/enalapril oral solution (*e.g.*
  SLVGT-RTU-EPA_00103017)
- Documents concerning the distribution channels of Epaned/enalapril oral solution (*e.g.*
  SLVGT-RTU-EPA_00118209)
- Documents sufficient to show actual/projected costs (*e.g.* SLVGT-RTU-EPA_00118207)

Many of these documents have data going back to 2016 or earlier. It is thus unclear what Annora's
issue is other than that the Azurity's production was not as voluminous as Annora anticipated it
would be. This is not a deficiency.

With regards to purchase orders, Azurity does not keep separate purchase orders forms. Thus,
SLVGT-RTU-EPA_00118210 presents a summary of this information. With regards to feedback, other
than that previously produced, no additional feedback was located after a reasonable search. *See,
e.g.*, SLVGT-RTU-EPA_0097311.

Third, as stated, Azurity has produced documents relating to sales of other products, advertising,
and pricing. If there is some specific sub-category that Annora believes is missing or that Annora
wants, please let us know and we can discuss further.

Fourth, Azurity is confused by Annora's fourth point below. Azurity performed a reasonable search
and produced relevant documents relating to damages. Azurity will supplement its production to the

extent necessary. Annora, on the other hand, waited for months before dumping thousands of pages of documents—many unrelated to Epaned® or Annora's/Camber's ANDA Product, as previously raised in our 10/24/2022 correspondence—on Azurity to review with a fast approaching fact-discovery deadline.

Finally, with regards to the (1) Amneal Supply Agreement, (2) analyses relating to the launch of the Amneal AG,  and (3) materials from other cases,  Azurity has sent further correspondence to ask the other parties if their position has changed since we last asked. Azurity requests that Annora not approach the court with these issues until after Friday, November 18 to allow the other defendants time to respond.

With regards to (4) agreements relating to products which are not ready-to-use enalapril liquid drug products, the parties are at an impasse because those products are subject to different patents, are differentially situated, and are irrelevant to the present case.

With regards to (5) correspondence between Azurity and CoreRx and (6) valuations of CoreRx, we are at an impasse because those requests seek information which are not relevant to any parties' claims or defenses.

With regards to (7) interrogatories 7 and 8, Azurity disputes that the parties are at an impasse. As stated, Azurity is willing to supplement its responses to Interrogatory Nos. 7 & 8. As I have stated numerous times, if Annora wishes to discuss a date where Azurity and Annora will each provide supplemental interrogatory responses, Azurity will consider such a request. Otherwise, Azurity will supplement in due course.

To the extent Annora wishes to meet and confer on these issues, please also be prepared to discuss the issues raised in my 11/1/2022 letter.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, October 28, 2022 2:04 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>; Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Missing Damages Production

EXT - werner@avantechlaw.com

Granville:

We have reviewed Azurity's purported damages documents production (comprising a total of 12 documents) and it is obviously incomplete.

First, Azurity did not produce a single email.

Second, Azurity agreed to produce the following documents:

- Market analyses and projections (which would include the impact of other products on market for Epaned) (Req. Nos. 48, 50, 67, 73)
- Financial analyses and projections (which would include the impact of other products on pricing and revenues for Epaned) (Req. Nos. 49, 50, 55, 56, 73)
- Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution (Req. No. 57)
- Communications with actual/prospective customers of Epaned/enalapril oral solution (Req. No. 58)
- Documents concerning the distribution channels of Epaned/enalapril oral solution (Req. No. 59)
- Documents sufficient to show actual/projected costs (Req. No. 60)
- Physician feedback concerning Epaned/enalapril oral solution (Req. No. 77)

But Azurity has not produced any proposed or actual purchase orders/sales agreements, communications with Epaned customers, documents showing actual/projected costs, or documents concerning physician feedback. And it has produced only a very small handful of market analyses and projections and financial analyses and projections.

Azurity also failed to produce the following documents it already agree to produce:

- Documents concerning other Azurity products Azurity contends have suffered reduced sales as a result of the alleged infringement (Req. No. 51)
- Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53)
- Documents concerning pricing strategy (Req. No. 54)

Fourth, Azurity's reliance on earlier productions that preceded the document requests at issue indicates that Azurity has not (outside of 12 documents) collected or produced *any* documents from the months preceding the launch of Annora's or during any period of time in which the alleged infringement occurred.

Please provide your availability for a meet and confer on Monday to discuss (1) why Azurity has not produced these documents, (2) when Azurity will produce these documents, and (3) whether Azurity's production will include all such documents through a cutoff date of September 1, 2022. (As previously discussed, the parties can negotiate the supplemental production of certain categories of documents from after this date.)

As already discussed, the parties are at an impasse with respect to the following issues and we plan to circulate a letter to initiate the Court's informal discovery process to address them:

- All agreements with Amneal related to Azurity's settlement with Amneal, including the Supply Agreement, and all correspondence related to those agreements, including the timing of the launch of the AG product (RFP Nos. 20, 68, 69, 71, 72, 74)
- Analysis of the impact of the launch of an AG product on the market for Epaned/RTU enalapril (RFP No. 70)
- Azurity's interrogatory responses (and, if separately served, infringement and invalidity contentions), Azurity's expert reports, Azurity's fact and expert declarations (and associated exhibits), and trial transcripts (and associated exhibits) from the Amneal litigation and, where applicable, the Aurobindo litigation (Req. Nos.  18, 19, 44-46) (which documents Defendants have agreed to maintain on an outside counsel only basis and use only for purposes of litigation involving Azurity's patents related to Epaned)
- Agreements or arrangements reflecting a royalty rate for any patents or trade secrets reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (64, 65)
- Correspondence between Azurity and CoreRx (Bionpharma's supplier) concerning enalapril (RFP No. 66)
- Valuations of CoreRx (RFP No. 76)
- An explanation of why the Amneal AG product and the Bionpharma enalapril product are not acceptable non-infringing alternatives, including the identification of supporting evidence (Interr. 7 and 8)

**Todd Werner**

AVANTECH LAW
werner@avantechlaw.com
LinkedIn | Bio