# EXHIBIT 13

| | |
|---|---|
| **From:** | Todd Werner |
| **To:** | Kaufman, Granville; Nicholas Talarowski; Steve Brauerman; William Woodford; Ronald Golden |
| **Cc:** | Dellinger, Megan E.; WSGR - Silvergate - Annora RTU Epaned |
| **Subject:** | Azurity v Annora et al: Yesterday"s M&C |
| **Date:** | Friday, December 2, 2022 3:34:00 PM |

Granville:

I write to memorialize our meet and confer yesterday.

### **Supplemental Interrogatory Responses**

The parties agreed to supplement interrogatory responses by December 9.

Defendants agreed to supplement their response to Interrogatory No. 2 to identify documents related to stability testing performed on the Annora formulation and person(s) involved with such testing. To the extent Plaintiffs are interested in any other types of testing, Annora requested that Plaintiffs identify such testing. For Interrogatory No. 3 Defendants agreed to supplement their response to identify a document summarizing the research underlying the Annora product and persons involved therewith. For Interrogatory No. 6, subject to any privilege or work product protections, Defendants will identify information considered by Defendants in deciding to launch the Annora product and the person(s) involved with that decision. For Interrogatory No. 7, Defendants agreed to identify person(s) involved with selection of the formulation chosen for the Annora product, and to the extent it can be found through a reasonable investigation, document(s) related to that decision. Defendants agreed to supplement their responses to Interrogatory Nos. 11 and 14 after receiving fulsome, supplemental responses to corresponding interrogatories from Plaintiffs. Defendants will supplement their response to Interrogatory Nos. 5, 9, 10 and 13 as stated in their November 22 letter.

Plaintiffs agreed to provide supplemental responses to Interrogatory Nos. 6-10. With respect to No. 6, Defendants specifically requested the supplementation include more detailed and current information concerning costs, pricing, and sales, including changes thereto. We request that Plaintiffs include this information from 2 months before the Bionpharma launch until present. With respect to Nos. 7 and 8, Plaintiffs agreed to provide a detailed explanation of why other products, such as the Bionpharma and Amneal AG products, do not qualify as non-infringing alternatives, including but not limited to a showing of what patents it contends are infringed by those products and how they infringe those patents, why those patents are not invalid, as well as why a licensed product is not an acceptable substitute and the factual basis for any such contention. With respect to No. 9, Plaintiffs agreed to provide the facts that support any contention that Annora's limited sales have eroded the price of Epaned®. With respect to No. 10, Plaintiff agreed to identify other agreements related to enalapril products other than Epaned®, if any.

### **Damages Documents**

Plaintiffs confirmed that they consider their damages document production complete. As a result, the parties have completed their meet and confer obligations with respect to Azurity's collection of emails and other documents, including but not limited to the following categories:

1. Documents concerning "market analyses and projections," including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products
2. Documents concerning "financial analyses and projections," including internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized AG, and Annora products
3. "Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution"
4. "Communications with actual/prospective customers of Epaned/enalapril oral solution"
5. Documents related to the sales of other products for each product for which Azurity contends it has lost sales as a result of Defendants' alleged infringement (Req. No. 51), including documents concerning any changes to revenues, market share, pricing, discounts, promotions, and rebates, as well as any documents concerning any analysis of the causes resulting or contributing to such changes (Defendants' encouraged Plaintiffs to drop this theory and avoid the need to produce these documents, and Plaintiffs agreed to confirm whether they would do so by Monday)
6. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Azurity for Epaned, documents addressing Azurity's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto
7. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes

**Production of Materials from Related Litigations**

The parties also discussed the production of documents from related litigations.  Plaintiffs indicated that the review by Amneal is already underway, and that the documents from all of the related litigations are being processed and will be produced as soon as possible and for sure within the next 7-10 days.  Plaintiffs agreed to confirm whether that production will include transcripts for the depositions of plaintiffs' fact and expert witnesses.

We also discussed the Supply Agreement with Amneal and Plaintiffs confirmed they would inform Defendants if there are any agreements related to the Settlement or Supply Agreement.  Plaintiffs also agreed to confirm whether they will agree to produce documents associated with the Settlement and Supply Agreements (and any related agreements), including internal and external correspondence generally and such correspondence specifically related to the launch of the AG product, including timing thereof (see RFP Nos. 20, 68, 69, 71, 72, 74).  Plaintiffs agreed to provide the status of their efforts relating to the production of these documents.  To the extent Plaintiffs are withholding documents due to any third-party confidentiality concerns, Plaintiff will report back to Defendants so we can discuss the issue further.  If we do not hear from Plaintiff by Tuesday, we will proceed with the understanding that the parties are at an impasse with respect to this issue.

Best regards,

**Todd Werner**



werner@avantechlaw.com
LinkedIn | Bio