# EXHIBIT 22

| | |
|---|---|
| **From:** | Kaufman, Granville |
| **To:** | Todd Werner |
| **Cc:** | Nicholas Talarowski; Steve Brauerman; William Woodford; Ronald Golden; Dellinger, Megan E.; WSGR - Silvergate - Annora RTU Epaned |
| **Subject:** | RE: Azurity v Annora et al: Yesterday"s M&C |
| **Date:** | Friday, December 16, 2022 6:02:49 PM |

Todd,

Annora has once again ignored our requests for a meet and confer. We are available Monday (12/19) at 11:30 am -2:30 p.m. PT. Please provide your Monday availability immediately and I will send an invite. Note that this is separate from the call with Wendy Devine.

Relatedly, Annora has yet to respond to any of Azurity's concerns regarding Annora's production. Please, confirm that Defendants are diligently working to collect and produce all of the missing discovery listed in my December 13, 2022 email, including (where necessary) conducting keyword searches on relevant custodians. To remind you, Azurity seeks, among other highly relevant discovery, FDA correspondence required to be produced pursuant to the Scheduling Order and Defendants' discovery responses, stability data that Defendants agreed to produce in discovery responses but are improperly withholding, and correspondence relating to research and development. With regards to the stability data, Annora is claiming a noninfringement position based on that missing information, which is prejudicial to Azurity. Please also provide a date certain by which we can expect that production.

Azurity disagrees with and disputes Annora's characterization of the events leading to the current discovery dispute and the correspondence will demonstrate such. At any rate, Azurity has mooted all of the issues in Annora's topic 1.  Azurity is diligently working to collect, review, and produce those documents.  If Annora includes topic 1 in the letter, Azurity will inform the Court that Annora included topics which the parties resolved.

With regards to topic 2, RFP 63 seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to an enalapril product."  RFP 64 seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patent(s) or trade secret(s) that is reasonably comparable to an invention covered by a claim in a Patent-in-Suit or any Related Patent."  Azurity has produced all such agreements responsive to the full scope of RFPs 63 and 64 and thus there is no dispute here. These RFPs should be removed. Otherwise, Azurity agrees that those topics are ripe (with the exception to emails that you noted in your email below).

With regards to topic 3, Azurity stands by its position that the discovery letter is an improper vehicle for resolving scheduling issues. Furthermore, the parties have not meaningfully met and conferred on this issue. At the meet and confer and in the ensuing correspondence, Azurity asked for Annora's proposition regarding the schedule. Annora said that they would like to extend fact discovery by 60 days and/or 88 days; that is not a meaningful proposal. This would push fact discovery well into the current expert discovery schedule, necessitating changing those and other deadlines as well. Please provide Annora's proposed schedule—including Annora's proposition for any affected deadlines— prior to the meet and confer on Monday so that the parties may discuss.

Finally, please confirm that defendants' discovery responses and document production for all requests included both Annora and Camber documents and information.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, December 16, 2022 12:52 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

In August we conferred to discuss a large number of document requests and a few interrogatories. Azurity agreed to produce documents associated with many of those requests on that call. See August 25, 2022 email. The Court's scheduling order (as modified) required Azurity to produce those documents by October 17. Azurity did not produce them. As a result, we've had to exchange countless additional emails/letters and confer again on the same issues before Azurity agreed to collect emails and produce these documents. This is why, during our Dec 7 call, we asked to know when we would get the documents, and why we have included a date certain for production of these emails in the letter to the Court. Azurity has repeatedly refused to provide a date by which we will receive these documents. With the current discovery close on January 13 and several days of depositions yet to complete, you can probably understand why a promise to produce documents that's not tethered to a date is not acceptable. That may have been acceptable several months ago, but not at this late stage of discovery—especially when these documents should have been produced in the first instance. Topic 1, which is all about setting a deadline by which Azurity must abide and will ensure that Defendants can obtain the full scope of discovery provided by the rules, is ripe for resolution by the Court.

It appears you agree that Topic 2 is ripe, with the exception of the reference to emails applying to topic 2(a). We can make that adjustment.

With respect to Topic 3, we included that topic in the initial letter we sent 10 days ago. You have had our proposal for 10 days and have not agreed to it. For the first time this morning, you suggest it is not a topic appropriate for the discovery dispute procedure and that the parties (whom you

acknowledged discussed the issue of an extension during our meet and confer) have not adequately conferred on the issue. Yet you have confirmed Azurity does not agree with the extension we have requested, and have never offered a different proposal. Instead, Azurity deleted the topic from our letter without addressing the issue in any of its emails. In any event, with respect to the remaining deadlines, those would also be adjusted to the same extent (i.e. the amount of time between the document production deadline and each subsequent deadline would remain the same in the new schedule as the current schedule). We do not believe Azurity's untimely production of damages documents should hinder Defendants' efforts to prepare their case.

**Todd Werner**



werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Friday, December 16, 2022 8:47 AM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Todd,

This is the third time you have sent us a letter that does not eliminate RFPs that we have resolved. We are working diligently to collect, review, and produce the entire scope of the documents you have requested. You seem to be insisting on wasting the Court's time by trying to raise issues where there is no live dispute, in addition to harassing Azurity and driving up litigation costs. If you insist on raising issues with the Court that have been resolved by the good faith, diligent efforts Azurity has engaged in to comprise and avoid the need for the judge's time, we will inform the Court of that fact and reserve our rights to seek any and all available remedies, including sanctions under Rule 37.

Additionally, your dispute number 3 is not a discovery dispute, nor have the parties fully discussed and reached an impasse. At the meet and confer and during the following correspondences, you mentioned only that you wanted an extension, there was no discussion about the contours of any such extension. Nor has your subsequent correspondence fully elucidated your proposal, other than indicating that you seek 88 additional days of fact discovery, which clearly would encroach on the current expert discovery schedule, for which you still have yet to provide a proposal. This does not meet the spirit or the requirements of the Scheduling Order to meet and confer. If you submit this as a dispute at this time, we will bring these deficiencies to the Court's attention. Please provide us with your proposal for whatever adjustments to the scheduling order Annora seeks so that we may consider it. We are available next week to meet and confer.

Again, the only remaining disputes that we have not mooted from Annora are 1) RFP 66,

correspondence with CoreRx concerning enalapril, and 2) RFP No. 65, which seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patent(s) or trade secret(s) directed to a new formulation or reformulation of a commercially available drug product." Notably, this does not request emails or other communications, as your letter improperly suggests.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Thursday, December 15, 2022 2:16 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT   werner@avantechlaw.com

---

Granville:

I am quite confused about your charges against Defendants as we have merely responded to Azurity's voluminous emails that consistently fail to answer the questions we have repeatedly posed. Setting your unfounded attacks aside—here is the letter we intend to file.

As for your efforts to inject brand new issues we have never even discussed, the record speaks for itself. As we already explained earlier today, less than 24 hours after receiving your letter, we are available to discuss those next week and we asked you to identify a time to discuss them. So we are also confused by your attacks about our timeliness.

**Todd Werner**

**➤ AVANTECH LAW**
werner@avantechlaw.com
LinkedIn | Bio

---

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Thursday, December 15, 2022 3:59 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -

Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Hi Todd,

Azurity does not believe serial discovery letters are in the interest of either party or the Court. Please provide your availability to discuss Azurity's discovery concerns tomorrow or Monday.

Furthermore, please provide your positions on which of defendants' discovery issues remain live in your opinion. Your prior letter violated the requirement in the Scheduling Order that requires a non-argumentative list of disputes.  We trust that Annora's next draft will be revised accordingly.

Azurity's disputes are not new. *See* 12/12/2022 G. Kaufman email to T. Werner (outlining discovery deficiencies); 12/13/2022 G. Kaufman email to T. Werner (same).  Yet your response this morning indicates that you have not yet inquired with your client; instead you promise that you "will diligently consider" Azurity's concerns without any indication of when we can expect a response. That is unacceptable given Azurity's very prompt responses to Annora's substantive questions, continued diligence, and constant communication with its client in repeated attempts to resolve Annora's issues.

With regards to the schedule, Azurity has already indicated it is amenable to discussing a reasonable extension of the schedule but does not agree to Annora's suggestion.

