# EXHIBIT 23

| | |
|---|---|
| **From:** | Ronald Golden |
| **To:** | Dellinger, Megan E. |
| **Cc:** | Steve Brauerman |
| **Subject:** | FW: Azurity v Annora et al: Yesterday"s M&C |
| **Attachments:** | 2022-12-07 - Enalapril - Letter to Judge Goldberg re_ Discovery Dispute.doc |

Megan,

As discussed, we are at an impasse on various discovery matters.  Could you please let us know if we may file the attached?  Thank you.

Ron

Ronald P. Golden III
Associate
BAYARD, P.A.
Cell: +1 609-972-3577
Office: +1 302-429-4238
rgolden@bayardlaw.com

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Wednesday, December 7, 2022 3:08 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>; Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

## CAUTION EXTERNAL

Granville:

Your summary of the categories of damages documents that Defendants identified as missing from the Azurity production is incomplete.  As an initial matter, you explained that Azurity considered its production of damages documents, which included a mere 12 documents, to be complete.  I noted that Azurity had entirely failed to collect and produce emails, and that many of Defendants' document requests related to damages encompassed information likely to be contained within email.  I also specifically referenced the numbered categories of documents from my November 22 email as specific categories of information that had not received (which categories encompass both emails and other documents).  Given the extensive delays in securing this information, we will be initiating the dispute resolution process.  We encourage Azurity to reconsider its position that its production is complete, and, if so, let us know when we can expect production of these documents.

With respect to Azurity's other products, we appreciate your confirmation that Azurity will not advance any arguments relying on these products or otherwise seek damages related to such

products.

As you will recall, it was actually Defendants who raised the issue of depositions. Contrary to your position during the call, it now appears that Azurity believes that all previously noticed depositions as well as yet-to-served Rule 30(b)(1) and 30(b)(6) depositions can be completed in less than 5 weeks, and in the midst of the holiday season where we can all but guarantee witnesses will be unavailable. As you also know, we will need a complete production of documents before we can proceed with depositions on many of the 30(b)(6) topics. It's not clear what changed from our call, but we would appreciate a serious discussion about the case schedule (more on that below).

With regard to Annora's response to Interrogatory No. 2, we are unclear what Azurity means by reference to "testing related to the calculation of the buffer ratio." We are also unclear why testing of antimicrobial activity and pH is relevant, but can consider an explanation on this issue.

With regard to Annora's response to Interrogatory No. 3, we do not agree we are required to identify more documents than are necessary to provide a reasonable summary of the development process or meet our obligations under Rule 33(d). The interrogatory is extremely broad and we cannot agreed to identify all documents relating to development of the ANDA product. If there is a specific issue for which you believe additional information is warranted, we can consider providing additional information.

Annora will provide supplemental response to Interrogatory Nos. 11 and 14 commensurate to the detail provided by Plaintiffs in their interrogatory responses within 2 weeks of receiving Plaintiffs' responses.

Finally, with respect to an extension of the fact discovery deadline, Defendants did not express their desire to "change the schedule" as much as offer the observation that there is insufficient time remaining in view of the fact that no depositions have been taken, the scope of Plaintiffs' damages production is in dispute with only 12 documents having been produced to date, and Plaintiffs have still not produced significant liability-related documents from related cases that Defendants have been seeking for many, many months. In view of the impending motion practice, we believe an extension of at least 60 days is necessary, but reserve the right to negotiate an additional extension to account for further delays in Plaintiffs' damages production (and the corresponding delays to depositions).