Please promptly provide a draft of the proposed letter for consideration.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com


**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Thursday, December 15, 2022 9:49 AM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

Granville:

For over a week we have been trying to get a letter on file to resolve issues on which we conferred with Azurity two weeks ago (and many of those issue were raised in October). Today, we will be filing a letter to address the issues on which we have conferred and for which Azurity has not resolved our concerns. One of the issues we discussed during our meet and confer two weeks ago was an extension. I noticed you deleted that issue from the draft letter. Does that mean Azurity agrees to the extension? If not, we are unclear why you deleted that issue.

Note that the letter will not include the new issues that you just raised and that we have never discussed with you, much less our client. We will diligently consider your newfound concerns— some of which appear to be related document productions from a year ago. Please let us know when you are available next week to discuss those issues further and we can arrange a call.

**Todd Werner**



werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Wednesday, December 14, 2022 8:36 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Hi Todd,

To answer your repeated question, yes: where Azurity stated that it will perform a reasonable search, our good-faith, reasonable search will include keyword searching in relevant custodian emails. However, the fact that you are repeatedly asking this question when it is quite apparent from Azurity's production that it has indeed produced numerous emails already causes us great concern about Annora's and Camber's production.

Please confirm that when Annora and Camber represented that each would produce responsive documents to Azurity's requests that both Annora and Camber conducted key word searches of relevant custodian emails. We have already raised this concern previously. For example, it appears that your production may not have searched for emails in response to all of our Requests for Production. *See* G. Kaufman December 13, 2022 email regarding Annora and Camber production.

Additionally, on the 12/1 meet and confer we discussed that defendants objections, responses, and document productions vis-à-vis all of Azurity's discovery requests served throughout this litigation would encompass documents and information from Camber as well as Annora. Please confirm that this is the case.

With respect to RFP No. 57, Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution, as we have repeatedly told you, there are no further documents regarding this.  We note that Camber has only produced one excel sheet detailing all of the purchases and orders of the Annora ANDA Product. CAMENAL00005343.  Thus, there is no dispute with respect to this RFP.

With respect to RFP No. 53, which seeks "[a]ll documents relating to the promotion, marketing, detailing, or advertisement of Epaned from 2016 to the present."  Thank you for agreeing that an exemplary subset of certain advertisements and promotional materials are sufficient and Defendants are not seeking every marking document.  Thank you also for narrowing the remainder of the request to marketing strategy documents such as presentations, plans, memos, budgets, and emails.  Azurity will perform a good-faith reasonable search and produce non-privileged, relevant documents, to the extent that they exist and can be found after such reasonable search, with respect to these topics.

We understand there are still a few remaining issues to be resolved by the Court and have edited your proposed letter to the Court to reflect the current concerns.  Please note this includes Plaintiff's current concerns as well, although we hope that Annora or Camber will attempt to moot some of these before we take them to the Court.  We await your response to the issues raised in our separate emails.

Regards,

**Granville Clay Kaufman | Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Wednesday, December 14, 2022 8:49 AM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

Granville:

Please see our responses in red below.

**Todd Werner**


werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Tuesday, December 13, 2022 6:07 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Hi Todd,

Please find responses below to the outstanding issues. We believe that this should moot most of the
issues.  If you agree, hopefully we can get a letter on file with the outstanding issues.

- Documents sufficient to show all actual and projected costs related to development,
  manufacturing, marketing, advertisement, promotion, and sale of Epaned® from 2019 to
  present (RFP Nos. 60, 61)
    - This will include additional costs not just COGS. Thus, this issue is resolved.
- Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral
  solution (RFP No. 57)
    - I am not referring to some other kind of documents. Azurity produced what it had vis-
      à-vis purchase orders. As previously stated, Azurity does not keep the orders in a
      format that result in individual purchase orders, only in summary fashion.  Thus, Azurity
      has responded to the full scope of the request as documents are kept in the ordinary
      course of business and this issue is resolved.  You have not addressed whether there
      are agreements with these customers, or other documents that show sales with these
      customers.
- Documents concerning market analyses and projections, including internal documents
  analyzing the impact of various competitive factors on the market, including but not limited to
  the Bionpharma, authorized AG, and Annora products (RFP Nos. 48, 50, 51, 67, 70)
    - RFP No. 48: This request seeks "[a]ll market-share analysis and projections for any
      ready-to-use oral solution of enalapril, including but not limited to Epaned, Authorized
      Generic Enalapril, and/or Generic Enalapril from 2016 to the present." Azurity will
      produce non-privileged documents responsive to the full scope of the request to the
      extent that they can be found after a reasonable search. Thus, this issue is resolved.
      Please confirm that the "reasonable search" includes keyword searching of email
      custodians reasonably likely to be in possession of such documents.
    - RFP No. 50: This request seeks "[a]ll documents relating to the impact of any ready-to-
      use oral solution of enalapril (other than Epaned) on the sales, price, or market share of
      Epaned." Azurity will produce non-privileged documents responsive to the full scope of
      the request to the extent that they can be found after a reasonable search. Thus, this

issue is resolved.  Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.

- o RFP No. 51: The parties have previously discussed this and agreed this request is no longer at issue.
- o RFP No. 67: This request seeks "[a]ll documents related to the impact of Generic Enalapril on the market for enalapril products, Epaned, and/or Authorized Generic Enalapril, including but not limited to documents related to the impact of the launch of Bionpharma's ANDA Product, Authorized Generic Enalapril, and/or Annora's ANDA product on the market for any other enalapril product(s), such as ready-to-use enalapril oral solution products." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved. Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.
- o RFP No. 70:  This request seeks "[a]ll documents related to any analysis of the launch of an Authorized Generic Enalapril on the market for ready-to-use oral solutions of enalapril and/or Epaned, including but not limited to any consideration of the impact of the launch of Amneal's Authorized Generic Enalapril on the market for Epaned." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved.  Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.

- Communications with actual/prospective customers of Epaned/enalapril oral solution (RFP No. 58)
  - o RFP No. 58: We have already informed Annora that we performed a reasonable search and produced relevant documents. There is nothing more that can be done here. Annora is seeking to compel further documents which do not exist.  Please confirm your "reasonable search" included keyword searching of email custodians reasonably likely to be in possession of such documents.
- Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Plaintiff for Epaned, documents addressing Plaintiff's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto
  - o RFP No. 53: This request seeks "[a]ll documents relating to the promotion, marketing, detailing, or advertisement of Epaned from 2016 to the present." Azurity offered to produce—and did produce—documents sufficient to show "Azurity's general promotion and marketing of Epaned." Azurity will supplement its production to include further marketing materials to extent such marketing materials have changed since Azurity last produced such materials. Azurity is further willing to search for and produce documents relating to "share of voice" to the extent such documents exist.

    Annora incorrectly seems to believe that it is entitled to every single document or

email which mentions marketing from the time that Azurity began marketing Epaned to the present day—otherwise, Annora would have no complaints that Azurity produced documents sufficient to show. That is incorrect and would create a massive burden for Azurity to search for and produce every single email that mentions marketing and enalapril. Indeed, this evidently is Annora's position as well. *See, e.g.,* Annora's Response to RFP 37 (refusing to produce additional documents in response to an RFP seeking Annora's marketing plan); Annora's Response to RFP 84 (agreeing to produce "examples of any advertising used with respect to the ANDA product."). Notably, Azurity's RFP 84 sought "[a]ll documents discussing, relating to, or referencing information" yet Annora, apparently recognizing this burden, limited its response solely to "examples of any advertising used with respect to the ANDA Product, [sic] that they locate through a reasonably diligent search." Annora's request is overbroad and Annora has refused to meaningfully engage in discussions regarding scope—instead Annora has continually expanded the scope of this request. Azurity will perform a reasonable search for and produce the examples of any advertising used with respect to Epaned since Azurity last produced such materials. To the extent Annora thinks that is insufficient, the parties are at an impasse. Defendants have never asked for "every single document or email which mentions" the word marketing, but Azurity has alleged that "Azurity has had to make budget cuts. For example, Azurity has had to cut its marketing efforts for Epaned and other cardiovascular products" as a result of Defendants' alleged information. Defendants are entitled to discovery concerning how those efforts have changed, why they have changed, and the impact those efforts (and changes thereto) have had on sales of Epaned from 2020 to present. This would include, but not be limited to, the marketing plans as well as the particular materials you indicated a willingness to search for above, and would include keyword searching of email custodians reasonably likely to be in possession of documents concerning such issues. Moreover, "marketing" materials are not synonymous with customer advertising or promotional materials. Those materials provide only a subset of information. To address your concerns, we can further refine our request. We are seeking marketing strategy documents, such as presentations, plans, memos, budgets, and internal emails. Specifically, marketing strategy includes topics such as pricing, promotion, and target markets for Epaned, as well as corresponding changes (including extent thereof) and expected impacts of those changes. We are also seeking correspondence with customers relating to these issues, and pricing in particular. With respect to the subset of advertisements and promotional materials, we can agree to production of representative samples provided those samples capture any changes to advertising strategy from 2020 to present. Please let us know whether this offer is agreeable. In the meantime, we will keep this issue in the letter.

- Agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to subject matter that is reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (Req. Nos. 63, 64, 65)
  - RFP No. 63: This request seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to an enalapril product." Azurity has produced all such agreements. Thus, there is no dispute here.

RFP No. 64: This request seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patent(s) or trade secret(s) that is reasonably comparable to an invention covered by a claim in a Patent-in-Suit or any Related Patent." Azurity has performed a reasonable search and located no responsive documents.  Therefore, this issue is moot.

- RFP No. 65: This request seeks "[a]ll agreements or arrangements reflecting a royalty rate for any patent(s) or trade secret(s) directed to a new formulation or reformulation of a commercially available drug product." Azurity has confirmed that no Hatch-Waxman related settlement agreements exist that contain a royalty rate. It is unclear what more Annora seeks that would be relevant and proportional to the needs of this case and Annora has provided no bases for relevance of any further documents, including to any hypothetical negotiation in this case. Please provide such information and Azurity can consider. To the extent Annora continues to seek this irrelevant information, we are at an impasse. Defendants have identified a specific type of pharmaceutical development that they believe to be reasonably comparable to the claimed invention so as to potentially inform the reasonable royalty analysis.  This information is relevant to at least Georgia Pacific factors 1, 2, and 15.  We will proceed with a motion.

- Documents related to Plaintiff's Settlement Agreement with Amneal (including the Supply Agreement and any other related agreements), including internal and external correspondence related to those agreements, and internal and external correspondence related to the launch of the AG product, including timing thereof (see RFP Nos. 20, 68, 69, 71, 72, 74)

    - RFP No. 20: This request seeks "[a]ll settlement or license agreements related to any Patents-in-Suit or any Related Patents." Azurity has produced all documents. Thus, there is no dispute here.

    - RFP No. 68: This request seeks "[a]ll documents related to any agreement that authorizes or otherwise permits the sale of an Authorized Generic Enalapril, including but not limited to Amneal's Authorized Generic Enalapril." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved. Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.

    - RFP No. 69: This request seeks "[a]ll documents related to strategies, plans, or decisions to launch (or permit the launch of) an Authorized Generic Enalapril, including but not limited to strategies, plans, or decisions whether and when to begin marketing Amneal's Authorized Generic Enalapril." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved.  Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.

    - RFP No. 71: This request seeks "[a]ll communications with Amneal related to the launch of Bionpharma's ANDA Product." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved.  Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in

possession of such documents.

- RFP No. 72: This request seeks "[a]ll communications with Amneal related to the prospective or actual launch of Amneal's Authorized Generic Enalapril, including but not limited to the decision to launch Amneal's Authorized Generic Enalapril after the commercial launch of Bionpharma's ANDA Product." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved. *Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.*
- RFP No. 74FP No. 74: This request seeks "[a]ll Documents concerning your licensing and/or sublicensing of the Patents-in-Suit and/or any Related Patents and efforts relating thereto (whether or not successful), including without limitation documents sufficient to show all personnel involved with licensing, licensing policies and practices, license agreements, settlement agreements, covenants not to sue, negotiations, discussions, royalty payments, or other communications concerning licensing of patents." Azurity will produce non-privileged documents responsive to the full scope of the request to the extent that they can be found after a reasonable search. Thus, this issue is resolved. *Please confirm that the "reasonable search" includes keyword searching of email custodians reasonably likely to be in possession of such documents.*

Thus, the only issues the parties remain at an impasse on are (1) correspondence with CoreRx concerning enalapril, (2) the royalty rate agreements related to trade secrets and non-Hatch-Waxman cases, and (3) to the extent Annora will not narrow its requests to the same scope of documents that Annora has agreed to produce, documents relating to marketing. *Subject to confirmation of the issues discussed above, there is also the issue of the schedule extension. Please let us know your position on our proposed extension.*

Regarding a date certain for production, we have reached out to our client concerning the search and will work as quickly as possible to get the documents reviewed and produced. *This information will directly impact the length of the fact discovery extension. Please confirm when you will provide a date certain for production of these materials.*

Regarding your proposed letter, your local counsel resent the letter sent last week which, by your own correspondence, has many issues that are no longer relevant. We have mooted additional issues in the above correspondence. We will redraft accordingly and send with our edits and concerns as well.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Tuesday, December 13, 2022 11:28 AM

**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

Granville:

We have reached out to Hetero concerning additional stability data submitted to the FDA, and will
be producing any additional data shortly.  I understand there may be 24 month, data but I am
unaware of 36 month data.  If you have reason to believe that such data exists please let me know.

As for the issues between the parties, we are hopeful your client does agree to our requests.  But we
have been discussing these issues for weeks and need to get a letter to the Court on file to start the
process.  Our local counsel will be reaching out to accomplish that.

**Todd Werner**

 AVANTECH LAW
werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Monday, December 12, 2022 7:54 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Todd,

We are working in good faith with our client in an attempt to resolve most or all of your concerns
regarding our production.  In the meantime, we have reviewed the production to which you have
referred us, and this September 2022 production contains FDA correspondence from September
2020 .  This dilatorily-produced correspondence only contains 12M of stability data, but Annora
requested and received 24M expiration for its ANDA Product.  Annora committed to providing 18M,
24M, and 36M stability data to FDA for the exhibit batches, as well as for one marketing batch per
year.

You have failed to produce any correspondence with FDA related to such stability information from

Defendants. You have already acknowledged that such data is directly relevant to Azurity's infringement analysis, as your Supplemental Response to Interrogatory No. 5 continues to state that Azurity has not shown Defendants' ANDA Product meets these stability limitations.

Please immediately supplement Defendants' deficient production with all missing correspondence with FDA, as required in the Scheduling Order Paragraph 8.c.ii, or we intend to include this dispute in the discovery dispute letter as well.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Monday, December 12, 2022 10:02 AM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

We need to get our letter on file to initiate the dispute resolution process today, so please let us know the extent to which you can provide the additional commitments necessary to resolve any of the issues below.

**Todd Werner**

> AVANTECH LAW
werner@avantechlaw.com
LinkedIn | Bio

**From:** Todd Werner
**Sent:** Saturday, December 10, 2022 4:07 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Granville:

See responses below.

**Todd Werner**

AVANTECH LAW
werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Friday, December 9, 2022 8:37 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Todd,

As an initial matter, it appears that parties can take the following disputes off the letter:  As I
mentioned in my previous correspondence, we cannot take off any of these issues unless and until
Azurity confirms that (1) it will use a keyword search to locate emails of custodians reasonably likely
to have the requested documents, and (2) provides a date certain by which it will produce the
requested documents, as requested in my earlier correspondence.