Best regards,

**Todd Werner**



werner@avantechlaw.com
LinkedIn | Bio

---

**From:** Kaufman, Granville <gkaufman@wsgr.com>
**Sent:** Tuesday, December 6, 2022 5:27 PM
**To:** Todd Werner <werner@avantechlaw.com>; Nicholas Talarowski

<NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** RE: Azurity v Annora et al: Yesterday's M&C

Counsel:

We write to follow-up on some issues from last week's meet and confer and in response to your December 2 correspondence:

- **Damages discovery**: On the meet and confer, Azurity asked Annora what additional documents Annora sought related to damages discovery. Annora was able to articulate three categories of documents that Annora seeks (1) internal Azurity emails relating to the Amneal AG negotiations; (2) internal Azurity emails discussing the impact of Annora entering the market; and (3) internal Azurity emails discussing the impact of Bionpharma entering the market. If Azurity is willing to search for and produce non-privileged emails, to the extent that they exist and can be located after a reasonable search, please confirm this would resolve this dispute. If Annora disagrees that this will resolve the parties' issues, please indicate, with specificity, what additional documents Annora seeks.

- **Documents relating to other products**: Azurity will not proceed with the argument that reduced sales of Epaned impacted other products' revenue. Therefore, this information is no longer relevant.

- **Other enalapril ready-to-use agreements**: On the meet and confer, we discussed identifying further agreements in response to Interrogatory No. 10 which asks for "agreements relating to . . . enalapril ready-to-use oral solution[s]." Azurity will supplement Interrogatory No. 10 as agreed upon in the meet and confer.

- **Depositions**: Azurity intends to go forward with its previously noticed depositions and intends to supplement its 30(b)(6) notice to include damages topics. Please provide availability for those deponents prior to the close of fact discovery. Additionally, please confirm which witnesses Annora intends to depose and Azurity will check for availability.

- **Production of documents relating to prior litigations**: Azurity has confirmed with both Alkem and Amneal that they consent to the corresponding requested deposition testimony and exhibits on an OCEO basis. Azurity intends to produce most of the related litigation documents this week, once prepared. Azurity is still awaiting Amneal's review of certain requested documents and will produce once Azurity receives consent. Azurity confirms there are no other agreements related to the Settlement or Supply Agreement.

With regards to interrogatories, Azurity disputes Annora's recounting of the scope of Azurity's agreed to supplementations. Nonetheless, Azurity agrees to provide fulsome supplements to its responses to Interrogatory Nos. 6-10 in accordance with what Azurity stated on the meet and

confer.

Azurity further understands that Annora intends to supplement Interrogatory Nos. 2, 3, 5, 6, 7, 9, 10, and 13. With regards to Interrogatory No. 2, in addition to the stability testing, Azurity requests testing related to the calculation of the buffer ratio, antimicrobial activity, and any pH testing of the product. With regards to Interrogatory No. 3, please confirm that the supplementation will encompass more than a single document to the extent multiple documents exist and are responsive.

The parties' supplementations will take place on December 9, 2022. Annora has agreed to supplement its answers to Azurity's Interrogatory Nos. 11 and 14. Please provide a date certain that Azurity can expect those supplements.

Finally, Annora indicated that it wished to change the schedule. Azurity does not currently believe the schedule needs adjustment, but please provide Annora's proposal so Azurity may evaluate.

Regards,

**Granville Clay Kaufman| Associate | Wilson Sonsini Goodrich & Rosati, Professional Corporation**
12235 El Camino Real | San Diego, CA 92130 | T: 213-369-3593 | gkaufman@wsgr.com |
www.wsgr.com

---

**From:** Todd Werner <werner@avantechlaw.com>
**Sent:** Friday, December 2, 2022 12:34 PM
**To:** Kaufman, Granville <gkaufman@wsgr.com>; Nicholas Talarowski <NTalarowski@bayardlaw.com>; Steve Brauerman <SBrauerman@bayardlaw.com>; William Woodford <woodford@avantechlaw.com>; Ronald Golden <rgolden@bayardlaw.com>
**Cc:** Dellinger, Megan E. <mdellinger@morrisnichols.com>; WSGR - Silvergate - Annora RTU Epaned <silvergate-annora@wsgr.com>
**Subject:** Azurity v Annora et al: Yesterday's M&C

EXT - werner@avantechlaw.com

---

Granville:

I write to memorialize our meet and confer yesterday.

### Supplemental Interrogatory Responses

The parties agreed to supplement interrogatory responses by December 9.