- a. Documents concerning financial analyses and projections, including internal analyses of the
  financial performance of Epaned® and the impact of various competitive factors on the
  financial picture for that product, including but not limited to the Bionpharma, authorized AG,
  and Annora products (RFP Nos. 49, 50, 51, 67, 70)
    - i. To answer your comment, this will include a search for emails relating to the impact of
      the Amneal AG. Thus, this dispute is resolved.
- b. Documents sufficient to show all actual and projected costs related to development,
  manufacturing, marketing, advertisement, promotion, and sale of Epaned® from 2019 to
  present (RFP Nos. 60, 61)
    - i. Azurity can supplement to show costs including the current COGS and will supplement
      further as more relevant documents are created.  Our request extends beyond the
      COGS.  Please confirm you will produce documents sufficient to show all costs
      associated with the development, manufacturing, marketing, advertisement,
      promotion, and sale.
- c. Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral
  solution (RFP No. 57)
    - i. As we have explained, the data we produced is in the format that Azurity maintains it.
      We are unsure what else Annora would like produced here.  Azurity agreed to search

for the agreed-upon categories of damages information and then produce information to the extent that it existed.  Azurity will update the information through trial, again, in the format in which it is maintained. We trust this resolves the dispute.  You did not answer the question in my email:  Does Azurity not have any agreements at all with its customers to document sales/orders?  We are only aware of summary sales information.  Are you referring to some other kind of documents?

d. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes
   i. It appears this dispute is resolved as Azurity will perform a reasonable search for and produce emails relating to pricing strategy.

e. Valuations of CoreRx (RFP No. 76)
   i. As noted, this dispute is resolved.

Please let us know if you disagree that the parties are no longer at an impasse on these topics.

With regards to the remaining topics:

a. Documents concerning market analyses and projections, including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 48, 50, 51, 67, 70)
   i. Annora has failed to answer Azurity's simple question: what else besides what has been previously produced and the emails which Azurity agreed to perform a reasonable search for would be relevant and proportional to the issues in this case? Annora's inability to answer this question is frustrating Azurity's ability to meaningfully assess its compliance with its discovery obligations. Azurity cannot check if further documents exist and are responsive if Annora does not articulate what it wants with specificity.

   To address your specific contention that Defendant's did not ask for documents "sufficient to show," for RFPs 48, 51, and 67, Azurity specifically indicated that it would provide documents sufficient to show the requested subject matter. For RFP 50, Azurity indicated that the materials it requested was duplicative of the materials Azurity would provide in response to RFP 48, i.e. documents sufficient to show. At no point did Azurity state or indicate that it intended to produce documents more than sufficient to show the relevant subject matter. The fact that the parties later discussed these RFPs and agreed to produce such documents does not change the fact that Azurity has always maintained it would produce documents sufficient to show. And for RFP 70, Azurity initially did not agree to produce any documents because the request was so broad. As has been stated numerous times, Azurity is willing to perform to perform a reasonable search for emails relating to the Amneal AG and its impact. Annora has not indicated why that is not sufficient.  The parties' correspondence belies your new argument.  Further, Defendants never agreed to limit these requests to documents "sufficient to show," which I have repeatedly explained does not even make sense in the context of the information responsive to this topic.  All of this information is directly relevant to causation and damages. Either confirm you will perform reasonably diligent searches for the full scope of the

referenced documents, including keyword searches for custodians reasonably likely to possess such information, and provide a date certain by which the requested documents will be produced, or the parties remain at an impasse.

b. Communications with actual/prospective customers of Epaned/enalapril oral solution (RFP No. 58)

i. As an initial matter, Annora is not entitled to discovery on discovery, *i.e.* discovery on how Azurity conducted its discovery. *See Brewer v. BNSF Ry. Co.*, 2018 WL 882812, at *2 (D. Mont. Feb. 14, 2018); *see also Alley v. MTD Prods., Inc.*, 2018 WL 4689112, at *2 (W.D. Pa. Sept. 28, 2018). Moreover, Annora's "[s]peculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). Azurity performed a reasonable search and produced relevant, non-privileged documents. As with the above topic, it is unclear what else exactly Annora wants Azurity to do or what specific types of documents Annora seeks. Please articulate what further documents you would like Azurity to produce in response to this request. We are unaware of any custodians reasonable likely to be in possession of such documents from whom Azurity collected such information, and in view of the absence of any documents in your production, especially over the last 18 months, we have no reason to believe a reasonably diligent search for this information has been performed. And Azurity already agreed to produce this information. We are at an impasse.

c. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Plaintiff for Epaned, documents addressing Plaintiff's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto

i. In its response to RFP 53, Azurity agreed to "produce relevant, non-privileged documents and things **sufficient to show** Azurity's general promotion and marketing of Epaned. . ." This characterization has never been disputed and indeed, it is precisely what Azurity produced. Moreover, in my September 9, 2022 email, which you refer to, I indicated that "Azurity confirms that documents relating to marketing **have already been produced**, including documents relating to marketing, detailing, and the advertisement of Epaned®. **If Annora disagrees that such documents have been produced, please confirm and indicate why Annora believes the production is deficient**." On September 15, 2022, you did not contest that Azurity produced these documents or indicate what further documents Annora sought. You are of course welcome to argue to the Court that you have satisfied your obligations, but we have explained numerous times why we believe your production is inadequate. We are at an impasse.

Now—despite not complaining when afforded the opportunity too and despite not saying anything regarding the fact that Azurity agreed to produce documents

sufficient to show relating to marketing, detailing, and advertising—Annora complains that Azurity's production is deficient for producing exactly what Azurity said it would produce. The parties' correspondence belies this suggestion. Annora further seeks to improperly expand the scope beyond what Azurity agreed to. We disagree, and it appears the Court will need to decide whether Azurity's explanation and position is acceptable. Annora is not entitled to all documents relating to changes vis-à-vis marketing over the past 18 months (well beyond the timeframe of Annora's infringement), all documents relating to decisions on those changes, the underlying analysis of those decisions, and all documents relating to any impacts of those decisions. That is unduly burdensome, improper, beyond the scope of RFP 53, and beyond the scope of what Azurity agreed to produce. Nonetheless, as indicated, Azurity is willing to perform a reasonable search for and produce marketing materials to the extent they have changed since the last production and documents relating to "share of voice." Please confirm that this dispute is resolved. Our request is not limited to marketing materials. Further, we are unaware of any efforts to identify and collect information from custodians reasonably likely to be in possession of such information, either as part of your liability production or your damages production. Further, the marketplace has been changing since the launch of Bionpharma's product and the changing market leading up to Annora's launch is directly relevant to damages. In addition, the impact of Bionpharma's product on the market also informs the impact of Annora's entrance to the market. We remain at an impasse.

d. Agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to subject matter that is reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (Req. Nos. 63, 64, 65)

    i. Please describe the relevance that trade secret licenses would have in the patent context, including citation to any relevant case law that Annora intends to rely on so that Azurity may properly consider it. Azurity has confirmed that it has produced all of the settlement agreements related to this product and that any trade secret licenses, to the extent they exist, would be irrelevant. Annora has provided no theory or any support to refute this. If Annora refuses to remove or narrow this request, the parties are at an impasse. However, if Annora intends to take this issue to the Court, we will inform the Court that Annora has refused to provide any relevance for this fishing expedition. Courts have repeatedly found that the concern of protecting trade secrets substantially outweighs any tangential or theoretical relevance to a damages calculation. *See Carnegie Inst. Of Was. V. Pure Grown Diamonds, Inc.*, 2020 U.S. Dist. Lexis 97400, *2-3 (S.D.N.Y. June 2, 2020). Here, Annora has not even voiced such a theory, making this request even more irrational. The hypothetical negotiation is a highly-fact specific issue and we see no reason why an established royalty for different form of intellectual property directed to comparable subject matter would be legally irrelevant to the inquiry. Notably, the same factors go into the calculation of a reasonable royalty for patents and trade secrets. *See, e.g., Fed. Express Corp. v. Accu-Sort Sys., Inc.*, No. CV 01-2503, 2006 WL 8434958, at *6 (W.D. Tenn. Jan. 13, 2006) (collecting cases). If you have concerns about a particular trade secret we are happy to discuss potential mechanisms to avoid the need to disclose the specific trade secret in

lieu of a general description of the underlying subject matter.

    e.  Correspondence between Plaintiff and CoreRx (Bionpharma's supplier) concerning enalapril (RFP No. 66)

        i.  Annora has not pled unclean hands; thus it is not at issue in this case. Azurity is not required to produce information on issues not at issue in the present case. The parties are at an impasse.

    f.  Documents related to Plaintiff's Settlement Agreement with Amneal (including the Supply Agreement and any other related agreements), including internal and external correspondence related to those agreements, and internal and external correspondence related to the launch of the AG product, including timing thereof (*see* RFP Nos. 20, 68, 69, 71, 72, 74)

        i.  For what is now the third-time, Annora has refused to respond to Azurity's willingness to perform a reasonable search for emails related to the negotiations of the Settlement Agreement with Amneal. As with the other requests, Annora refuses to provide any guidance regarding what specific types of documents relating to the Settlement Agreement with Amneal Annora wants. Please explain why Azurity's willingness to search for documents relating to the Amneal Settlement Agreement, including documents relating to its impact, does not resolve this dispute. You are incorrect. We have directly responded to your proposal. The plan language of our request extends beyond documents related to the negotiation of the agreement. We explained we are not interested in narrowing this request (which your proposal requires us to do). Until Azurity agrees to collect and produce the requested information by a date certain, we are at an impasse.