Defendants agreed to supplement their response to Interrogatory No. 2 to identify documents related to stability testing performed on the Annora formulation and person(s) involved with such testing. To the extent Plaintiffs are interested in any other types of testing, Annora requested that Plaintiffs identify such testing. For Interrogatory No. 3 Defendants agreed to supplement their response to identify a document summarizing the research underlying the Annora product and

persons involved therewith. For Interrogatory No. 6, subject to any privilege or work product protections, Defendants will identify information considered by Defendants in deciding to launch the Annora product and the person(s) involved with that decision. For Interrogatory No. 7, Defendants agreed to identify person(s) involved with selection of the formulation chosen for the Annora product, and to the extent it can be found through a reasonable investigation, document(s) related to that decision. Defendants agreed to supplement their responses to Interrogatory Nos. 11 and 14 after receiving fulsome, supplemental responses to corresponding interrogatories from Plaintiffs. Defendants will supplement their response to Interrogatory Nos. 5, 9, 10 and 13 as stated in their November 22 letter.

Plaintiffs agreed to provide supplemental responses to Interrogatory Nos. 6-10. With respect to No. 6, Defendants specifically requested the supplementation include more detailed and current information concerning costs, pricing, and sales, including changes thereto. We request that Plaintiffs include this information from 2 months before the Bionpharma launch until present. With respect to Nos. 7 and 8, Plaintiffs agreed to provide a detailed explanation of why other products, such as the Bionpharma and Amneal AG products, do not qualify as non-infringing alternatives, including but not limited to a showing of what patents it contends are infringed by those products and how they infringe those patents, why those patents are not invalid, as well as why a licensed product is not an acceptable substitute and the factual basis for any such contention. With respect to No. 9, Plaintiffs agreed to provide the facts that support any contention that Annora's limited sales have eroded the price of Epaned®. With respect to No. 10, Plaintiff agreed to identify other agreements related to enalapril products other than Epaned®, if any.

**Damages Documents**

Plaintiffs confirmed that they consider their damages document production complete. As a result, the parties have completed their meet and confer obligations with respect to Azurity's collection of emails and other documents, including but not limited to the following categories:

1. Documents concerning "market analyses and projections," including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products
2. Documents concerning "financial analyses and projections," including internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized AG, and Annora products
3. "Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution"
4. "Communications with actual/prospective customers of Epaned/enalapril oral solution"
5. Documents related to the sales of other products for each product for which Azurity contends it has lost sales as a result of Defendants' alleged infringement (Req. No. 51), including documents concerning any changes to revenues, market share, pricing, discounts, promotions, and rebates, as well as any documents concerning any analysis of the causes resulting or contributing to such changes (Defendants' encouraged Plaintiffs to drop this theory and avoid the need to produce these documents, and Plaintiffs agreed to confirm whether they would do so by Monday)

6. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Azurity for Epaned, documents addressing Azurity's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto
7. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes

**Production of Materials from Related Litigations**

The parties also discussed the production of documents from related litigations. Plaintiffs indicated that the review by Amneal is already underway, and that the documents from all of the related litigations are being processed and will be produced as soon as possible and for sure within the next 7-10 days. Plaintiffs agreed to confirm whether that production will include transcripts for the depositions of plaintiffs' fact and expert witnesses.

We also discussed the Supply Agreement with Amneal and Plaintiffs confirmed they would inform Defendants if there are any agreements related to the Settlement or Supply Agreement. Plaintiffs also agreed to confirm whether they will agree to produce documents associated with the Settlement and Supply Agreements (and any related agreements), including internal and external correspondence generally and such correspondence specifically related to the launch of the AG product, including timing thereof (see RFP Nos. 20, 68, 69, 71, 72, 74). Plaintiffs agreed to provide the status of their efforts relating to the production of these documents. To the extent Plaintiffs are withholding documents due to any third-party confidentiality concerns, Plaintiff will report back to Defendants so we can discuss the issue further. If we do not hear from Plaintiff by Tuesday, we will proceed with the understanding that the parties are at an impasse with respect to this issue.