With regards to the other issues in your email, as explained above, it is not the refusal to narrow the requests that is the issue; it is the refusal to answer the very simple question regarding what specifically Annora wants. Azurity has offered to compromise on many of these issues and Annora has not provided any reasoning as to why Azurity's offers are not acceptable. That demonstrates a refusal to engage in good faith discussions regarding these discovery issues. Defendants have identified the specific documents they are seeking, and Azurity has not agreed to produce them.

Additionally, there was ample reason for Azurity to collect and produce damages related documents earlier in the litigation as these documents related to other issues such as, *inter alia*, secondary considerations and the preliminary injunction. The fact that these documents ***also*** relate to damages does not make them any less relevant to damages and does not make Azurity's production any less complete with respect to the fact that we produced documents that fall in the above categories.

As explained above, Azurity agreed to produce numerous categories of documents on a sufficient to show basis. At no point—including during the prior discussing relating to document production—did Azurity agree to produce documents beyond those sufficient to show. Nonetheless, Azurity is willing to work with Annora but Annora thus far has failed to articulate what specifically it wants. Azurity is not asking Annora to explain what is "missing" but Annora obviously has reasons to continue to harass Azurity regarding document production presumably because Annora believes it wants specific types of documents. Please share, with specificity, what Annora wants. See response in paragraph a(i) above.

With regards to the extension of the schedule, it has become apparent that Annora's refusal to meaningfully engage with Azurity on resolving this issues—including by refusing to reply to Azurity's repeated comprises or provide Azurity with direction regarding what Annora specifically wants—that Annora is attempting to trump up a dispute to the Court where no dispute actually exists. If Annora wishes to actually try to resolve these disputes—again, by providing meaningful responses to Azurity's compromises or explaining what additionally Annora wants—then the parties can discuss an appropriate extension. We have spent months trying to get the documents we are seeking. We cannot afford to continue trying to convince Azurity to produce the requested information, and so we will be seeking the Court's assistance.  If Annora continues to refuse to respond to Azurity, to refuse to explain what Annora wants, and to refuse to try to resolve these disputes in good faith than Annora's abject obstructionism is the cause for any delay and no extension is warranted. Annora's continued insistence that "Azurity believes its production is complete" wholly ignores the fact that Azurity is *attempting* to work in good faith to resolve such disputes.  Annora's refusal to acknowledge our good-faith proposals will be brought to the Court's attention if Annora continues to be obstructionist.  Azurity is free to make whatever arguments it believes appropriate to the Court.  We believe the record shows our good faith, patient effort to obtain the documents at issue.

Furthermore, despite Annora's complaints, it is not Annora's diligence—or any lack of diligence on Azurity's part—that led to permission to produce other Defendants' confidential information. Rather it was Bionpharma's decision to take the issue to the Court, which Azurity did not ever prevent, that led to other Defendants' giving permission to produce such information to Bionpharma.  Azurity later requested, and received, permission to produce that information to Annora as well.  You are mistaken. I personally had correspondence with each of Bionpharma, Amneal, Alkem, and Aurobindo and that correspondence—not any efforts by Azurity—ultimately resulted in their agreement to production of the information from the related litigations.

Finally, Azurity notes that Annora's document production itself is woefully incomplete. Specifically, Annora has refused to produce updated stability data and in fact, has noninfringement contentions that Azurity cannot prove infringement without such data. *See* 7/22/2022 Kaufman email to Werner et al. Annora's refusal to provide this information is prohibiting Azurity's ability to proceed with the case. Please provide all information, including any up to date FDA correspondence, as required by the May 11, 2021 Scheduling Order Paragraph 8.c.ii, immediately. I believe you have overlooked our September 1, 2022 production.  If that does not resolve your concerns, please let me know.  Please let us know if there is a ripe dispute here and we will seek resolution from the Court in addition to the topics that Annora intends to pursue.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, December 9, 2022 9:18 AM

**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

I have provided some specific responses below in red where warranted.  But the situation as we
understand it, and the reasons why we still need to proceed with initiation of the informal dispute
resolution process, are as follows:

- We are not willing to further narrow the requests set forth in our Nov 22 or Dec. 2 emails
  (which were documented in the letter our local counsel served).  We already exchanged
  numerous emails concerning those requests, and we also discussed these specific topics
  during our meet and confer last week.  On that same call you confirmed Azurity believes its
  production is complete, so we do not understand the accusations that we have not attempted
  to resolve these concerns.

- We fundamentally disagree with Azurity's suggestion that its production 12+ months ago
  meaningfully captured damages documents.  First, we reviewed the filenames of the
  documents produced and we do not see any damages documents (they are mostly regulatory
  and developmental documents).  This is not a surprise given there was no reason for Azurity
  to be collecting damages documents at that time.  Second, Azurity did not have our damages
  document requests in order to ensure it was collecting the information we seek.  Third, to our
  knowledge Azurity did not collect ESI (including emails) from custodians involved with
  damages-related activities.  Fourth, many of the documents we requested did not yet exist.
  On a related note, we cannot know what documents Azurity possesses, so Azurity's repeated
  requests for us to identify what is missing is illogical.

- Outside of certain financial data (sales, revenues, profits, etc.), our requests are not subject to
  a "sufficient to show" qualification.  And burden and proportionality concerns are only an
  issue if the requests are unduly burdensome, and Azurity has not offered any objective basis
  to suggest that collection of the requested information would be unduly burdensome.  More
  problematic, however, is that Azurity agreed months ago to produce most of the documents
  at issue, and now seems to be trying to recant its agreements.  See my August 25 email and
  your September 9 response.

- To the extent Azurity has now offered to collect documents concerning these issues, we need
  (1) confirmation that Azurity will be using keyword searches of custodians likely to possess the
  requested information, and (2) a date by when Azurity will complete this production.

- As we discussed on the call, an extension of fact discovery is necessary at this point. We believe the extension should provide for the same amount of time following the expected date of Azurity's complete document production as in the current scheduling order, which was 88 days (Oct 17 to Jan 13). Please let us know if you are agreeable to such an extension (which would be based on the date that Azurity commits to completing its production). If not, we intend to include this issue in the letter to the Court.

We always remain willing to try to resolve the disputes, but we can ill afford to push off resolution of these issues in view of the impending discovery deadline, especially when Azurity seems to contend an extension is unnecessary. We have been extremely patient with discovery in this case. We waited many months for Azurity to assess alleged confidentiality concerns with third-party documents from related litigations. When it seemed Azurity was not going to address those issues, we were forced to resolve them ourselves. We did that many weeks ago, and yet we haven't received a single document. We cannot accept such delays any longer, and would like to get the letter to the Court on file today to minimize further delays. To the extent you can agree to any of the requests below today, we can remove those issues. But to the extent we are unable to resolve the issues today, we intend to include them in the letter. We look forward to your response.

Best regards,

Todd Werner

≽ AVANTECH LAW
werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Thursday, December 8, 2022 6:11 PM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Todd,

We are confused as to why many of these categories, which we have offered to search for and produce documents to the extent they have been found, are included in this letter. To be clear, we will not agree to put in a letter to the Court with alleged disputes that we are actively trying to resolve. Below we put forth your categories with Azurity's responses to your alleged disputes and the current status.