Best regards,

Todd Werner

werner@harnessip.com
LinkedIn  Bio

This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this message.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

This message may contain proprietary, confidential, and privileged information. If you are not the intended recipient, please contact the sender and permanently delete all copies of this

*message.*



600 N. King Street • Suite 400
P.O. Box 25130 • Wilmington, DE 19899
Zip Code For Deliveries 19801

Writer's Direct Access:
(302) 429-4238
Email: rgolden@bayardlaw.com

December 7, 2022

**VIA CM/ECF**

The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
United States Courthouse, Room 7614
601 Market Street
Philadelphia, PA  19106

      RE:    *Azurity Pharmaceuticals, Inc. v. Annora Pharma Private Limited, et al.*
               C.A. No. 21-196-MSG

Dear Judge Goldberg:

      The parties in the above referenced matter write to request the scheduling of a discovery teleconference.

      The following attorneys, including at least one Delaware Counsel and at least one Lead Counsel per party, participated in a verbal meet-and confer by remote means on December 1, 2022:

Defendants Annora Pharma Private Limited and Camber Pharmaceuticals, Inc.

- Delaware Counsel: Ronald P. Golden II
- Lead Counsel: Todd S. Werner and William R. Woodford

Plaintiff Azurity Pharmaceuticals, Inc. ("Plaintiff")

- Delaware Counsel: Megan E. Dellinger
- Lead Counsel: Granville C. Kauffman

      The disputes requiring judicial attention are listed below:

1. Plaintiff's refusal to collect emails relating to damages;

2. Plaintiff's collection of documents (including email) relating to damages, including:

    a. Documents concerning market analyses and projections, including internal documents analyzing the impact of various competitive factors on the market, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 48, 50, 51, 67, 70)

    b. Documents concerning financial analyses and projections, including internal analyses of the financial performance of Epaned® and the impact of various competitive factors on the financial picture for that product, including but not limited to the Bionpharma, authorized AG, and Annora products (RFP Nos. 49, 50, 51, 67, 70)

    c. Documents sufficient to show all actual and projected costs related to development, manufacturing, marketing, advertisement, promotion, and sale of Epaned® from 2019 to present (RFP Nos. 60, 61)

    d. Proposed/offered and actual purchase orders, sales, and agreements of Epaned/enalapril oral solution (RFP No. 57)

    e. Communications with actual/prospective customers of Epaned/enalapril oral solution (RFP No. 58)

    f. Documents concerning marketing, detailing, and advertising of Epaned (Req. No. 53) such as documents concerning the "share of voice" held by Plaintiff for Epaned, documents addressing Plaintiff's strategy for promoting and/or differentiating Epaned® from other products, any sales force training manuals or presentations (commonly given at conferences with such personnel), detailing reports, product discounts/promotions/rebates, or memoranda concerning any changes to such strategies, or the amount of resources allocated thereto

    g. Documents concerning pricing strategy (Req. No. 54), including any changes to the pricing of Epaned® and the underlying analysis and reasons for such changes

    h. Agreements or arrangements reflecting a royalty rate for any patents or trade secrets directed to subject matter that is reasonably comparable to the claimed inventions or for any products that are reformulations of earlier products (Req. Nos. 63, 64, 65)

    i. Correspondence between Plaintiff and CoreRx (Bionpharma's supplier) concerning enalapril (RFP No. 66)

    j. Valuations of CoreRx (RFP No. 76);

3. Documents related to Plaintiff's Settlement Agreement with Amneal (including the Supply Agreement and any other related agreements), including internal and external correspondence related to those agreements, and internal and external correspondence



December 7, 2022
Page 3

related to the launch of the AG product, including timing thereof (*see* RFP Nos. 20, 68, 69, 71, 72, 74).

Should Your Honor have any questions, comments, or concerns, the undersigned is available at the Court's convenience.

Respectfully submitted,

*/s/ DRAFT*
Ronald P. Golden III (#6254)

cc:   All Counsel