With respect to the correspondence between Plaintiff and CoreRx, we again reiterate that Defendants have not pled any theories that would make this information relevant and proportional

to the needs of this case.  Because Defendants continue to seek information not relevant or proportional to the scope of this litigation, we agree we are at a dispute regarding this topic. However, your letter does not conform with the May 22, 2021 Scheduling Order (D.I. 19), amended in part by the May 9, 2022 Scheduling Order (D.I. 131), Paragraph 8(h)(ii), requiring a "non-argumentative list of disputes requiring judicial attention."  Please provide an updated letter for review limited to the current dispute and complying with this requirement if you would like to proceed with filing.

Below we set forth your categories with Azurity's responses to your alleged disputes and the current status:

1. Plaintiff's offer to collect specific categories of emails relating to damages, and Defendants' refusal to respond whether this would moot this dispute, or whether Defendants seek further discreet categories of documents.  The parties are not at an impasse.

2. Defendants' refusal to detail what more Defendants need from each of the following categories in Plaintiff's collection of documents (including email) relating to damages, including:

   a. Documents concerning market analyses and projections, including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 48, 50, 51, 67, 70)

      i. Azurity has produced documents sufficient to show what Defendant purports to seek, including documents updated through Q2 2022.  Azurity has also agreed to update these documents as further information becomes available on a mutual basis through trial.  Azurity has also offered to search for emails related to the market impacts of Bionpharma's and Defendants' generic drug products.  Defendants have not further detailed what more Defendants seek that is relevant and proportional to the needs of this case. Therefore, the parties are not at an impasse.  Defendants did not ask only for documents "sufficient to show" and Plaintiffs already agreed to produce the requested documents.  See Werner Aug 25 email and Kaufman Sept. 9 email.

   b. Documents concerning financial analyses and projections, including internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 49, 50, 51, 67, 70)

      i. Azurity has produced documents sufficient to show what Defendants purport to seek, including documents updated through Q2 2022.  Azurity has also agreed to update these documents as further information becomes available on a mutual basis through trial.  Azurity has also offered to search for emails related to the market impacts of Bionpharma's and Defendants' generic drug products.  Defendants have not further detailed what more Defendants seek that is relevant and proportional to the needs of this case.

Therefore, the parties are not at an impasse. Our request encompasses the impact of the Amneal AG produce on the market as well. If Azurity will agree to produce emails relevant to that issue as well (using a customary email search and review) in a reasonable time frame, we can remove this topic. Until then, this topic remains ripe for resolution.

c. Documents sufficient to show all actual and projected costs related to development, manufacturing, marketing, advertisement, promotion, and sale of Epaned® from 2019 to present (RFP Nos. 60, 61)

  i. Azurity has produced documents sufficient to show what Defendants purports to seek and is unsure what more Defendants are seeking. Defendants have not further detailed what more Defendants seek that is relevant and proportional to the needs of this case. Therefore, the parties are not at an impasse. Costs are not fixed, and so this requires supplementation. But if Azurity can confirm that detailed cost information will be produced by a date certain, we can remove this topic for now.

d. Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution (RFP No. 57)

  i. Azurity has produced documents evidencing what Defendants requested in the format that is available to Azurity. Azurity does not have individual purchase orders based on the way the information is kept. Defendants have not further detailed what more Defendants seek that is relevant and proportional to the needs of this case. Therefore, the parties are not at an impasse. Does Azurity not have any agreements at all with its customers to document sales/orders? It agreed to produce them. See Werner Aug 25 email and Kaufman Sept. 9 email.

e. Communications with actual/prospective customers of Epaned/enalapril oral solution (RFP No. 58)

  i. Azurity has already produced these documents. Azurity subsequently did a further search, and no additional communications with customers exist. We trust this moots this alleged dispute. Azurity has already agreed to produce these documents. See Werner Aug 25 email and Kaufman Sept. 9 email. Please clarify the steps you undertook to search for these documents so we may consider whether this topic remains ripe, such as whether Azurity ran a keyword search of custodians reasonably likely to have responsive documents.

f. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Plaintiff for Epaned, documents addressing Plaintiff's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such

strategies, or the amount of resources allocated thereto

    i.   Azurity has produced documents sufficient to show marketing, detailing, and advertising of Epaned.  Azurity is inquiring as to whether there have been any recent changes to the marketing documents for Epaned, but will produce the most recent versions of marketing documents.  We trust this resolves this alleged dispute.  <span style="color:red">Defendants did not ask only for documents "sufficient to show" and Plaintiffs already agreed to produce the requested documents.  See Werner Aug 25 email and Kaufman Sept. 9 email.  We also do understand how it is possible to produce documents sufficient to show such analyses and efforts.  Defendants are entitled to know about any changes to these efforts and activities, especially over the last 18 months.  Documents concerning those decisions, analysis underlying those decisions, and any impact such changes were expected to have and/or have had, have not been produced.</span>

g. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes

    i.   Azurity has produced documents showing any pricing changes for Epaned®, and has offered to search for and produce emails, to the extent they can be located after a reasonable search, concerning pricing changes.  When was this offered?  Defendant has not responded to Azurity's offer.  Defendant has not further detailed what more Defendant seeks that is relevant and proportional to the needs of this case.  Therefore, the parties are not at an impasse.  <span style="color:red">If Azurity will agree to produce emails relevant to pricing and changes to pricing, including any underlying analysis and the reasons for such changes, using a customary email search and review, to be produced by a date certain, we can remove this topic.</span>

h. Agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to subject matter that is reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (Req. Nos. 63, 64, 65)

    i.   Azurity confirms that it does not have any agreements or arrangements reflecting a royalty rate for patent rights in any Hatch-Waxman context as Defendants request in the identified RFPs.  Trade secrets are not at issue in this case and are not relevant.  Azurity has already produced the settlement agreements for Amneal and CoreRx related to other patents, and will produce its supply agreement with Amneal as requested.  We trust this moots this alleged dispute.  <span style="color:red">Our requests are not limited to the "Hatch Waxman context."  We do not agree that royalties related to trade secrets are legally irrelevant to royalties related to the claimed invention(s).  It appears we remain at an impasse.</span>

i. Correspondence between Plaintiff and CoreRx (Bionpharma's supplier) concerning enalapril (RFP No. 66)

    i.   Defendants have not detailed why this information is relevant and

proportional to the needs of this case. As explained above, defendants have not pled any theory that would be implicated by this information. This information relates to unclean hands and damages.

      j. Valuations of CoreRx (RFP No. 76)

           i. Defendants have not detailed why this information is relevant and proportional to the needs of this case. Defendants have not pled any theory that would be implicated by this information. However, Azurity can confirm that it has done a reasonable search and does not have any valuations of CoreRx. We trust this moots this alleged dispute. In view of this representation, we can remove this topic.

3. Documents related to Plaintiff's Settlement Agreement with Amneal (including the Supply Agreement and any other related agreements), including internal and external correspondence related to those agreements, and internal and external correspondence related to the launch of the AG product, including timing thereof (*see* RFP Nos. 20, 68, 69, 71, 72, 74).

      a. Azurity has agreed to search for and produce non-privileged emails related to the negotiation of the Settlement Agreement if that would resolve this dispute. Defendants have not responded to that offer. If not, Defendants should further detail what more Defendants seek that is relevant and proportional to the needs of this case. Therefore, the parties are not at an impasse. We do not agree to narrow this request. All of this information is related to damages, and Plaintiffs have not offered any objective basis to suggest the request is unduly burdensome. The parties are at an impasse.

Regards,

**Granville Clay Kaufman | Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com | www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Thursday, December 8, 2022 10:35 AM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

The joint letter summarizing the issues we discussed on the meet and confer and intend to move upon was provided by our local counsel to your local counsel for their review and confirmation, as is the customary practice. I am surprised you haven't received a copy from them, but here it is.

**Todd Werner**


werner@avantechlaw.com
LinkedIn | Bio

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Thursday, December 8, 2022 10:52 AM
**To:** Todd Werner <werner@avantechlaw.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Todd,

Your question is irrelevant and misleading in its form. Azurity produced documents relevant to damages that were responsive to your requests long before you ever propounded them. Azurity was not required to—and did not—reproduce documents it previously produced in response to your later-propounded discovery requests. Thus, your question is irrelevant and misleading as it presumes that Azurity did not produce any damages documents before Annora formally requested it to do so. That is factually incorrect and again indicates that Annora has not reviewed Azurity's production. Please fully review Azurity's production.

Additionally, your email confirms that Annora's complaint is simply that Azurity's production after your belated requests for documents specific to damages was not as voluminous as you anticipated. That is not a valid complaint particularly in light of Azurity's fulsome prior productions.

Finally, your question raises serious questions about the timeliness of Annora's production. Azurity propounded discovery requests in June of 2021 seeking, *inter alia*, documents relating to forecasts (RFP 15), projected sales (RFP 40), and actual sales (RFP 54). Yet, Annora waited until October of 2022 to produce documents responsive to these requests despite the fact that Annora's ANDA product had been on the market for many months prior. Why did Annora delay in producing responsive documents it could have produced months earlier and which were expressly called for by Azurity's propounded discovery requests?

Again, to the extent that Annora intends to file a "joint" discovery letter, please send it to us for review.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Wednesday, December 7, 2022 9:30 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>
**Cc:** Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman
<sbrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>; Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR -
Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** Re: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

I will respond to your many misleading and inaccurate comments in detail tomorrow.  But please
confirm one simple fact for me:  did Azurity produce more than 12 documents after receiving our
damages document requests?

Best regards,

Todd Werner

> On Dec 7, 2022, at 9:36 PM, Kaufman, Granville <gkaufman@wsgr.com> wrote:

> Todd,

> We are reviewing your email and will substantively respond shortly to the other
> concerns.  As an initial matter, as to your requests related to damages documents, you
> did not identify on the meet and confer or in any other communication any specific
> documents you believe are missing from the production that are within the scope of
> this case, proportional, and relevant to the litigation, other than the three categories
> we specifically listed in our email.  We have asked whether producing those three
> categories would resolve the dispute.  If not, we also asked you to specifically (and
> similarly) identify any other categories you contend are within the scope of this case,
> proportional, and relevant to the litigation.

> As for your reference to your November 22 email, we previously responded to each of
> items 2-9 (which your email from today did not acknowledge).  In fact, again exceeding
> our discovery obligations, we identified examples where we produced the very types of

documents you said were "missing" from Azurity's production. *See* November 15, 2022 Kaufman email to Werner et al. The documents identified were but a few examples as Azurity has no obligation to review its own production and categorize its produced documents by RFP number for Annora. Azurity has produced documents sufficient to show each of items 2-6 and, as we have previously communicated, intends to continue to supplement its production as new information (due to the passage of time) becomes available in discovery. To date, you have failed to identify any reason or basis to assert that documents sufficient to show the requested information is insufficient or why producing more than "documents sufficient to show" is proportional or relevant to the issues in this case. Indeed, your email from today indicates that Annora's position is that a party is not required to provide "more documents than are necessary" to respond to a discovery request. This rule applies equally to Azurity—who has provided more than ample documents sufficient to show each of your enumerated categories.

Additionally, some specific items warrant further discussion. For items 2 and 3, Azurity offered to search for emails discussing the impact of the Annora and Bionpharma ANDA Products on the market and emails relating to the Amneal AG negotiations if Annora would agree to withdraw the damages documents disputes. You failed to provide a response, thus indicating a lack of good faith to resolve these discovery issues.

For item 4, as has been explained, Azurity produced documents sufficient to show its purchase orders and related information in the format in which such information is available to Azurity. Thus, Annora has failed to articulate any dispute.

For item 5, as noted above, Azurity is not required to identify which RFP each document is responsive to. Azurity identified a relevant email as an example. Based on Annora's responses, it is apparent that Annora has not reviewed Azurity's production and thus cannot complain that Azurity's production is deficient. In any event, Annora has failed to articulate any reason why further documents, if they exist, would be proportional or relevant to the issues in this case. Please do so, as Annora's barebones explanation that such documents are "not irrelevant" is insufficient and unhelpful.

For item 6, Azurity has produced information relating to distribution channels and costs. As noted, Azurity intends to supplement such documents as more documents are created. It is unclear, then, what Annora intends to "revisit."

As to Item 7, Azurity already informed you that it does not intend to pursue that argument, which you acknowledged below.

For item 8, Annora has not articulated what "share of voice" is or what documents you are looking for—indeed, that phrase is absent from RFP No. 53. In any event, Azurity has already produced documents sufficient to show how it markets Epaned and what Azurity's share of the market is, both currently and historically. Additionally, please confirm that if Azurity is willing to perform a search for and produce documents

relating to "share of voice," to the extent they exist and can be located after a reasonable search, Annora agrees that will resolve this dispute.

For item 9, we produced documents sufficient to show Azurity's price changes and Annora has not articulated what more, specifically, Annora wants, that would be proportional or relevant to the issues in this case. Nonetheless, please confirm that if Azurity is willing to perform a reasonable search specifically to pricing strategy, Annora agrees that will resolve this dispute.

Additionally, you have repeatedly misrepresented Azurity's damages production. Prior to the deadline for the cutoff of damages discovery, Azurity produced data regarding sales, marketing, and other relevant information related to damages. In fact, while Azurity had no obligation or duty to do so, because of some of your misapprehensions about the scope of Azurity's damages production, we directed you to documents that you have previously claimed had not been produced. *See, e.g.*, November 15, 2022 Kaufman email to Werner et al. Those "12 documents" you continue to identify are *in addition to* all of the previously-produced damages discovery, and consist of multiple hundreds of pages of spreadsheets detailing Azurity's budgets, sales, market share, costs, and other information potentially relevant to damages. This characterization grossly misrepresents Azurity's production of damages documents to date.

Finally, we understand that you sent a discovery letter to our local counsel requesting permission to file it as a "joint" letter. We suspect much of it is premature as we have been actively trying to resolve your concerns. In any event, WSGR should be included on all such substantive communications. Please send us that proposed joint letter and include WSGR on all substantive communications, particularly regarding draft "joint" letters to be filed with the Court, going forward.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com | www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Wednesday, December 7, 2022 12:08 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>; Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

Granville:

Your summary of the categories of damages documents that Defendants identified as missing from the Azurity production is incomplete. As an initial matter, you explained that Azurity considered its production of damages documents, which included a mere 12 documents, to be complete. I noted that Azurity had entirely failed to collect and produce emails, and that many of Defendants' document requests related to damages encompassed information likely to be contained within email. I also specifically referenced the numbered categories of documents from my November 22 email as specific categories of information that had not received (which categories encompass both emails and other documents). Given the extensive delays in securing this information, we will be initiating the dispute resolution process. We encourage Azurity to reconsider its position that its production is complete, and, if so, let us know when we can expect production of these documents.

With respect to Azurity's other products, we appreciate your confirmation that Azurity will not advance any arguments relying on these products or otherwise seek damages related to such products.

As you will recall, it was actually Defendants who raised the issue of depositions. Contrary to your position during the call, it now appears that Azurity believes that all previously noticed depositions as well as yet-to-served Rule 30(b)(1) and 30(b)(6) depositions can be completed in less than 5 weeks, and in the midst of the holiday season where we can all but guarantee witnesses will be unavailable. As you also know, we will need a complete production of documents before we can proceed with depositions on many of the 30(b)(6) topics. It's not clear what changed from our call, but we would appreciate a serious discussion about the case schedule (more on that below).

With regard to Annora's response to Interrogatory No. 2, we are unclear what Azurity means by reference to "testing related to the calculation of the buffer ratio." We are also unclear why testing of antimicrobial activity and pH is relevant, but can consider an explanation on this issue.

With regard to Annora's response to Interrogatory No. 3, we do not agree we are required to identify more documents than are necessary to provide a reasonable summary of the development process or meet our obligations under Rule 33(d). The interrogatory is extremely broad and we cannot agreed to identify all documents relating to development of the ANDA product. If there is a specific issue for which you believe additional information is warranted, we can consider providing additional information.

Annora will provide supplemental response to Interrogatory Nos. 11 and 14 commensurate to the detail provided by Plaintiffs in their interrogatory responses within 2 weeks of receiving Plaintiffs' responses.

Finally, with respect to an extension of the fact discovery deadline, Defendants did not express their desire to "change the schedule" as much as offer the observation that there is insufficient time remaining in view of the fact that no depositions have been taken, the scope of Plaintiffs' damages production is in dispute with only 12 documents having been produced to date, and Plaintiffs have still not produced significant liability-related documents from related cases that Defendants have been seeking for many, many months.  In view of the impending motion practice, we believe an extension of at least 60 days is necessary, but reserve the right to negotiate an additional extension to account for further delays in Plaintiffs' damages production (and the corresponding delays to depositions).

Best regards,

**Todd Werner**

<image001.jpg>
werner@avantechlaw.com
LinkedIn | Bio

---

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Tuesday, December 6, 2022 5:27 PM
**To:** Todd Werner <werner@avantechlaw.com>; Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Counsel:

We write to follow-up on some issues from last week's meet and confer and in response to your December 2 correspondence:

1. **Damages discovery**: On the meet and confer, Azurity asked Annora what additional documents Annora sought related to damages discovery. Annora was able to articulate three categories of documents that Annora seeks (1) internal Azurity emails relating to the Amneal AG negotiations; (2) internal Azurity emails discussing the impact of Annora entering the market; and (3) internal Azurity emails discussing  the impact of Bionpharma entering the market. If Azurity is willing to search for and produce non-privileged emails, to the extent that they exist and can be located after a reasonable search, please confirm this would

resolve this dispute. If Annora disagrees that this will resolve the parties' issues, please indicate, with specificity, what additional documents Annora seeks.

2. **Documents relating to other products**: Azurity will not proceed with the argument that reduced sales of Epaned impacted other products' revenue. Therefore, this information is no longer relevant.

3. **Other enalapril ready-to-use agreements**: On the meet and confer, we discussed identifying further agreements in response to Interrogatory No. 10 which asks for "agreements relating to . . . enalapril ready-to-use oral solution[s]." Azurity will supplement Interrogatory No. 10 as agreed upon in the meet and confer.

4. **Depositions**: Azurity intends to go forward with its previously noticed depositions and intends to supplement its 30(b)(6) notice to include damages topics. Please provide availability for those deponents prior to the close of fact discovery. Additionally, please confirm which witnesses Annora intends to depose and Azurity will check for availability.

5. **Production of documents relating to prior litigations**: Azurity has confirmed with both Alkem and Amneal that they consent to the corresponding requested deposition testimony and exhibits on an OCEO basis. Azurity intends to produce most of the related litigation documents this week, once prepared. Azurity is still awaiting Amneal's review of certain requested documents and will produce once Azurity receives consent. Azurity confirms there are no other agreements related to the Settlement or Supply Agreement.

With regards to interrogatories, Azurity disputes Annora's recounting of the scope of Azurity's agreed to supplementations. Nonetheless, Azurity agrees to provide fulsome supplements to its responses to Interrogatory Nos. 6-10 in accordance with what Azurity stated on the meet and confer.

Azurity further understands that Annora intends to supplement Interrogatory Nos. 2, 3, 5, 6, 7, 9, 10, and 13. With regards to Interrogatory No. 2, in addition to the stability testing, Azurity requests testing related to the calculation of the buffer ratio, antimicrobial activity, and any pH testing of the product. With regards to Interrogatory No. 3, please confirm that the supplementation will encompass more than a single document to the extent multiple documents exist and are responsive.

The parties' supplementations will take place on December 9, 2022.  Annora has agreed to supplement its answers to Azurity's Interrogatory Nos. 11 and 14. Please provide a date certain that Azurity can expect those supplements.

Finally, Annora indicated that it wished to change the schedule.  Azurity does not currently believe the schedule needs adjustment, but please provide Annora's proposal

so Azurity may evaluate.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com
| www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, December 2, 2022 12:34 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>; Nicholas Talarowski
<NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>;
William Woodford <woodford@avantechlaw.com>; Ronald Golden
<rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora
RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

I write to memorialize our meet and confer yesterday.

**Supplemental Interrogatory Responses**
The parties agreed to supplement interrogatory responses by December 9.

Defendants agreed to supplement their response to Interrogatory No. 2 to identify
documents related to stability testing performed on the Annora formulation and
person(s) involved with such testing. To the extent Plaintiffs are interested in any other
types of testing, Annora requested that Plaintiffs identify such testing. For
Interrogatory No. 3 Defendants agreed to supplement their response to identify a
document summarizing the research underlying the Annora product and persons
involved therewith. For Interrogatory No. 6, subject to any privilege or work product
protections, Defendants will identify information considered by Defendants in deciding
to launch the Annora product and the person(s) involved with that decision. For
Interrogatory No. 7, Defendants agreed to identify person(s) involved with selection of
the formulation chosen for the Annora product, and to the extent it can be found
through a reasonable investigation, document(s) related to that decision. Defendants
agreed to supplement their responses to Interrogatory Nos. 11 and 14 after receiving
fulsome, supplemental responses to corresponding interrogatories from Plaintiffs.
Defendants will supplement their response to Interrogatory Nos. 5, 9, 10 and 13 as
stated in their November 22 letter.

Plaintiffs agreed to provide supplemental responses to Interrogatory Nos. 6-10. With respect to No. 6, Defendants specifically requested the supplementation include more detailed and current information concerning costs, pricing, and sales, including changes thereto. We request that Plaintiffs include this information from 2 months before the Bionpharma launch until present. With respect to Nos. 7 and 8, Plaintiffs agreed to provide a detailed explanation of why other products, such as the Bionpharma and Amneal AG products, do not qualify as non-infringing alternatives, including but not limited to a showing of what patents it contends are infringed by those products and how they infringe those patents, why those patents are not invalid, as well as why a licensed product is not an acceptable substitute and the factual basis for any such contention. With respect to No. 9, Plaintiffs agreed to provide the facts that support any contention that Annora's limited sales have eroded the price of Epaned®. With respect to No. 10, Plaintiff agreed to identify other agreements related to enalapril products other than Epaned®, if any.

**Damages Documents**

Plaintiffs confirmed that they consider their damages document production complete. As a result, the parties have completed their meet and confer obligations with respect to Azurity's collection of emails and other documents, including but not limited to the following categories:

1. Documents concerning "market analyses and projections," including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products

2. Documents concerning "financial analyses and projections," including internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized AG, and Annora products

3. "Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution"

4. "Communications with actual/prospective customers of Epaned/enalapril oral solution"

5. Documents related to the sales of other products for each product for which Azurity contends it has lost sales as a result of Defendants' alleged infringement (Req. No. 51), including documents concerning any changes to revenues, market share, pricing, discounts, promotions, and rebates, as well as any documents concerning any analysis of the causes resulting or contributing to such changes (Defendants' encouraged Plaintiffs to drop this theory and avoid the need to produce these documents, and Plaintiffs agreed to confirm whether they would do so by Monday)

6. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Azurity for Epaned, documents addressing Azurity's strategy for promoting and/or

differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto

7. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes

**Production of Materials from Related Litigations**

The parties also discussed the production of documents from related litigations. Plaintiffs indicated that the review by Amneal is already underway, and that the documents from all of the related litigations are being processed and will be produced as soon as possible and for sure within the next 7-10 days. Plaintiffs agreed to confirm whether that production will include transcripts for the depositions of plaintiffs' fact and expert witnesses.

We also discussed the Supply Agreement with Amneal and Plaintiffs confirmed they would inform Defendants if there are any agreements related to the Settlement or Supply Agreement. Plaintiffs also agreed to confirm whether they will agree to produce documents associated with the Settlement and Supply Agreements (and any related agreements), including internal and external correspondence generally and such correspondence specifically related to the launch of the AG product, including timing thereof (see RFP Nos. 20, 68, 69, 71, 72, 74). Plaintiffs agreed to provide the status of their efforts relating to the production of these documents. To the extent Plaintiffs are withholding documents due to any third-party confidentiality concerns, Plaintiff will report back to Defendants so we can discuss the issue further. If we do not hear from Plaintiff by Tuesday, we will proceed with the understanding that the parties are at an impasse with respect to this issue.

Best regards,

Todd Werner

<image001.jpg>
werner@avantechlaw.com
LinkedIn | Bio

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments

thereto.

***This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.***

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

***This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.***

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

***This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.***

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

***This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.***

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and

any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this*

*message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

*This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.*

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.